UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

EIMONT BRONZINI
_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

_____

CLASSIC SECURITY L.L.C.
_____

*(In the space above enter the full name(s) of the defendant(s).
If you cannot fit the names of all of the defendants in the space
provided, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of names.
Typically, the company or organization named in your charge
to the Equal Employment Opportunity Commission should be
named as a defendant.  Addresses should not be included here.)*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 8/24/11

PRO SE OFFICE

**AMENDED**

**COMPLAINT
FOR EMPLOYMENT
DISCRIMINATION**

Jury Trial:  ☒ Yes  ☐ No
*(check one)*

11 CIV. 2096 (RWS)

This action is brought for discrimination in employment pursuant to: *(check only those that apply)*

X _____ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e
to 2000e-17 (race, color, gender, religion, national origin).
**NOTE:** *In order to bring suit in federal district court under Title VII, you must first obtain a
Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

X _____ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§
621 - 634.
**NOTE:** *In order to bring suit in federal district court under the Age Discrimination in
Employment Act, you must first file a charge with the Equal Employment Opportunity
Commission.*

_____ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 -
12117.
**NOTE:** *In order to bring suit in federal district court under the Americans with Disabilities Act,
you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity
Commission.*

_____ New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297  (age,
race, creed, color, national origin, sexual orientation, military status, sex,
disability, predisposing genetic chacteristics, marital status).

_____ New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to
131 (actual or perceived age, race, creed, color, national origin, gender,
disability, marital status, partnership status, sexual orientation, alienage,
citizenship status).

*Rev. 05/2010*                                        1

## I.     Parties in this complaint:

A.     List your name, address and telephone number.  Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff     Name ___Eimont___ Bronzini___

Street Address ___22 51 81ˢᵗ Street Apt C-1___

County, City ___Brooklyn___

State & Zip Code ___NY  11214___

Telephone Number ___718 490 3941___

B.     List all defendants' names and the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets of paper as necessary.

Defendant     Name ___Classic Security LLC___

Street Address ___70 West 36ᵀᴴ Street___

County, City ___New York___

State & Zip Code ___NY  10018___

Telephone Number ___212 239 9200___

C.     The address at which I sought employment or was employed by the defendant(s) is:

Employer _____

Street Address _____

County, City _____

State & Zip Code _____

Telephone Number _____

## II.     Statement of Claim:

State as briefly as possible the facts of your case, including relevant dates and events.  Describe how you were discriminated against.  If you are pursuing claims under other federal or state statutes, you should include facts to support those claims.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.  The discriminatory conduct of which I complain in this action includes: (check only those that apply)

_____     Failure to hire me.

___X___     Termination of my employment.

___X___     Failure to promote me.

_____     Failure to accommodate my disability.

___X___     Unequal terms and conditions of my employment.

X      Retaliation.

_____      Other acts *(specify):* _____.

> **Note:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.*

B.    It is my best recollection that the alleged discriminatory acts occurred on: **07 - 15 - 2009**
*Date(s)*

C.    I believe that defendant(s) *(check one)*:

X      is still committing these acts against me.

_____      is not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check only those that apply and explain)*:

☒ race   CAUSASIAN    ☒ color   WHITE

☐ gender/sex _____    ☐ religion_____

☒ national origin  FOREIGN BORN (LITHUANIAN)

☒ age.  My date of birth is AUGUST 4, 1958  *(Give your date of birth only if you are asserting a claim of age discrimination.)*

☐ disability or perceived disability, _____ *(specify)*

E.    The facts of my case are as follow *(attach additional sheets as necessary)*:

① I , PLAINTIFF , EIMONT BRONZINI , SECURITY OFFICER , SINCE SEPTEMBER 2001.
I WORKED FOR THE SUMMIT SECURITY AND MULLIGAN SECURITY COMPANIES , WHERE I WAS NEVER DISCRIMINATED BY RACE , ORIGIN OR BY COLOR .
I ALWAYS RECEIVED WORK-REST BREAKS , HAD 40 HOURS WEEKLY AND NO ONE CENT WAS STOLEN FROM MY PAYCHECK .
CONTINUING ON 71 PAGES

> **Note:** *As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights or the New York City Commission on Human Rights.*

## III.  Exhaustion of Federal Administrative Remedies:

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding defendant's alleged discriminatory conduct on: _____JUNE 29 , 2010_____ *(Date)*.

*Rev. 05/2010*                3

Eimont Bronzini **January 23rd, 2004** started work as a Security Officer (S/O) and as a Building Evacuation Supervisor (BES) in Classic Security an Alliance of Building Services Company with $9.00 per hour, because that in 2003 year he was hardly injured and obtained back bone (spin) trauma and, and because that in Classic's 100+ work sites there were 95% of sitting only positions on evening, night or weekends shifts.

2. Classic Security ($100 million of capital) with 700+ employees is a part of an Alliance of Building Services Company ($2,2 billion of capital) under which umbrella there were   such of different profile companies as the First Quality Maintenance - cleaning services (FQM), Bright Star- courier services, Onyx – restoration works with thousands of employees belong to  the only one owner, CEO Mr. Gary Green, who with his father Mr. Larry Green are owners of SL Green Real Estate Company with their own 100+ Hi-Rise office buildings in NYC. The President of an Allied of Building Services Company is Mr. Michael Rodriguez ,who's twin brother Mr. Carlos Rodriguez is the only one person, who is the Union's the only one Representative for Classic Security had illegally  created „two brothers Union"- organized corruption structure, which allowed to legalize intentionally created slavery work methods such a no any rest  and no any  meal breaks during 8-16-17 hours periods of work time for the Security Officers and Fire Safety Directors of white race, foreign born, 45+ years old, who ,as S/O Lolita Bronzini (the Plaintiff from the previous discrimination case # 07 CV11104 (HB), which was closed  without  opening it for the fair revue  by the judge Harold Baer ) was forced  in 2007/2008 winter to work for period of couple month in only-standing position without any meal or rest breaks for 16-17 hours work shifts daily, but at the same site and at the same time for African-Americans S/Os Classic's Director of Operations African-American Mr. R. Jessamy allowed breaks during 8 hour shifts.

3. Classic' the most cruel invention was "Bench" -4 hours waiting for daily 8 hours work . "Bench"-officially named in Classic's pay stubs / payroll – "training" had to serve for new S/Os as helping tool during initially starting work period of 1 to 4 weeks to learn, to familiarize with Classic's work sites, but "Bench" became mostly famous as Classic's punishment tool for work violations -temporary punishment -1 to 4 hours waiting for available full 8 hours shift.

 4. Since the first days of employment at Classic , S/O E. Bronzini, who had no any committed work related violations or any lateness, was scheduled for the permanent "training" – "Bench" for almost 100 weeks as punishment for his belonging to white race, for his foreign national origin and because that he was 45+ years old - punished by African-American Classic's Director of Operations and his office team with Dispatchers, who

①

intentionally kept on Bench "white victim" as an "example" for others, mostly Classic's new S/Os showing that Classic's sitting sites, 40 hours weekly permanent sites, overtimes, regular 8 hours was daily and a lot of other good things in Classic never been and will never be free - all are on sale for favors and was always as total corruption. The only on group at Classic – African-Americans – received higher salaries, brakes, overtimes, sitting only sites, permanent 40 hours weekly – all privileges were given by African-American Classic's Director of Operations R. Jessamy.

S/O Eimont Bronzini, in his age of late 40's always came in first for "Bench" duty and left always last as a "white victim" and "example", after all African-Americans (in their mid 20's - 30's) were placed, with 4 hours daily or 8 hours and to complete 40 hour weekly he had to attend for "Bench" duty 6-7 or 8 shifts instead of 5 regular shifts.


5. Since **December 2nd, 2004** S/O E. Bronzini's wife S/O Lolita Bronzini white, foreign born, 40+years old, Classic's African-American Mr. R. Jessamy's new "white victim" an "example" was scheduled for "Bench" duty- 4 hours waiting for daily 8 hours available work for long period of 100+ weeks as punishment because of organized by African-American R. Jessamy and his African-American Office Team every day and with the purpose of favoritism and corruption.

S/O Lolita Bronzini, in her age of late 40's, always came in first for "Bench" duty and left always last as a "white victim" and "example", after all African-Americans (in their mid 20's - 30's) were placed, with 4 hours daily or 8 hours and to complete 40 hour weekly she had to attend for "Bench" duty 6-7 or 8 shifts instead of 5 regular shifts.


6. In March 2006 Classic's office issued on an official FDNY form signed and notarized Verification Letter for Application for Fire Safety Director (FSD) as documental recommendation to FDNY for E. Bronzini, which allowed him to start 5 weeks long FSD course in FDNY official school, which cost for E. Bronzini $250.00 from his own pocket. After 5 weeks of FSD School and successfully passed FSD school's exam, E. Bronzini paid $25.00 for FDNY exam and after successfully passed at FDNY FSD written test-exam on **August 29th, 2006** FDNY issued for Eimont Bronzini **the first** Fire Safety Director's **Certificate of Completion Z-50** which was valid for one year of issuance during which FDNY officially allowed him to work as FSD.


7. On **September 26th, 2006** E. Bronzini started working at 625 Madison Avenue site as a Fire Safety Director (FSD), in the one of the most expensive, rated as the highest rental price of Manhattan's office Building. 625

Madison Ave. building was one of 100+ SL Green Realty private buildings, where numerous floors were occupied by famous fashion designer Ralph Lauren's and Bergdorf Goodman's main corporate offices among others. Just on the first floor, of the 625 Madison Ave Building, there were located 16 expensive stores plus 2 restaurants, on second floor there were located the most expensive in Manhattan Bridal salon (dresses $2500+) and Luxury Hair salon (hair cut $350+). FSD E. Bronzini during his work shift had to deal with such of High profile tenants and their clients, guests, solved their safety und other utility problems in his work duties included monitoring 70 surveillance cameras, monitoring 11 elevator cars , answering 30 telephone lines and performed many of other Security and FSD duties, but with the only $9.80 per hour pay rate, as regular Security Officer's salary, where at the same time (625 Madison Ave.) all 5 (five) FSDs received $16.00 per hour including new Classic's employee – mid 30's FSD Mrs. Sandra Winston (African-American) who obtained and possessed  the same as E. Bronzini FSD Certificate of Completion Z-50, but was awarded  with the $15.00 per hour salary from the work start and then after **October 6th, 2006**- her first passed On-Site test, which was given to her by Mr. R. Jessamy  within the first week of her FSD work at 625 Madison Ave. site and immediately FSD salary raise to $16.00 per hour.

8.  At the same time in **2006** year Classic Security hired new employee for FSD position African-American mid 30's Security Officer Mr. Ryan Palmer for $15.00 per hour for start for future FSD position, who even had no any previous FSD work experience and did not has even FSD Certificate of Completion Z-50 and did not graduated FSD school, did not passed FDNY exam.

9. On **December 7, 2006** FSD E. Bronzini called  with complaint to Classic Security Union representative Mr. Carlos Rodriguez ( C. Rodriguez is the twin brother of the President of Alliance of Building Services Company Mr. Michael  Rodriguez) because of the African-American Classic's Director of Operations Mr. Roderick Jessamy's refusal for long period of time (2+months) to give him promised $15.00 per hour for the start of FSD work at 625 Madison Ave. and that African-American Mr. R.Jessamy's new policy for the white ,foreign born, 45+ of age is , that only after the passed FDNY  On-Site Test( which by FDNY rules must be taken within first 3 months of employment) could be raised the white,foreign born, 45+ of age E. Bronzini's salary for FSD work position from $9.80 to $16.00 per hour- the same rate as had every FSD (5 FSDs) in 625 Madison Ave building for the identical, same work responsibility at FSD position.

10. On **December 8th, 2006** Classic's Director of Operations Mr. R. Jessamy (African-American) in retaliation

for phone call, complaint to the Union, fired forever (5+ years now) FSD Bronzini's wife, Lolita Bronzini, Security Officer, who worked for Classic Security since December 2nd, 2004, from her on Friday's 5th, 8 hours shift, which was permanent for period of 18 months, fired from her previously total of 40 hours weekly, leaving for her the only 32 weekly hours FOREVER. Previously , to the date of **December 8th, 2006**, S/O L. Bronzini on **December 1st, 2006** came back from her approved by Classic unpaid leave for period of 5 weeks under the Family and Medical Leave Act of 1993 (FMLA) law to care of her of 78 years old   mother in Lithuania after very difficult surgery,- to report for work start (got pay for 1 Personal day) on Friday, **December 1st, 2006** to return to her permanent for period of 18 months (1,5year) work site at 35 E. 21st street – but Mr. R. Jessamy in retaliation for FSD E. Bronzini's call, complaint to the Union ( made 1 day before), gave S/O L. Bronzini's permanent for 1.5 years Friday's shifts to African-American mid 30's female s/o Carol Reddick (Classic did not provide any written Classic's or 35 E. 21st street site's Manager's documental request's proof for S/O L. Bronzini firing from this site or request for replacement or even request for cutting from her permanent 40 hours to 32 hours weekly forever reason). Since **December 8th 2006** Mr. Jessamy in retaliation fired s/o L. Bronzini from her fifth permanent shift **forever (5+years),** leaving for her only 32 hours weekly, however, at the same time, Classic Security hired in **2007** year 284 new Security Officers, permanently advertised for always available full, part time S/O and FSD work in Classic, but for s/o L. Bronzini Classic's Director of Operations African-American Mr. Jessamy left in retaliation and in discrimination as for the lower race (white) and foreign born (Lithuania) only the one option forever (5+ years) – 32 hours weekly from her previously obtained 40 permanent hours before **December 8th,2006** date .

11. Since the same date of **December 8th, 2006** Classic's Director of Operations African-American Mr. Jessamy in retaliation for FSD E. Bronzini's phone call- complaint to the Union – fired (cut) 5th shift for FSD Eimont Bronzini for long 9 month period, leaving him the only 32 hours weekly, same punishment as for his wife S/O L. Bronzini - 32 hours weekly forever (5+years).

12. On **January 11th, 2007** – FSD E. Bronzini and S/O L. Bronzini filed first time separate Charge of Discrimination  to E.E.O.C. about not given to E. Bronzini FSD salary for 3.5 month period, about not given FSD On-site Test and about the facts that in retaliation for complaint to the Union Classic's Director of Operations, African-American Mr. R. Jessamy fired/cut both E. and L. Bronzini from their permanent 40 hours work weekly to 32 hours work weekly.

   **Please see attached on pages #......5.6.......Charge of Discrimination
                                           ...7.**

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Statement before completing this form.

| AGENCY | | CHARGE NUMBER |
|---|---|---|
| ☐ FEPA | | |
| ☒ EEOC | | 520-2007-01389N |

New York District Office _and EEOC_

State or local Agency, if any

NAME (Indicate Mr., Ms., Mrs.)
EIMONT BRONZINI

HOME TELEPHONE (Include Area Code)
718-490-3741 (CELL PH) 718-621-0834 (HOME)

STREET ADDRESS
2251 81st STREET APT C-1

CITY, STATE AND ZIP CODE
BROOKLYN, NY 11214

DATE OF BIRTH
08/04/58

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

NAME
CLASSIC SECURITY, LLC

NUMBER OF EMPLOYEES, MEMBERS
ABOUT 400

TELEPHONE (Include Area Code)
212-239-9200

STREET ADDRESS          CITY, STATE AND ZIP CODE          COUNTY

NAME          TELEPHONE NUMBER (Include Area Code)

STREET ADDRESS          CITY, STATE AND ZIP CODE          COUNTY

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☒ RACE  ☒ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST          LATEST

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)): I, EIMONT BRONZINI, WORKING FOR CLASSIC SECURITY COMPANY ALMOST 3 YEARS, WORKED 5 SHIFTS (40 HOURS WEEKLY) UNTILL SEPTEMBER 28, 2006, WHEN MR. R. JESSAMY (AFRICAN-AMERICAN) CLASSIC'S SECURITY SCHEDULE MANAGER ASSIGNED ME TO START TRAINING AT 625 MADISON AVE. SITE AS FIRE SAFETY DIRECTOR-s/o 2 SHIFTS, 16 HOURS PER WEEK. I HAVE FIRE DEPARTMENT'S PERMISSION AND SERTIFICATION TO WORK AS F.S.D. I WAS TRAINED UNTIL NOVEMBER 18, 2006, WHEN I STARTED TO WORK AS F.S.D. WITHOUT ASSISTANCE (ALONE) AT THE SAME 625 MADISON AVE. MR. R. JESSAMY CONFIRMED ME ABOUT MY SALARY RAISE FROM $9.80 AS SECURITY OFFICER TO $15/HOUR AS F.S.D SINCE NOVEMBER 18, 2006, BECAUSE I WORKED AS F.S.D POSITION. SAME $15/HOUR SALARY RECEIVED F.S.D.-s/o MRS. SANDRA WINSTON (AFRICAN-AMERICAN FEMALE) AT THE SAME 625 MADISON AVE. SITE SINCE MAY, 06, 2006. MRS S. WINSTON HAD THE SAME QUALIFICATION AND SERTIFICATION FROM FIRE DEPARTMENT AS ME, E. BRONZINI, BUT MRS. S. WINSTON RECEIVED $15/HOUR SINCE SHE STARTED TRAINING FOR F.S.D. AT 625 MADISON AVE ALMOST 5 MONTHS (WEEKLY PAY). AFTER 5 MONTHS TRAINING F.S.D.-s/o MRS. S. WINSTON PASSED ON SITE TEST (FIRE DEPARTMENT'S), SHE RECEIVED $16/HOUR PAY. THE SAME SITUATION: F.S.D.-s/o MR. RYAN PALMER (AFRICAN-AMERICAN MALE, CLASSIC'S SECURITY EMPLOYEE, RECEIVED $15/HOUR SINCE HE STARTED TRAINING AS F.S.D. AND AFTER HE PASSED ON SITE

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

_E. Bronzini_

Date January 11, 2007 Charging Party (Signature)

SIGNATURE OF COMPLAINANT
_E. Bronzini_

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)
January 11, 2007

EEOC FORM 5 (REV. 3/01)

JULIA SHARIFOV
Notary Public, State of New York
No. 01SH6020927
Qualified in New York County
Commission Expires May 9, 20__

-5-

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act. See enclosed Privacy Act
Statement and other information before completing this form.

Charge Presented To: | Agency(ies) Charge No(s):

☐ FEPA

☒ EEOC

NEW YORK DISTRICT OFFICE and EEOC
State or local Agency, if any

THE PARTICULARS ARE *(Continued from previous page):*

FIRE DEPARTMENT'S TEST — HE RECEIVED $ 16/HOUR PAYMENT AS F.S.D. MRS. R. PALMER HAD THE SAME SERTIFICATION AND PERMITION TO WORK AS F.S.D. FROM FIRE DEPARTMENT AS ME, EIMONT BRONZINI. I HAD WORK EXPERIENCE FOR 2.5 YEARS IN CLASSIC'S COMPANY, BUT DID NOT RESEIVE RAISE SALARY AS F.S.D. $15/HOUR MORE THAN 3 MONTHS, BUT BOTH MRS.S. WINSTON AND MR.R. PALMER RECEIVED $15/HOUR FROM THE FIRST DAY TRAINING AS F.S.D. WITHOUT NO ONE DAY WORK EXPERIENCE IN CLASSIC'S COMPANY.

ON DECEMBER 07, 2006 I CALLED UNION REPRESENTATIVE MR. CARLOS RODRIQUES ASKING FOR HELP TO SOLVE MY PROBLEM WITH MR.R. JESSAMY, WHO DID NOT PAY ME MORE THAN 3 MONTHS SALARY RAISE AS F.S.D. POSITION FROM $9.80/HOUR — TO $15/HOUR ($5.20/HOUR DIFFERENCE) I STILL WORKING AS F.S.D AT 625 MADISON AVE., BUT RECEIVING JUST $9.80/HOUR AS SECURITY OFFICER. AFTER MY PH.CALL ON DECEMBER 07, 2006, TO UNION, NEXT DAY FRIDAY, DECEMBER 08, 2006 MR.R. JESSAMY (CLASSIC'S SCHEDULE MENAGER) FIRED MY WIFE (WHITE FEMALE) S/O LOLITA BRONZINI, (CLASSIC'S SECURITY EMPLOYEE FOR 2 YEARS) FROM HER PERMANENT WORK SITE FOR 1.5 YEARS AT 35 EAST 21 STREET, FRIDAY'S SHIFT 15.00 X 23.00. MR.R. JESSAMY REPLACED MY WIFE S/O L. BRONZINI WITH S/O CAROL REDDICK (AFRICAN-AMERICAN FEMALE), WHO JUST COVERED S/O L. BRONZINI WHEN SHE (L.B) WAS ON ,, EMERGENCY LEAVE OF ABSENCE ,,. BUT MR.R. JESSAMY DID NOT GIVE MY WIFE ANOTHER 8 HOURS WORKING SITE AND DID NOT PAY FOR THAT FRIDAY, DECEMBER 08, 2006 MORE THAN 4 WEEKS, WHEN L. BRONZINI CAME TO HER PERMANENT WORK SITE (FOR 1.5 YEARS) SIGNED IN SECURITY LOG BOOK, REPORTED FOR WORK SHIFT 15.00 X 23.00 AT 35 EAST 21 STREET TO CLASSIC'S DISPATCHER.... NOW, AFTER THAT 12/07/2006 PH.CALL TO UNION, MY WIFE, L. BRONZINI, HAS JUST 32 HOURS WEEKLY. BEFORE SHE HAD 40 HOURS WEEKLY PERMANENTLY FOR 1.5 YEARS AFTER THE SAME PH.CALL TO UNION MR.R. JESSAMY CUT MY (E. BRONZINI)S PERMANENT 40 HOURS TO 32 HOURS WEEKLY. CLASSIC'S SECURITY COMPANY OWE ME ALMOST $2.000 FOR MY WORK AS F.S.D. (SALARY DIFFERENCE — RAISE) CLASSIC SECURITY L.L.C COMPANY TO SOME SECURITY GUARDS GIVING A LOT OF OVERTIME HOURS EVERY DAY, BUT FOR THE WHITE EMPLOYEES HAVE'NT REGULAR 40 HOURS WEEKLY.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *When necessary for State or Local Agency Requirements*

I declare under penalty of perjury that the above is true and correct.

January 11, 2007
Date — E. Bronzini
*Charging Party Signature*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

E. Bronzini

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

01.11.2007

JULIA SHARIFOV
Notary Public, State of New York
No. 01SH6020927
Qualified in New York County
Commission Expires May 9, 20

-6-

13.  Five days after both FSD E. Bronzini and S/O L.Bronzini filed separate discrimination complaints to EEOC, on **January 16th, 2007** after 3.5 month delay, Classic Security minimally raised E. Bronzini's salary - from $9.80 to $12.00 per hour - it was only as Security Officer's salary with Fire Guard qualification, but not real appropriate FSD salary, which was $16 per hour at 625 Madison Ave site. Remaining unpaid, stolen by Classic E. Bronzini's FSD salary difference from $12.00 to $16.00 p/h ($16.00 p/h received all 5 FSDs at 625 Madison Ave. site) stolen difference was the amount of $4.00 per hour – what was the amount of $700.00+ stolen weekly or the huge amount of **$8,500.00+** (eight thousand and five hundred dollars) stolen per year. This $8,500.00+ huge amount of forcingly unpaid / stolen from FSD E. Bronzini by Classic money, from the salary difference,  covered the cost of 19(nineteen) On- Site Tests (FDNY On- Site Test cost $455.00) - $455.00 x 19 =$8,500.00 per year. All 19 On-Site Tests were paid from FSD E. Bronzini's pocket as obligation, charity, contribution for 19 mostly African-American Classic's FSDs every year (almost 5 years ).

14. Since **January 11th, 2007** to **June 2007**, (6 month period) in retaliation for discrimination complaint to E.E.O.C., Classic started aggressive, severe actions, which resulted in about $3,000.00 – almost 250 hours – stolen from FSD Eimont Bronzini's pay checks – stolen and returned back pay with big delay to E. Bronzini. $3,000.00 – stolen and returned by Classic in 1 (one) to 12 weeks (3 months) period delay. There were stolen by Classic Personal days, Sick days, Vacation Days pay (Vacation Days pay was stolen from S/O L. Bronzini too). There are existing  a documental E.Bronzini's weekly Pay Rolls which are evidential proofs of these intentional continuous actions  – *just per one work week before Easter there were stolen by Classic from FSD E. Bronzini almost $200.00 from about $400.00 weekly salary, *per first work week after the Easter there were stolen ~$200.00 from ~$400.00 weekly salary, *per work week before Mother's Day there were stolen ~$200.00 from ~$400.00 weekly salary and *per work week before Father's Day there were -- all ~$400.00 weekly salary stolen by Classic. Only per 6 weeks period there were stolen and returned by Classic with long delay almost $1000.00 from E. Bronzini's FSD salary. In official Classic's Pay Roll back pay was intentionally shown the only $ 390.00 or the only 32,5 hours instead of  the REAL back pay of 250 hours = $3000.00 per first 6months of 2007 year.

15. **On March 7th, 2007** Classic's African-American Director of Operations Mr. R. Jessamy within Classic's office issued the order- confidential E-mail – to  **"start... the coordinated game plan"** officially organized retaliation actions against FSD E. Bronzini (Classic was forced by Judge H.Baer's numerous strict orders in

-7-

providing hundreds of confidential E-mails during 2008 year's Motion to Compel Discovery )   , because of the beginning of intensive official investigation of the discrimination and retaliation actions committed by Classic Security- facts from  FSD E. Bronzini's and S/O L.Bronzini's Complaint to E.E.O.C. filed on January 11th, 2007.

16. On **March 10th, 2007** and on **March 17th, 2007** FSD E. Bronzini was illegally partially suspended from work, leaving him from his 32 hours permanent work just the only 16 hours weekly, for the period of 2 weeks - following the African-American Mr. R. Jessamy's and his office team's and according to "… Coordinated Game Plan" against E. Bronzini – Classic's confidential E-mail. FSD E. Bronzini filed official complaint to the Mr. C.Rodriguez from Union about it, which was stamped and dated by the Classic's Union.

17. On **March 23rd, 2007** Mr. Jessamy **canceled On- Site Test** for FSD E. Bronzini at 625 Madison Ave, which was scheduled with FDNY for the April 7th, 2007 – which was the result in following Classic's the "… coordinated game plan"- hard continuing intentional discrimination action and retaliation against E. Bronzini, who officially  filed complaint about committed by Mr. R. Jessamy intentional illegal suspension from work for  2 weeks to the Classic's Union, which (Union) was in Classic unofficially nicknamed "Brothers Union" (organized corruption Union of two twin brothers-Carlos Rodriguez and Michael Rodriguez). Any complaint about Classic's committed any kind of discrimination actions, which was officially sent to "Brothers Union"- always was leading by hard punishment – "Bench" – only 4 hours work daily, illegal suspensions from work and leading by other kind of financial discrimination forms-with the always the same Mr. R. Jessamy's next day explaining-punishment was not for complaint to the Union, but, because unknown Client or Building's Manager allegedly did not like You any more (without any written explanation who, when, why, how…) – you must be punished for at least of couple or more weeks or couple or more months or forever…

18. Since **September 26th, 2006** to **August 2007** (almost one year) FSD E. Bronzini worked at 625 Madison Ave. site without the On-Site Test and lowest salary - $9.80 per hour for 3.5 months and then, after a complaint filed to E.E.O.C. on January 11th, 2007, Classic's raise was only $12.00 p/h as the same Security Officer's (S/O) salary, just as regular S/O's salary with Fire Guard's qualification and  just a little bit higher than $9.80, but not REAL  FSD salary, which in Classic officially starting – pay rate is  $15.00 to $22.00 p/h and in 625 Madison Ave site was pay rate $16.00 p/h for all five(5) Fire Safety Directors, mostly African-Americans. Per this first year Classic's forcingly stolen salary difference from FSD E. Bronzini was $8,500.00, which was used to pay

-8-

for 19 mostly Classic's African-American FSD On-site Tests (Classic was forced to provide almost 5,000 documents which must to support the Case and which were repeatedly requested by Judge H.Baer in his official numerous strict orders during 2008 year's Motion to Compel Discovery. One of the most crucial, most evidential, most illustrative proof of Classic's intentional discrimination, provided among other 5,000 documental proofs , was the document, which reveal that per the only 2007 year 19 African-Americans FSDs from all list of 26 received On-Site tests within first 3 months of FSD work , but the ONLY one-CAUCASIAN-FSD E. Bronzini from 26 remained NOT YET CERTIFIED ).

19. Since **August 1st, 2007 to July 14th, 2008** E. Bronzini worked as FSD at 320 East 53rd street site 24 hours weekly and 16 hours as FSD at 415 East 59 street site weekly for the full second year with the lowest $12 per/hour salary instead of $16 per/hour without any On- Site Test. **On- Site Test was canceled for the second time** by African-American Mr. Jessamy on **October 18th, 2007** which was scheduled with FDNY at 320 East 53rd street site for the date of October 31st, 2007, because of the main reason- the amount of $4 per hour- FSD salary difference was and must be stolen from the White FSD E.Bronzini salary, weekly were stolen $700.00+ and for the second year as obligation, charity, donation - total yearly there were  stolen $8,500.00 – the amount paid for 19 Classic's African-American FSD's On-site tests.

20. On **August 10th, 2007** E. Bronzini paid for the **second time** $25.00 fee and, after successfully passed FDNY written test – exam, obtained **second FSD Certificate Of Completion Z-50,** which gave E.Bronzini temporary the right to work as FSD for the second year and which was valid again for 1 year, because Mr.R. Jessamy refused to give for FSD E. Bronzini On-Site Test for a period of full year, which, after successfully passed it, could give to E.Bronzini  FDNY issued Certificate of  Fitness F-58 which will be valid forever and E. Bronzini will not have to pay and to pass FDNY written exams every year for the FDNY Certificate Of Completion Z-50 which is valid just for only 1 year.

21. In **Fall 2007**, after almost 1 year of investigation, E.E.O.C. issued for FSD E.Bronzini and S/O L.Bronzini official Letters with the Notice of Right to Sue Classic Security for intentional continuing discrimination and retaliation.

On **November 19th, 2007** year E. Bronzini and his wife, L.Bronzini filed Complaint for Employment Discrimination in U.S. District Court Southern District of New York.

22. On **December 28, 2007** Mrs. Lolita Bronzini received from FedEx docket number for discrimination  Civil Case # 07 CV. 11104 (HB) against Classic from the U.S. Court on, and two days after, on December 31, 2007 at 10 pm 62nd Police Precinct's 15-20 police officers arrived to Plaintiffs' apartment in Brooklyn, Bensonhurst (Italian Mafia's area) without anybody's prior  phone call to 911 City Service, with committed  illegal intervention, at exactly two (2) hours before FSD Eimont Bronzini's New Year's night work shift at 415 E 59th Street site (shift 01/01/08 midnight 12 a.m. until 8 a.m.).

Police officers handcuffed Mr. Eimont Bronzini, then hardly battered 20+ times him with heavy metal flashlight (beaten almost to death), and  the very beginning of the  **Execution** Police supervisor explained to his 15-20 P/Os, between whom where two female P/Os, what  must be done on both "Russians": - "we(P/Os) will lock You (Eimont Bronzini) up and we (P/Os) will f…ck Your (E.B's.) wife (Lolita Bronzini) together..". After such a clear explanation, Police officers handcuffed Mrs. Lolita Bronzini, sexually assaulted her in attempting to group rape and then after that "Execution" arrested for 20+ hours Mrs. Lolita Bronzini with rised 2nd Degree criminal charges – as assaulting Government- 1year in jail. On January 1st,2008 year Mrs.L.Bronzini was the only  one female person held until 6 a.m. in Brooklyn Central Booking under arrest through whole the night of "New Year's Eve"- second one and other, arrested that night, female  persons  arrived  only  after 6a.m. Mrs.L.Bronzini ,after the committed 'Execution" on her and her husband (E.B.) by corrupted 62nd Precinct's Chief, Captain Congirela's detailed order to all on duty P/Os- became the only one female the most criminal from whole Brooklyn with millions of good ( at that  night) reputation residents. .Mr. E. Bronzini handcuffed, hardly beaten and barefoot was taken by P/Os to Coney Island's Psychiatric Ward, where he was the only one "Patient" kept with handcuffed both hands   to the bed for period of 16 hours.  Police's committed "Execution" on both Plaintiffs actions are under investigation, about Police's 62 Precinct Chief's, Captain, Congirela's close connection to the Defendant in retaliation organizing the "New  Year's Execution".The Police's made "Execution" create criminal's and psychiatric patient's records for Plaintiffs ,which (such kind of records) from the start of initially planning  intended to be used  in Defendant's favor to stop - to finish - all Discrimination Case at the U.S. Court in one day - 24 hours period, because Plaintiffs would become – L.Bronzini as criminal and E.Bronzini as psychiatric patient - that is stopping the start of the case. Plus Plaintiffs would become unemployed in any Security system (criminal record + psychiatric ward record + no show no call-  termination).

Therefore, "Bad Santa's"( by unknown) organized "New Year's Execution" was under the investigation by C.C.R.B. (Civilian Complaint Review Board) and Internal Affairs Bureau in the close connection to the retaliation for the Mr. Eimont Bronzini's and Mrs. Lolita Bronzini's  started Civil case # 07 CV. 11104 (HB).

The Brooklyn Criminal Court completely dismissed Mrs. Lolita Bronzini's 2nd Degree criminal charges

on October 17th, 2008.

Mr. Eimont Bronzini called off on December 31st 2007 (with Classic) for that January 1st, 2008 New Year's 12a.m. to 8a.m. Night shift, because of his sickness – this was the reason why FSD Eimont Bronzini was not fired/terminated from Classic for "no call, no show", which was in mind in the initial "…coordinated action plan"

In the beginning of 2008 year 62nd Police Precinct's Chief Captain Congirela was fired/terminated from NYPD after a couple of months of investigation of organized by his order "New Year's Execution" involving all 62 Precinct's 15-20 cops on duty in criminal actions    against Plaintiffs and in favor for multimillionaire/multibillionaire Defendant in effort to close the Discrimination case in 24 hours period.

In the **beginning of 2008**, after Classic's and 62nd Police Precinct's Chief's Captain Congirela's cooperation on  December 31st, 2007 organized "Execution" in retaliation on both FSD Eimont and S/O Lolita Bronzini for their raised Discrimination Case against Classic Security Company in U.S. Southern District Court (Case's Docket #07CV11104(HB)), and then  after CCRB, Internal Affears Bureau and other Federal, State, City institutions started full range of investigation, Mr. **David A. Reiss**, Senior Vice President of Classic Security, was fired/terminated from Classic, and was substituted by Ms. Anne D. Fahy,  for the main reason , when he (D.R.) only one time provided  REAL HELP to both Bronzinis on **June 12th, 2007** in recovering at that time still remained (from almost $3,000.00 stolen) over $1,000.00 in stolen by Classic's R. Jessamy's intentional "calculations" – stolen Vacations' pay, Personal days' pay, Sick day's, weekly work pay – stolen only per 6 months period.

**Classic had   posted such information about fired/terminated Mr. David A. Reiss's professional background in 2007-2011 year on Internet :**

"**David A. Reiss**, Senior Vice President of Classic Security, recently earned the coveted Certified Protection Professional (CPP) designation, the **highest credentials offered in the security industry**. The CCP designation is awarded by ASIS International after completion of an intensive qualification and testing program through which applicants demonstrate expertise in the areas of security solutions and best-business practices".

Then, to replace David A. Reiss, Classic Security hired long time unemployed Ms. **Anne D. Fahy**, as an Executive Vice President of Classic Security, to cover with the intention to  hide Classic's and 62nd Police Precinct Chief's Captain Congirela's cooperation  on December 31st, 2007 organized "Execution" in retaliation on both Bronzinis for their raised Discrimination Case against Classic (U.S. Southern District Court with Docket #07CV11104(HB) ) with the main intention  to stop started investigation in all – City's, State's and Federal investigative institutions.

**Classic in 2008 year posted and still in 2011 year the same information is remaining on Internet about Ms. Anne D. Fahy's professional background:**

"... **Anne** joins the company from a career spanning over 20 years in federal law enforcement with the Criminal Investigation Division of the Internal Revenue Service. Prior to joining Classic, Anne served as Special Agent in Charge of the Criminal Investigation Division Field Offices in New York and New Jersey. In addition to overall investigative, operational and management responsibilities, Anne served as the agency head on several federal tasks forces focused on money-laundering, narcotics and terrorist activities, working with the FBI, Secret Service, DEA, NYPD and ICE / Homeland Security. Anne also served as the national Deputy Director of Strategy and Review, and as the Deputy Director of Information Technology and Investigative Services. Here, Anne oversaw national policy and strategy, and information technology systems and development, utilizing her skills in project management, team leadership and productivity enhancement. Anne will be responsible for overseeing all operations within Classic Security. She will be instrumental in successfully executing security initiatives for clients, as well as, achieving company goals and objectives".

In the year of 2011 ( after 3+years in Classic) Ms. Anne D. Fahy, who in 2008 year replaced real professional in security field Mr. David A. Reiss , revealed  in documentary way herself as completely unprofessional fraudster , official documents falsificator , whose function in Classic became as shamefull assistance in African-American Mr.R.Jessamy's …''coordinated game plan'' against FSD E.Brozini in hard continued intentional discrimination and retaliation actions ( after his 7+ years work without any work violation or any lateness record) - fireing/terminating him from Classic with NO REASON and then since February 11th,2011 year started hard intentional discrimination and retaliation actions against his (E.B.) wife, S/O-FSD L.Bronzini ,Classic's employee for almost 7 years , without any record of work violation or any lateness. All Ms. Anne D. Fahy's (Super Agent) hidden, unknown specific previously obtained talents , methods and other abilities used in assisting Mr.R.Jessamy in his continued intentional discrimination and retaliation actions against both Bronzinis ,which Classic  forgot to add to her 20 years long  carrier list,  posted in 2008 year and still in 2011year remaining on Internet page, will be visibly in documentary way revealed and provided in further  paragraphs.

23. On **April 17th, 2008 year** there were issued summons by FDNY for failure to comply with violation order #E-236625 for the Classic Security Company and 320 E. 53rd street Building's Management which were addressed (summons) for the violation of FDNY rules  by the African-American FSD B.Watson, who abandoned the post (but was not fired from Building or from Classic) , left the building in which the  FSD must

be on post 24/7 and additionally addressed summons for status of FSD E. Bronzini, who worked in violation of Rules of City of New York ( RCNY) and Rules of FDNY more than 6 months without FDNY On- Site Test, which was intentionally not given at that time for 2 years to E. Bronzini by Classic's Director of Operation African-American Mr. R. Jessamy.

24. On **July 14th, 2008** FSD E. Bronzini was fired from 320 E. 53rd street after one year of permanent FSD work at this site without given him On–Site Test and the only $12.00 p/h salary, without committed any work related violation, without issued any Write - Up, without any Command Discipline, without any explanation, because African-American Mr.R. Jessamy did not want EVER to give him -White FSD On-Site Test even after FDNY issued summons (#42567477), in which FDNY insisted on as a **must to** be given by Classic On-Site Test for FSD E. Bronzini within first 3 month period of time from the start working as FSD.

25. On **July 28, 2008** E.Bronzini paid $25.00 fee and successfully passed again **third time** FDNY written exam and obtained **third FSD Certificate Of Completion Z-50**, which was valid for 1 year, because Mr. Jessamy refused to give for E. Bronzini FSD work position with possible On-Site Test, which after passing it will give FDNY Certificate of Fitness F-58 valid forever and E. Bronzini should not have to pass FDNY written exam every year for the FDNY FSD Certificate Of Completion which is valid for the only 1 year.

26. Since **August 2007** until **middle of 2009** year FSD E. Bronzini continued to work as FSD 16 hours weekly at 415 E. 59th street, where it was impossible to take On-Site Test, because of lack Public Address System in that site's Fire Command Station, which must necessary be present to make an announcements for the taken 1st On-Site Test.

27. Since **July 14th, 2008** after firing FSD E. Bronzini from his 320 E. 53rd Street site 24 hours weekly FSD position on weekends and after the time of middle of the 2009 year, when there were at 415 E 59th Street site's two days weekly 16 hours night's shifts discontinued FSD position and changed into Security Officer's position Mr. Jessamy gave FSD E. Bronzini only Security Officer's and Building Evacuation Supervisor's (BES) work sites. And at the same time every day, every week, every month Classic advertised about always available FSD work with starting $15.00 to $22.00 p/h salary and that there were advertised always need of hiring new FSDs for Classic's 100+ work sites, which included 100+ SL Green Realty Buildings (an Alliance Buildings Services Company's C.E.O Mr. Garry Green is co owner of 100+ SL Green Realty Buildings).

28. Since **December 26ᵗʰ, 2006 to February of 2011 year** all FSD E. Bronzini's written stamped and dated complaints to the Classic's Union main representative Mr. Carlos Rodriguez (real brother of Mr. Michael Rodriguez – the President of the Alliance of Building Services Company, to which belongs Classic Security ) were ignored without any answer and just always immediately followed hard retaliation actions from Classic's Director Of Operations Mr. Jessamy – stolen E. Bronzini's salary, illegal suspension from work, in retaliation cutting not only E. Bronzini's weekly permanent work hours from 40 to 32 but at the same time cutting his wife's weekly hours to 32 for a long 5+ years period and other discrimination severe actions as lowest $9.80 - $12.00 per hour salary for FSD work position, no given On- Site Test for the 4,5+ years and other.

29. Since in **April 2008 of by** FDNY issuance of Summons for Classic Security an Allied of Building Services Company and received big monetary Fine- the result of it was  the hard retaliation: firing from FSD work after one full year  from 320 E. 53ʳᵈ Street site, no were given more available FSD position with possible On-Site Test for E. Bronzini  by Mr. Jessamy until January 31ˢᵗ, 2011 – just only lie and empty promises for almost 3 years, that if it will be available in future, but it will be without appropriate FSD salary for the same as all local FSDs identical work and with as usually the only obligation – charity from forcingly stolen by Classic FSD E. Bronzini's salary's difference - $4.00p/h to pay for the 19(nineteen)  FSD On-Site Tests yearly, mostly African-American FSDs, who always received first On-Site Test within 3 months of work as FSD, but for E. Bronzini no On-Site Test for almost 4.5 years (54 months).

30. Since **July of 2008 year** E. Bronzini 1 to 4 times per month made appointments with Mr. Jessamy, waiting 1 to 2 hours in the Classic's office for it, even no one S/O or FSD waited in the line for an appointment with Mr. R. Jessamy. All appointments were without any result – only Mr. Jessamy's lie and promises about in future allegedly possible mystic or never existed FSD working sites for E. Bronzini, which usually disappeared after 6 -7 months and always were without appropriate FSD salary and without possibility of On- Site Test's exact day.

31. **January 15ᵗʰ, 2009** was the date, when Honorable Judge H. Baer decided to do not open for the fair review ( to review of **both** Plaintiffs' and Defendants' cases is a **must** in U.S. Court) any of by Plaintiffs' provided *Plaintiffs' Local Civil Rule 56.1 Statement of Facts and Plaintiffs' Memorandum of Law in Opposition to Motion for Summary Judgment* with supportive 204 sufficient evidential documental exhibits, proofs. Judge H.

Baer closed the case with  his helper's, law student's, prepared super simple version of case's review: just **rewriting, recopying** the **only** the Defendant's created super simple case's only verbal (without any documental proofs) version with the absence of discrimination, intentionally withholding 95% intentional discrimination and retaliation  actions continuously committed by Classic against Plaintiffs.  But because of evidential, U.S. District Court Southern District of New York Judge H. Baer's involvement in favoritism and corruption practices under U.S. Court roof did not let to start the fair Jury Trial. U.S. District Court's Judge H. Baer under financial pressure off Defendant / multibillionaire on **January 15, 2009** made a favor for the Defendant – closed the case without opening it for the fair review - for a Classic an Alliance of Building Services Company's (2.2 billion) CEO /Owner- Mr. Garry Green, who additionally together with his father Mr. Larry Green owns 104+ High-Rise office buildings in Manhattan. Judge H. Baer was so overwhelmed by Defendant's /multibillionaire financial power that forgot to mention in his Closing Opinion and Order even with one word about Eimont and Lolita Bronzini's /Plaintiffs' provided case with ( still in U.S. Court remaining 10 case's # 07CV11104 (HB) copies) existing supportive 204 documental proofs, evidences, which were selected as the most evidential, the most sufficient, from the recovered in Discovery Period (with Judge's H. Baer strict 2 orders in Motion to Compel Discovery) almost 5,000 supportive documents.

On **January 15**[th], **2009** U.S Court's judge H. Baer made a favor for Classic by closing the discrimination case in one hour without opening it for the fair revue. There were provided by Eimont Bronzini and Lolita Bronzini 204 documental proofs, evidences supporting the case, but judge refused to let the discrimination case to go for the fair Jury Trial.


32. Included below please find the full original version of *Brief* (with included original *Plaintiffs' Local Civil Rule 56.1 Statement of Facts* and *Plaintiffs' Memorandum of Law in Opposition to Motion for Summary Judgment*), which was submitted (**15 copies**) to U.S. Court of Appeals for the Second Circuit on **June 19**[th], **2009** (which was supported with most crucial 68 documental most supportive evidences as Exhibits selected from 204 initial documental Exhibits), in which (BRIEF), in detailed form, there are L. and E. Bronzinis' explanations and findings of Honorable Judge Harold Baer's private hidden  favoritism practices (corrupted way) under the U.S. Court roof, which resulted in dismissing L. and E. Bronzinis' full case without opening it for the fair review, which (revue) is a MUST in U.S. Court.

Please see attached on pages #..16.-.44.. BRIEF.



# BRIEF

## Docket No. [s] : 09-0996 - cv

Lolita Bronzini,

Plaintiff - Appellant,

Eimont Bronzini,

Consolidated - Plaintiff - Appellant

v.

Classic Security L.L.C.,

Defendant - Appellee

## **BRIEF**

We, Lolita Bronzini and Eimont Bronzini - the Plaintiffs/Appellants, believe that the District Court's Judge Harold Baer was wrong in his judgment denying the Plaintiffs' right for the fair jury trial, and we also believe that the Judge closed the entire case without opening it for a review. In this discrimination case on one side there are the Plaintiffs/Appellants - Lolita Bronzini, Security Guard and Eimont Bronzini, Fire Safety Director, who couldn't afford the court fees, council fees, and are on I. F. P. status, while at the other side - Defendant/Appellee Classic Security - multi million dollar company with 700 employees, which is a part of and is under the roof of Alliance Building Services Company with thousands of employees and with the same C.E.O. Gary Green. Defendant/Appellee Classic Security Company is represented by the Law Firm with A. Singer - Lawyer with 16 years of successful carrier, specializing in discrimination cases.

Defendant/Appellee was unable to use anything from their Interrogatories, as well as the Defendant's/Appellee's Depositions, which were almost all fraudulently changed into a mess by the Defendant's Lawyer in cooperation with the Global Services Company, where almost all the answers in the Depositions were changed into opposite meanings for the Defendants wanted way, but were revealed as lies and defeated by the Plaintiffs/Appellants with the originally true answers in 135 notarized pages of Transcript Deposition Corrections (made by Plaintiffs) using the expanded pages, because of the huge containment of lies and fraud intentionally made by the Defendant.

Honorable Judge Harold Baer decided to do not open for the review any of Plaintiffs'/Appellants' provided *Plaintiffs' Local Civil Rule 56.1 Statement of Facts* and *Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment* with 204 sufficient evidential documental exhibits, proofs. Honorable Judge closed the discrimination the case on December 15th, 2009 with the law student's prepared super simple version of case's review: rewriting, recopying only the Defendant's created super simple case's verbal version with the absence of discrimination, withholding 95% intentional discrimination actions committed and continuously committing against Plaintiffs/Appellants.

Judge's dismissal decision was based only on Defendant's verbal undocumented arguments and directly copying, rewriting Defendant's simple version (25 pages): making it even shorter and making it into the super simple version (11 pages), in which Judge and Law Student even forgot to include one of the main Mrs. Lolita Bronzini's discrimination charges under the Family Medical Leave Act (FMLA), which was mentioned by the Defendant but forgotten to include to the final decision by the Judge. Defendant has fraudulently mentioned FMLA just as "Lolita Bronzini's visit to her old mother" with added comments in smallest letters all the way at the bottom of the page for the purpose of the lesser visibility, but not as "Lolita Bronzini's under FMLA for intense nursing of her old mother after the complicated surgery in Lithuania" which was originally raised in the Amended Complaint and explained by the Plaintiffs with the documental exhibits *(Exhibit # 67 B)(Exhibit # 68 B)*.

Law Student with Judge Harold Baer in recopying and rewriting only the Defendant's lies forgot to check the Defendant's Lawyer's fraudulently provided as the main evidence *(Exhibit # Z)* - 40 pages of Time keeping - "Back Pay"- which are the mixed mess of the eight (8) different work profile companies with the thousands of employees under the roof off the SL Green Real Estate Company and the Alliance of Building Services Company, with the CEO Gary Green, who owns all these eight (8) companies: fqm- First Quality Maintenance Inc. / oldfqm - Old First Quality Maintenance Inc. / cla - Classic Security / bsc - Bright Star Courier Services / or - Onyx Restoration Works / op -SL Green Operating , and other companies *(Exhibit # 85)*. Including Mr. H. Salim, with Back Pay total hours of 112.50 in the Defendant's Exhibit Z - CS 0695, who worked for OP - SL Green Operating Company, which is a completely different work profile than CLA - Classic Security *(Exhibit # Z CS 0695)*, which

was used in the *Opinion and Order* by Judge Harold Baer, in rewriting and recopying from Defendant's super simple undiscriminatory case's version, as a biggest evidence to defeat Plaintiff's case. In addition, Defendant provided evidential exhibit with Mr. J. Porter, with the total hours of 11.50 in the Defendant's *(Exhibit # Z - CS 0692)*, who worked for FQM - First Quality Maintenance Inc., which is a completely different work profile than CLA - Classic Security *(Exhibit # Z CS 0692)*. All these 40 pages of Time keeping fraudulently provided by the Defendant's Lawyer are not acceptable as the evidences, because they are completely not related to the case - Lolita Bronzini and Eimont Bronzini v. Classic, but were used by Judge Harold Baer as the sufficient proofs to deny the case.

One way rewriting, recopying just the Defendant's simple version, Law Student's and Judge Harold Baer's refusal to review documents, and exhibits provided by Plaintiffs, resulted in ignoring one of the most crucial *(Exhibit # 15)* - documental evidence of racial discrimination under the Title VII of the Civil Right Act of 1964. 42U. S.C.: in the Attachment to Classic Security LLC Position Statement *(Exhibit # 15)* where there are 26 listed FSDs, and where FSD Eimont Bronzini - Caucasian - is the only one NOT YET CERTIFIED (not given the On-Site Test for more than 2+ years). There are listed 19 African - Americans and 3 Hispanics who all except Eimont Bronzini were given (by Classic's Mr. R, Jessamy's African - American office team) the On-Site Tests within 3-6 months timely period required by Rules of the City of New York (RCNY) *(Exhibit # 5)*, all these facts are the clear acts of intentional coordinated racial discrimination against Plaintiff/Appellant Eimont Bronzini.

Judge Harold Baer refused to review provided by Plaintiffs 204 exhibits which are the essential documental proofs, including provided New York City Fire Department's documents (FDNY Summons) requested by Plaintiff's Subpoena, New York City Rules and Regulations, documents from Criminal Court, NYPD's investigation, Civil Complaint Review Board, E.E.O.C. (Equal Employment Opportunity Commission), real pay checks issued by Classic's Security (with Back Pay, Vacation Pay, Personal Days and other), Classic's Discrepancy Forms, Complaints to the Union (stamped and dated), Classic's "confidential" correspondence (e-mails) with the statements of "coordinated game plan" - detailed documented intentionally coordinated discrimination actions against Plaintiffs, documented entries from Classic's Log Books and other documents - all 204 essential proofs are supporting numerous intentional Discrimination Acts against Plaintiffs.

From the beginning the Discrimination Case was tried to be closed in 24 hours period using Police excessive force to help "Bad Santa", who needed the Plaintiffs to receive criminal record for Lolita Bronzini and Psychiatric Ward record for Eimont Bronzini in their discrimination case against multi-million dollar company.

Honorable Judge's decision to close the case and Law Student's cooperation in rewriting, recopying Defendant's only lies was done in one hour, what was done 24 times faster than the "Bad Santa's" order to 62nd Police Precinct's 10-20 Police officers who on December 31st, 2007 at 10:30pm - New Year's Eve - committed punishment in execution style to both Plaintiffs in attempt to close the discrimination case in 24 hours. Without anybody's 911 call, police officers illegally entered Plaintiffs' apartment, handcuffed both Plaintiffs, sexually abused Lolita Bronzini, numerous times hardly battered Eimont Bronzini, then arrested for 20 hours Lolita Bronzini with criminal charges, and kept Eimont Bronzini handcuffed to the bed for 16 hours in Coney Island's Psychiatric Ward *(Exhibit # 86 A, B, C, D) (Exhibit # 87)*.

The New York Fire Department's Summons *(Exhibit # 4) (Exhibit # 5) (Exhibit # 6)* were raised for Classic Security and Classic's Client of 320 E 53rd Street Location (where Eimont Bronzini worked 1 (one) year as FSD) for the refusal to follow the Rules of the City of New York (RCNY) *(Exhibit # 5)* that Classic **must** in 3 month period to give 1st On-Site Test for FSD and in 6 month period 2nd On - Site Test if FSD failed the first On Site Attempt - Summons were issued by FDNY regarding not giving FSD Eimont Bronzini the On-Site Test for almost 2 years, which is a violation of

the Rules of the City of New York (RCNY).

Judge Harold Baer did not consider any of the Plaintiffs'/Appellants' provided 204 sufficient documental evidences as exhibits, which supported the Plaintiffs' provided *Plaintiffs' Local Civil Rule 56.1 Statement of Facts* and *Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment* and in which the Plaintiffs completely revealed the Defendant's lies and defeated the Simple Defendant's untrue version, by  providing the REAL case's version with the supportive REAL documental evidences. Therefore we, the Plaintiff's/Appellants' are providing these 2 documents again with intention to be viewed and reviewed for the FIRST time to the Court of Appeal's consideration for the fair judgment of the case (previously ignored to be reviewed and denied by Judge Harold Baer). In the Appendix we are including 68 documental supportive evidences as Exhibits from 204 initial documental Exhibits (which all are from the Record on Appeal) which support *Plaintiffs' Local Civil Rule 56.1 Statement of Facts* and *Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment,* and which are the most crucial and the most supporting in our discrimination case. Selected Exhibits will be marked in  **bold**,  **underlined** and in blue color script, in order to separate them from the rest 204 sufficient Exhibits which were initially provided to the Judge Harold Baer, but were ignored by the judge:

## ***Plaintiffs' Local Civil Rule 56.1 Statement of Facts:***

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, Plaintiffs Lolita Bronzini and Eimont Bronzini, maintains that the following material facts are the subject to dispute and must be tried in the Trial:

1. *(Defendant):*
*Plaintiff Eimont Bronzini ("Mr. Bronzini") is a 50 year old Caucasian male. He was born in Lithuania. (Patchen Aff., Ex. C at p.3.).*

*(Plaintiffs):*
The facts are not the subject to dispute.

2. *(Defendant):*
*Mr. Bronzini currently works at Classic as a Fire Safety Director ("FSD") trainee. (Jessamy Aff., ¶ 13.)*

*(Plaintiffs):*
Mr. Bronzini currently works as Fire Safety Director (FSD) *(**Exhibit #18 A**)* (*Exhibit #17*) (*Exhibit # 16*), but not as **Fire Safety Director (FSD) trainee**. Mr. Jessamy's new invention -  **FSD trainee** status, which never officially exists in Fire Department's of New York  documents *(**Exhibit # 18 A**)* (*Exhibit #17*) (*Exhibit # 16*). Classic intentionally  created **FSD trainee**  status for the  only reason - big profit ($700+ monthly) from Mr. Bronzini's salary's difference between $12 per hour FSD trainee and $16 per hour as FSD for the same identical work and responsibility at the same  625 Madison avenue site *(**Exhibit # 3**)* (*Exhibit # 2*).

3. *(Defendant):*
*Plaintiff Lolita Bronzini ("Mrs. Bronzini") is a 46 year old Caucasian female. She was born in Lithuania. (Patchen Aff., Ex. C at p.3.).*

*(Plaintiffs):*

The facts are not the subject to dispute.

*4. (Defendant):*
*Mrs. Bronzini is currently employed by Classic as a security officer.*

*(Plaintiffs):*
The facts are not the subject to dispute.

*5. (Defendant):*
*Classic is engaged various property owners and managers to provide on-site 24 hour security services at buildings and construction sites throughout the New York metropolitan area. Classic employs approximately 700 employees in New York. (Jessamy Aff., ¶ 2.)*

*(Plaintiffs):*
Not Classic (by Mr. Jessamy), but exactly - Classic Security an Alliance of Building Services Company employs approximately 700 employees in New York. Gary Green  and Michael Rodriguez have consolidated their four service firms - First Quality Maintenance, Classic Security, Bright Star Couriers and Onyx Restoration Works - under one new umbrella entity, Alliance Building Service Company *(Exhibit # 85)*.

*6. (Defendant):*
*Classic negotiated a collective bargaining agreement ("CBA") with the National Union of Security Officers & Guards (the "Union") that governs Classic's responsibilities with respect to the scheduling of security personnel. The CBA provides that  Classic   "shall have the right to set hourly work schedules in accordance with the needs of the Company." Mr. Bronzini is a member of the Union. (Jessamy Aff., ¶ 14.)*

*(Plaintiffs):*
CBA also provides that Classic must follow the EEO Law, not to discriminate by the race, national origin, age of it's employees. Classic negotiated a collective bargaining agreement ("CBA") with the Nation Union of Security Officers & Guards ("the Union"), which was signed by Alliance of Building Service Company's President Mr. Michael  Rodriguez in accordance with his brother Mr. Carlos Rodriguez - a representative for Classic in NUSOG (Union) - 'Brothers Union" *(Exhibit # 85)* *(Exhibit # 75A) (Exhibit # 75 B).*

*7. (Defendant):*
*The decision to assign a security guard of FSD to a particular building for a particular shift is based on several factors. All employees are asked to complete a New Hire Availability Form so that Classic is aware of an employee's preferences for their work schedule. Classic also takes into consideration an employee's skill set, experience, pay rate (as different clients have different pay scales that they are willing to pay) and client preferences. (Jessamy Aff., ¶ 4.)*

*(Plaintiffs):*
Classic's Mr. Jessamy also takes into consideration an employee's race, national origin, age, for the pay rate (as different client have different pay scales, that they are willing to pay) *(Exhibit # 20 A-G)(Exhibit # 20 A, D, E) (Exhibit # 3)* (Exhibit # 14 A-J) (Exhibit # 13 A-D) *(Exhibit # 13 A, B).*

*8. (Defendant):*
*The "bench" is a job assignment where a Classic employee without a permanent shift, or who wants to work more hours, is available to fill in for security personnel who are absent from their regular shifts. (Jessamy Aff., ¶ 5.)*

*(Plaintiffs):*
"…The "Bench" - four (4) hours guarantee at Classic Security Headquarters with the possibility of a full tour" - citation from the 2007 Agreement between Union (N.U.S.O.G.) and Classic *(Exhibit # 88)*. "Bench" - just 4 hours daily - becomes a "punishment" after a 30 days probation period in Classic, because it is not regular 8 hours shift. To get 8 hours Plaintiffs had to work on "Bench" for 2 days, because there were always not enough 8 hour assignments for the white foreigners, who were punished by Classic's African-American office team - Mrs. Bronzini with 100+ weeks - forever, and Mr. Bronzini for almost 100+ weeks on 4 hours daily "Bench". While Classic is hiring new non-whites security guards - 284 in 9 month period, but for whites there is only a "punishment" of 4hours daily "Bench" forever.

*9. (Defendant):*
*Classic's clients often request that specific security personnel be removed from their building or be provided with greater or fewer shifts. Security personnel can be removed from assignments for performance related issues, the scheduling needs of Classic or at the request of a client based on performance, compatibility, schedule or pay rate. (Jessamy Aff., ¶ 6.)*

*(Plaintiffs):*
The facts are not the subject to dispute.

*10. (Defendant):*
*Before Classic can hire someone, it needs to review the numerous applications receives, as well as determine what its specific staffing needs are at that time. Classic also runs a background check on employees it desires to hire. Additionally, if the employee already has a security license, Classic needs to ensure that it is still valid. Classic also needs to review its scheduling to determine how to best train and integrate a new employee into the company. Only after all of these steps are completed will Classic contact the potential new employee for an interview. (Jessamy Aff., ¶ 7.)*

*(Plaintiffs):*
Classic needs to review who recommended the new applicant (*Exhibit # 11 A-D*) (*Exhibit # 11 B*) by the race and national origin of the applicant. Classic determined the scale of the salary, without any background, previous experience are preferred by Classic without specific certifications from FDNY are considered for the FSD positions (*Exhibit # 12 A-B*) (*Exhibit # 12 B*) and security officers without security licenses.

*11. (Defendant):*
*Classic does not have a formal policy with respect to breaks for its security officers or FSD's. Where security personnel are staffed at job sites in which more that one officer is on duty at the same time, these officers provide coverage for each other to allow for breaks. (Jessamy Aff., ¶ 8.)*

*(Plaintiffs):*
At job sites in which are just only one security officer or FSD on duty rest, lunch breaks are provided

· just by special Mr. Jessamy's order involving Field Supervisors for the break coverage according to the employees' race, national origin, age and a close relation (recommendations) *(Exhibit # 55 A-B)* *(Exhibit # 55 B-E)* without any respect to the other categories employees, who were working at standing only sites for 16-17 hours *(Exhibit # 60 A-E)* *(Exhibit # 60 A, B, C)*.

12. (Defendant):
*Classic has its field supervisors visit each job site. When they make their visit, the field supervisor asks the officer on duty if they need a break. (Jessamy Aff., ¶ 9.)*

*(Plaintiffs):*
Field Supervisors did not ask the officers on duty if they need a break, but just in Classic's "Confidential" E-mails *(Exhibit # 58 A-B)* *(Exhibit # 56 A-C)* showing that how just 1 or 2 from 20 security officers or FSDs needed a break, but never giving breaks in the real life *(Exhibit # 57 A-C)* *(Exhibit # 80)*. When Field Supervisor gave breaks by special Mr. Jessamy's order - there were always entries about break times in the log book *(Exhibit # 55 B-E)*.

13. (Defendant):
*Classic provides its employees with the opportunity to receive vacation pay in lieu of taking time off. This allows an employee to receive double pay for the time period in which they receive their vacation pay and continue working. An employee must complete a Vacation Request form in order to obtain approval. The Vacation Request Form is also used to request vacation time. The Vacation Request Form is designed so that an employee can identify three choices for scheduling their vacation. (Jessamy Aff., ¶ 55.)*
*(Plaintiffs):*
The statement by Mr. Jessamy states that the Vacation Request Form is designed so that an employee can identify 3 choices for scheduling their vacation - is false, intentionally to cover Classic's stolen Mrs. Bronzini's 6 (six) vacation days and returned after long delay, because of "misunderstanding" - mistake - the "mysterious" Mr. Jessamy's 3 choices - never existed *(Exhibit # 64 A-B)**(Exhibit # 66 A-B)* *(Exhibit # 66 B)*. At the same time Classic's African-American Mr. Jessamy's office team stole 6 (six) vacation days from Mr. Bronzini *(Exhibit # 30 A-G)* *(Exhibit # 30 A, B)*, but without any "three choices" just in intentional retaliation for the complaint to the E.E.O.C. and because white foreigners have no rights in Classic for the Vacation, and Personal days *(Exhibit # 27 A-B)**(Exhibit # 29 A-B)*.

14. (Defendant):
*In December 2007, at the request of Classic's client, S.L. Green, Classic removed all chairs from the security desks and lobbies of that client's buildings. This policy applied to all employees assigned to S.L. Green's buildings, regardless of age, race, national origin, gender or otherwise. (Jessamy Aff., ¶ 11.)*

*(Plaintiffs):*
"This policy applied to all employees  assigned to SL Green's buildings, regardless of age, race, national origin, gender or otherwise" (Jessamy Aff. 11) statement is false, because only Mrs. Bronzini, who worked 16-17 hours without any breaks, must follow the policy for "all employees", while other employees - non whites had breaks, working just 8 hour shifts at 440 9th Avenue site *(Exhibit # 59 A-B)* *(Exhibit # 59 A)* *(Exhibit # 60 A-E)* *(Exhibit # 60 A, B, C)*.

15. (Defendant):

*The break policy was in addition to an existing building policy tat prohibited food at the lobby desk during an employee's shift. This policy was for all employees working at that building; not only Mrs. Bronzini. (Jessamy Aff. ¶ 12.)*

(Plaintiffs):

"The break policy was in addition to an existing building policy that prohibited food at the lobby during an employee shift. This policy was for all employees working at that building ,not only Mrs. Bronzini" (Jessamy Aff, ¶ 12.) - These Classic's and SL Green's prohibitions for the breaks and food in the lobby was discriminated only against Mrs. Bronzini, who worked not one shift (8 hours), but two shifts (16 hours) in 24 hour day. Nobody at 440 9th Avenue site worked 16-17 hours daily (two 16h. weekend shifts) all time standing without any rest breaks and without any meal breaks (*Exhibit # 60 A-E*) (*Exhibit # 60 A, B, C*) (*Exhibit # 59 A-B*) (*Exhibit # 59 A*).

16. (Defendant):
*Certain buildings require an FSD to be on duty. The fire department administers an on-site test that certifies an individual as an FSD. Prior to taking the on-site test, an individual must take a fire safety director class, pass a written test, establish that they have met the experience requirements for an FSD, and receive a Certificate of Completion from the fire department. (Jessamy Aff., ¶ 16.)*

(Plaintiffs):

"The Fire Department administers an on-site test, that certifies individuals as an FSD. Prior to taking the on-site test, an individual must take a fire safety director class, pass a written test, establish that they have met the experience requirements for FSD, and receive Certificate of Completion from Fire Department" (Jessamy Aff. 16) - statement is intentionally false, because not the On-site test certifies an individual as FSD, but after issued FDNY's Certificate of Completion (*Exhibit # 16*)(*Exhibit # 17*), which allowed to work for one year as FSD (*Exhibit # 18 A*). The On-site test by FDNY must be taken in 3 to 6 months from employment as FSD (*Exhibit # 5*) and after the On-site test FDNY issues the Certificate of Fitness to the FSD.

17. (Defendant):
*The on-site exam is specific to each building location and is designed to ensure that each FSD assigned to a building is fully trained with the specific procedures at the building site. (Jessamy Aff., ¶ 18.)*

(Plaintiffs):

"The On-site exam is specific to each building location and is designed to ensure that each FSD assigned to a building is fully trained with the specific procedures at the building site" (Jessamy Aff. ¶ 18) - intentionally false statement by Mr.Jessamy, who invented "FSD trainee" position for the Classic's big profit from the difference in salary from FSD's $16 per hour and $12 per hour as "FSD trainee", who even work at the same pay scale site, with the same identical responsibilities, but receiving different hourly pay rate, Mr. Jessamy's "...ensure that each FSD ...is fully trained..." for the African- American FSD Mrs. Winston time period is less than one week (*Exhibit # 9*) (*Exhibit # 10 A-B*) (*Exhibit # 10 A*), but for white foreigner FSD Bronzini Mr. Jessamy's "ensure" period is 2+ years (24+ months) (*Exhibit # 15*) (*Exhibit # 16*) (*Exhibit # 18 A*) and is still continuing for the Classic's profit $700+ monthly from Mr. Bronzini's "not fully trained" white "FSD trainee" forever, no on-site test, which by the Mr. Jessamy - "certifies an individual as FSD".

18. (Defendant):
*Mr. Bronzini decided to take the fire safety director's course on his own. He completed the fire safety director's course on March 15, 2006, and passed the written exam on March 29, 2006. The fire department issued a Certificate of Completion to Mr. Bronzini on August 29, 2006. (Jessamy Aff., ¶ 20.)*

(Plaintiffs):
Full and true material facts are :
1) Mr. Bronzini completed the Fire Safety Director's course on March 15th, 2006 and passed the written FDNY exam on March 29th, 2006. The Fire Department issued to Mr. Bronzini a Certificate Of Completion for Fire Safety Director - Z 50  on August 29th, 2006 (*Exhibit # 18 A*).
2) After one years work as FSD in Classic, Mr. Bronzini second time passed written FDNY exam and received FDNY issued a Certificate Of Completion For Fire Safety Director - Z 50   on August 10th,2007 (*Exhibit # 17*)
3) After two years of work as FSD in Classic Mr. Bronzini third time passed written FDNY exam and received FDNY issued a Certificate Of Completion For Fire Safety Director - Z 50  on July 28th, 2008 (*Exhibit # 16*).
FSD Mr. Bronzini ,working in Classic as FSD  for the third year, did not receive from Classic on-site test, because of Mr. Jessamy's intentional refusal and the big profit for Classic ($700+ per month) FSD Mr.Bronzini  had to pass 3 times FDNY written test and received  3(three) FSD Certificates of Completion - Z 50.

19. (Defendant):
*Mr. Bronzini was assigned as a security officer with fire safety training at 625 Madison Avenue on November 18, 2006. On December 7, 2006, Classic began the process of authorizing Mr. Bronzini's payroll increase, which reflected his new responsibilities. Mr. Bronzini's raise required approval from Human Resources, the VP of Operations, and a Senior VP of Classic. The final approval was received on January 10, 2006, which resulted in a retroactive salary increase to November 18, 2006. Mr. Bronzini received retroactive pay reflecting his raise in the amount of $687.23. (Jessamy Aff., ¶ 21.)*

(Plaintiffs):
All Mr. Jessamy's statement is false and is the subject to dispute. The real material Facts with the proofs are:
Mr. Bronzini was assigned as FSD on training at 625 Madison Avenue site on September 26th, 2006 (*Exhibit # 13 A-D*) (*Exhibit # 13 A, B*) with salary $9.80 per hour (as regular security guard's salary) (*Exhibit # 20 A-C*) (*Exhibit # 20 B*). On November 18th,2006 FSD Bronzini started to work  40 hours as FSD at 625 Madison Avenue site on his own, with all responsibilities as FSD, but with the same $9.80 per hour (as regular  security guard's salary) (*Exhibit # 20 D-G*) (*Exhibit # 20 D, E*). On December 7th, 2006 FSD Bronzini called to the Union's representative Mr. Carlos Rodriguez, complaining that Classic did not paying to Mr. Bronzini FSD salary $15 per hour, as every FSD at 625 Madison Avenue site (*Exhibit # 20 C-E*) (*Exhibit # 20 B, D*) (*Exhibit # 3*). Same day Mr. Jessamy issued (just written) payroll increase from $9.80 to $12 per hour (*Exhibit # 25*). Next day, on December 8th, 2006 Mr. Jessamy in intentional retaliation for the complaint to the Union fired Mrs. Bronzini, Classic's security guard, from her fifth 8 hours shift on Fridays (Mrs. Bronzini had permanent 40 hours weekly for 1,5 years) cutting her 40 hours weekly to 32 hours weekly forever ( 2+ years) (*Exhibit # 70 A-E*) and additionally, Mr. Jessamy cut FSD Bronzini's weekly 40 hours to 32 hours weekly for the 9 months (*Exhibit # 20 E-G*) (*Exhibit # 20 E*). On January 3rd, 2007  Mr. Bronzini

- 8 -

and Mrs.Bronzini filled Discrimination Complaint to EEOC. Just on January 18th, 2007 (*Exhibit # 29 A*) (two weeks after EEOC complaint) Classic started paying to FSD Bronzini $12 per hour - the lowest salary in 625 Madison Avenue site (*Exhibit # 3*) for the same identical FSD work with identical responsibilities. On January 18th, 2007 Classic issued Back Pay to Mr. Bronzini - "Retro" $687.23 (*Exhibit # 26 A*) (*Exhibit # 26 B*) which did not include 120 hours back pay for FSD on training work in period since September 26th, 2006 to November 18, 2006 (*Exhibit # 13 A-D*) (*Exhibit # 13 A, B*).

*20. (Defendant):*
*FSD trainees receive salaries ranging from $10 per hour to $17 per hour. (Jessamy Aff., ¶ 22.)*

*(Plaintiffs):*
False is in Mr. Jessamy's statement that FSD trainees receive salaries from $10 to $17per hour because to EEOC on 2007 statement Classic declared that FSD trainees received salary from $10 to $14 per hour (*Exhibit # 37 A-B*). Mr. Jessamy's statement is false because FSD Bronzini received not $10 per hour - minimum in Classic, but just only $9.80 per hour, when he was on FSD training in period from September 26th, 2006 to November 18th, 2006 and the same $9.80 per hour when he worked on his own as FSD (not as FSD on training) in period from November 18th, 2006 until January 16th, 2007 (*Exhibit # 20 E- G*) (*Exhibit # 20 E*).

*21. (Defendant):*
*On March 9, 2007, Mr. Bronzini was informed that he was no longer going to work his Saturday shifts at 625 Madison Avenue. (Jessamy Aff., ¶ 27.)*

*(Plaintiffs):*
Mr. Jessamy's statement is False and must be subject to dispute. Real essential material facts are that on March 7th, 2007 Classic's Mr. Jessamy's office team started against Mr. Bronzini coordinated intentional retaliation "game plan" (*Exhibit # 1*), because of his complaint to EEOC , dated January 3rd,2007. As the result of "coordinated game plan" Mr.Jessamy next day on March 8th,2007 scheduled on-site test for Mr.Bronzini for the April 7th,2007 at 625 Madison avenue site (*Exhibit # 4*). The next Mr. Jessamy's step on the third day in "coordinated game plan" against Mr.Bronzini - illegal suspension from work for 2weeks started on March 10th,2007 (cutting weekly work hours from 32 to 16) (*Exhibit # 24 A-B*) without any reprimand (*Exhibit # 23*).

*22. (Defendant):*
*On March 19, 2007 Mr. Bronzini filed a claim with the Union alleging he was improperly removed from his Saturday shifts. The Union did not pursue any action with respect to Mr. Bronzini's removal. (Jessamy Aff., ¶¶ 28-29.)*

*(Plaintiffs):*
False Mr. Jessamy's statements must be subject to dispute. Essential material facts are that on March 19th, 2007 FSD Bronzini filled a claim to the Union about Mr. Jessamy's intentional "coordinated game plan" in retaliation for the EEOC complaint (*Exhibit # 22 A-C*) (*Exhibit # 22 A*). In this complaint Mr.Bronzini accused Mr. Jessamy's office team of the illegal suspension from work for 2 weeks without any reprimand.

*23. (Defendant):*
*On March 23, 2007, Mr. Jessamy informed the fire department that Classic was canceling Mr.*

*Bronzini's April 7th on-site exam at 625 Madison Avenue. (Jessamy Aff., ¶ 32.)*

*(Plaintiffs):*
The Material Facts are in dispute because that Mr. Jessamy's on March 23rd, 2007 cancellation of the on-site test for FSD Bronzini  was intentionally "coordinated game plan's" continuing retaliation for the Complaint to EEOC  and the Complaint to the Union , dated on March 19th, 2007 (*Exhibit # 22 A-C*) (*Exhibit # 22 A*).

*24. (Defendant):*
*Mr. Bronzini was reassigned to work as an FSD trainee at 320 E. 53rd Street. On August 13, 2007, Roderick Jessamy requested that the fire department schedule another on-site exam at 320 E. 53rd Street. (Jessamy Aff., ¶ 33.)*

*(Plaintiffs):*
All  Mr. Jessamy's statements are false and are in dispute because only material facts are that on May 30th,2007 Mr. Bronzini received EEOC Charges against Classic (*Exhibit # 41*) and on June 6th,2007 Mr.Bronzini filled new EEOC Retaliation Charges against Classic (*Exhibit # 40 A-B*) (*Exhibit # 40 A*). On June 12th, 2007 Mr. Bronzini filled complaint to Classic's administration (*Exhibit # 38*) about Mr. Jessamy's cut hours since December 8th,2006 from 40 to 32 hours weekly asking to restore 40 hours. (*Exhibit # 19 A-E*). On July 28th, 2007  Mr. Bronzini  started to work as FSD 24 hours at 320 East 53rd street and 16 hours at 415 East 59th street - together 40 hours weekly (*Exhibit # 43 A-B*) and on August 31st, 2007 Mr.Jessamy scheduled the on-site test at 320 East 53rd street (*Exhibit # 4*).

*25. (Defendant):*
*Classic had to cancel Mr. Bronzini's on-site exam on October 18, 2007, because the fire command station at the building had a problem that may not have been repaired until October 31, 2007. Mr. Jessamy told the fire department that he would reschedule the exam as soon as he receive authorization from the building. (Jessamy Aff., ¶ 34.)*

*(Plaintiffs):*
Mr. Jessamy's False statement about allegedly Fire Command Station's problem , what was the reason to cancel on October 8th, 2007 on-site test at 320East 53rd street site must be in dispute because the essential material facts shoving that 320 East 53rd street building  11 stories with 81 apartment (*Exhibit # 8 A-B*) could not be functioning with the broken Fire Command Station (*Exhibit # 7 A-B*) (*Exhibit # 7 B*) or with the problem since October 18th, 2007 until July 13th,2008 (10 months) when Mr.Jessamy fired FSD Bronzini, who worked at 320 East 53rd street for the 11months and 2 weeks period (almost 1 year) without on- site  test  (*Exhibit # 5*) Mr. Jessamy, since June 18, 2007, intentionally followed the "coordinated game plan" against  Mr.Bronzini (*Exhibit # 1*) and even after Fire Department's insisting for the on-site test to Mr. Bronzini in the Summons to 320 East 53rd Street (*Exhibit # 6*) (*Exhibit # 4*) and intentionally neglecting for the 3weeks period 320 East 53rd street building personnel's FSD Ellen Deonath's  repeating  requested  for the on-site test (*Exhibit # 49 A-G*).

*26. (Defendant):*
*On May 2, 2008, Classic contacted the fire department to schedule an on-site exam for Mr. Bronzini at 320 E. 53rd Street. The fire department set August 14, 2008 for Mr. Bronzini's on-site exam. (Jessamy Aff., ¶ 35.)*

*(Plaintiff):*
False Mr. Jessamy's statements must be in dispute because essential  material facts with the exhibits showing that on after July 17th, 2008 Mr. Jessamy asked FDNY for scheduling the on-site test for FSD Bronzini at 415 East 59th street with the exact on-site test date- August 14th, 2008 *(Exhibit # 4)*.

*27. (Defendant):*
*On July 11, 2008, Classic sough to remove Mr. Bronzini at the request of the client from his sifts at 320 E. 53rd Street. (Jessamy Aff., ¶ 39.)*

*(Plaintiffs):*
Mr. Jessamy's False statements must be in dispute, because the  essential  material facts  showing that July 13th,2008 (last day of FSD Bronzini's work at 320 East 53rd street) was continuing  Mr.Jessamy's "coordinated game plan" *(Exhibit # 1)* against  FSD Bronzini. FSD Bronzini worked 24hours weekly at 320East 53rd street site since August 4th,2007 until July 13th, 2008 (11.5 months) without On-site Exam *(Exhibit # 4)* (canceled by Mr. Jessamy on October 18, 2008) and after when FDNY issued on April 26th, 2008 Summons *(Exhibit # 6)* *(Exhibit # 4)* for the violation committed by FSD Brian Watson on April 17th, 2008 *(Exhibit # 45)*, who left FSD duty at 329 East 53rd street , where FSD must be on duty 24/7 *(Exhibit # 7 A-B)* *(Exhibit # 7 B)*.  FDNY summons insisted that FSD  B. Watson and FSD Bronzini  must be scheduled for the on-site test at 320 East 53rd street in  3 - 6 months *(Exhibit # 5)* (FSD Bronzini worked without on-site test at 320 East 53rd street for the 11 months and 2 weeks). Mr. Jessamy's intentional refusal for the on-site test for Mr.Bronzini at insisting by FSD Ellen Deonath 320 East 53rd street building's employee. *(Exhibit # 49 A-G)*

*28. (Defendant):*
*Classic transferred Mr. Bronzini's Exam from 320 E. 53rd Street to 415 E. 59th Street, Mr. Bronzini's new shift location. (Jessamy Aff., ¶ 41.)*

*(Plaintiffs):*
False Mr. Jessamy's  statements must be in dispute, because the  essential  material Facts  with the exhibits showing that the on-site test was scheduled by Mr.Jessamy on July 17th,2008 for only exact 415 East 59th street *(Exhibit # 4)* where FSD Bronzini worked 1(one) year 16 hours weekly since July 31st,2007  *(Exhibit # 43 A-B)(Exhibit # 44)*.

*29. (Defendant):*
*On August 14, 2008, the fire department arrived to 415 E. 59th Street to administer Mr. Bronzini's on-site exam. When the fire department showed up, it was unable to administer the exam because that building did not require a certified FSD. (Jessamy Aff., ¶ 42.)*

*(Plaintiffs):*
False Mr. Jessamy's  statements must be in dispute, because the  essential  material Facts  with the exhibits showing that Mr.Jessamy in intentionally continuing "coordinated game plan" *(Exhibit # 1)* against FSD Bronzini, scheduled on-site test for August 14th,2008 for the 415 east 59th street ,where there was no any Public Address System (speakers) in the Fire Command Station. Public Address System (speakers) at Fire Command Station  must be present for the on-site test. The on-site test was suspended in less than an hour *(Exhibit # 46 A-B)*, because of the absence of the Public Address System at the Fire Command  Station.

*30. (Defendant):*
*In 2005, Mr. Bronzini completed five payroll discrepancy forms. Classic promptly investigated these claims and paid Mr. Bronzini for any substantiated discrepancy. (Jessamy Aff., ¶ 48.)*

*(Plaintiffs):*
Mr. Jessamy's statement **is False** and is the subject to dispute, because essential material facts and exhibits are showing that in 2005 Mr. Bronzini's Back Pay was $386.00. (*Exhibit # 34*) - record for Classic Security Back Pay - "stolen" and returned by Classic just after filling Discrepancy Forms which Mr. Bronzini filled one, two, five or even seven weeks (*Exhibit # 37 A-C*) - until Mr. Jessamy returned "stolen" salary. Mr. Jessamy's intentional refusal to return "stolen" salary from Classic, after 3 times filled Discrepancy Forms (in 3 weeks) explanation is in his note "…." (*Exhibit # 36*). In 2005 year there were a lot of times (*Exhibit # 35 A-B*) when Back Pay was stolen and returned, filling Discrepancy Forms for 1-2-5-7 times for each "stolen" time.

*31. (Defendant):*
*During 2007, a period in which Mr. Bronzini claims that he had an excessive amount of pay improperly withheld; Mr. Bronzini was not the only employee who received back pay. There were 16 other Classic employees who received 40 or more hours of back pay. Mr. Bronzini received back pay for 47.15 hours in 2007. (Jessamy Aff., ¶ 49.)*

*(Plaintiffs):*
All Mr. Jessamy's statement **is False** and is the subject to dispute, because essential material facts and exhibits are showing during 2007 year Mr. Bronzini's Back Pay was almost $3000.00 but in Classic's payroll the Back Pay was just $576 (*Exhibit # 19 E*). Classic intentionally hid the real Back Pay which showed how excessive the amount was "stolen" and returned in retaliation after the complaint to E.E.O.C., after every complaint to the Union, after complaints to the Classic's management. All "stealings" and returns after long delays and complaints were intentionally organized by African - American Mr. Jessamy's office team continuing the "…coordinate a game plan…" (*Exhibit # 1*) against Mr. Bronzini as a part of racial, national origin, and age discrimination.

   In January 18, 2007 Classic returned Back Pay "Retro" $687.23 (*Exhibit # 26 A*) (*Exhibit # 26 B*). In the same January two (2) personal days were stolen in amount of $192 (*Exhibit # 27 A-B*) - and returned in April (*Exhibit # 28 A-B*) (*Exhibit # 28 A*). From the Vacation request on March, 2007 (*Exhibit # 30 A, B*) - 6 days were "stolen" by Mr. Jessamy's office and returned in June, 2007. Just in 4 weeks period, after the complaint to the Union (*Exhibit # 22 A-C*) (*Exhibit # 22 A*), before Easter, on April 5, 2007 there was "stolen" $196 from $384 weekly salary (*Exhibit # 33*). Then after Easter - was "stolen" $196 from $384 weekly salary (*Exhibit # 33*), before Mother's day $196 from $384 weekly salary (*Exhibit # 33*), and before Father's day after new complaint to the Union on June, 2007 (*Exhibit # 38*), and after the filing Retaliation Charges to E.E.O.C. on June 12, 2007 (*Exhibit # 40 A-B*) (*Exhibit # 40 A*) Mr. Jessamy's team "stole" all $384 weekly salary (*Exhibit # 31 A-B*) - and only after delay Classic issued a Commerce Bank check without any date, without any serial check's number, hand written, and from a different than usual Classic's Bank account (Bank of America) (*Exhibit # 32*).

   Just in 6 weeks a total amount of $960 was "stolen" from Mr. Bronzini as retaliation and discrimination upon race, national origin, and age committed by Mr. African-American Jessamy's office team.

   A real Back Pay for Mr. Bronzini in 2007 was almost $3000, which divided by $12/per hour = 250 hours "stolen" from Mr. Bronzini and intentionally delaying the return causing a shortage in Bronzini's family's budget.

*32. (Defendant):*
*Mrs. Bronzini was assigned to work on Fridays at 35 East 21st Street in the fall of 2006. Carol Reddick was assigned to Mrs. Bronzini's Friday shift at the request of Classic's client. (Jessamy Aff., ¶ 51.)*

*(Plaintiffs):*
Mr. Jessamy's statement **is False** and is the subject to dispute, because the essential material facts and exhibits are showing that Mrs. Bronzini started to work Fridays shifts at 35 East 21st Street since July 7th, 2005 (*Exhibit # 73 A-D*) (*Exhibit # 73 A, C*) worked there for 1,5 year, collecting permanently 40 hours weekly (*Exhibit # 70 A-E*) (*Exhibit # 70 A, D, E*). On October 16th, 2006 (*Exhibit # 67 A-B*) Mrs. Bronzini took unpaid leave of absence under the Family and Medical Leave Act of 1993, for the reason of taking care of her 78 year old mother in Lithuania, who had a very serious surgery and needed post-surgical nursery (*Exhibit # 68 A-B*) (*Exhibit # 68 B*). Classic's Director of Operations Mr. R. Jessamy signed approval the leave of absence, approving the same permanent 40 hour weekly schedule, which Mrs. Bronzini had for 1,5 year, starting, again (after the return from F.M.L.A.) on Friday, December 1st, 2006 at 35 East 21st Street site (*Exhibit # 67 A*). Also that Friday, December 1st, 2006 was approved and paid on December 7, 2006 as Mrs. Bronzini's Personal Day, for her permanent 40 hour weekly schedule (*Exhibit # 70 D*).

*33. (Defendant):*
*On December 8, 2006, when Classic informed Mrs. Bronzini that she was no longer going to be assigned to this shift, Classic was unaware that Mr. Bronzini had sent a letter to the Union on December 7, 2006. (Jessamy Aff., ¶ 53.)*

*(Plaintiffs):*
Mr. Jessamy's statement is false and is the subject to dispute, because the essential material facts and exhibits are showing that after Mrs. Bronzini's husband's, Classic's FSD Mr. Bronzini's, phone call to the Union on December 7th, 2006 (complaining about not receiving salary as FSD) and Union's actions forcing Mr. Jessamy to start the increase of Mr. Bronzini's salary (*Exhibit # 25*) Mr. Jessamy, in retaliation to the events stated above by the Plaintiffs, fired Mrs. Bronzini from her Fridays site at 35 East 21st Street site and cutting forever her 40 permanent weekly hours for the 1.5 year to 32 hours per week without any right for more hours (*Exhibit # 70 D*) (*Exhibit # 74*).

And from the same day Mr. Jessamy cut, reduced FSD Bronzini's 40 weekly hours to 32 hours per week for a long period of time (9 months) (*Exhibit # 20 A-G*) (*Exhibit # 20 B, D, E*).

Since December 8th, 2006 Friday's shift at 35 East 21st street was permanently covered by Mr. Jessamy's assigned African-American Security Guard Mrs. Carol Reddick, in retaliation to December's 2006 Mr. Bronzini's actions. Mr. Jessamy, in retaliation to Mr. Bronzini's phone call to the Union, acted unlawfully under the Family and Medical Leave Act, which states that employees must be restored to their original or equivalent positions, with equivalent pay, benefits.

Classic hired 284 new employees in 9 months during 2008 (*Exhibit # 76*) in order for Mrs. Bronzini forever and Mr. Bronzini have no work - leaving only 32 hours per week.


# *Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment:*

**Preliminary Statement In Opposition to Defendants Motion to Summary Judgment**

The Plaintiffs are a 50 year old husband and 46 year old wife, both are Caucasians, foreign born, and currently employed for five (5) years by the Defendant Classic Security an Alliance Building Services Company. The Plaintiffs have asserted claims of discrimination upon race, national origin, age, disability, gender and intentional retaliation. The reasons for the discriminatory actions proffered by the Defendant as legitimate, no-discriminatory business reason are false and all are based on intentionally unlawful discrimination. The Plaintiffs have been singled out and treated differently due to their protected class status as minority in Classic Security. The Plaintiffs are providing sufficient specific material and facts as evidence to support rational finding that the  Defendant's proffered reason was simply pretextual and false and the real reason for the actions against Plaintiffs was unlawful intentional discrimination. Therefore the Court do not shall grant the Classic's Motion for the Summary Judgment dismissing the entire case.

**Plaintiffs' statement of facts following the Civil Rule 56.1 opposing  Defendants statement of facts by the rule 56.1**

**I. Plaintiffs' argument in opposing Defendant's Motion for Summary Judgment Standard.**

Rule 56 (C) of the Federal Rules of Civil Procedure provides that a Court do not shall grant summary judgment when there are genuine issues about the specific material facts which are showing that there a genuine issue for trial.

**II. Classic is not entitled to Summary Judgment on any of Plaintiffs' claims.**

Plaintiffs claim that they were discriminated against, because of their race, national origin, age, and religion. Their claims were brought pursuant to violations of :

1. The Title VII of the Civil Rights Act of 1964. 42 U.S.C. §§ 2000 e to 2000 e - 17 (race, color, gender, religion, national origin).
2. Age Discrimination in Employment Act of 1967 as codified 29 U.S.C. §§ 621-634 ("ADE").
3.New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (age, race, creed, color, national origin, etc.).
4. New York City Human Rights Law, N.Y. City Admin. Code §§ 8 - 101 to 131.
5. Plaintiff Eimont Bronzini claims that he was discriminated against in violation of the American with Disabilities Act of 1990, as codified 42 U.S.C. §§ 12112 - 12117 ("ADA").
6. Plaintiff Eimont Bronzini claims that he was discriminated against in violation of the Equal Pay Act of 1963, 29 U.S.C. SS 206 (d) et. seq. ("EPA").
7. Plaintiff Lolita Bronzini claims that she was discriminated against in violation of the Family and Medical Leave Act of 1993 ("FMLA" ).

**A. Mr. Bronzini's Claim of Discrimination**

Mr. Bronzini claims that Classic's African-American Mr. Jessamy's office team together with their "Brothers" Union (Mr. Michael Rodriguez is an Alliance of Building Services Company's President and  Mr. Carlos Rodriguez is Union's representative for Classic) invented "slavery" system based on discrimination upon race, national origin, equal pay, age - for the only reason - to receive financial profits for the Classic Security an Alliance of Building Services Company (a copy of Mr. Eimont Bronzini's Amended Complaint to the Affidavit of Eimont Bronzini (E.B.A.f.f.).

Plaintiff Eimont Bronzini claims that discriminatory conduct resulted in an  intentional failure to promote him and subjected him to unequal terms and conditions of employment in addition to the intentional retaliation for him and for his wife Plaintiff  Lolita Bronzini.

In his Amended Complaint Mr. Bronzini specified almost all types of discrimination, which he was subjected to with respect to the intentionally "coordinated action plan's" (*Exhibit # 1*), incidents of discrimination.

Classic's Motion for Summary Judgment shall not be granted because Plaintiff Eimont Bronzini is able to show in providing sufficient evidences to support a rational finding that circumstances surrounding any intentional adverse action gave rise to inference discrimination. Classic had no any legitimate non discriminatory reasons for all of the intentionally "coordinated" actions against Mr. Bronzini.

### 1. Mr. Bronzini Can State a Claim for Discrimination under the A.D.A.

Mr. Bronzini claims that he was discriminated against due to his assignment to standing only job sites, because he was unable to stand as a result of his spinal trauma. He also claims in his Deposition's transcripts correction (Deposition Transcript Correction), that when on 2005 Mr. Bronzini brought his "Spinal Trauma" diagnosis from U.S. Doctors' to Classic office, they temporarily stropped sending Mr. Bronzini to standing-only sites, but on July 27, 2008, after 3 years, Mr. Bronzini was forced again to work 16 hours daily to the standing-only site at 100 Park Avenue South (*Exhibit # 50*), which was adverse employment action taken by Classic violating the A.D.A. Law.

### 2. Mr. Bronzini Can State a Claim for Violation of the E.P.A.

Mr. Eimont Bronzini has claimed that at 625 Madison avenue site all FSD received $15 -16 per hour except FSD Bronzini who received just $9.80 per hour and after 3 months just $12 per hour for the same identical work.

**I.** African-American FSD **female** Sandra Winston  (*Exhibit # 11 A-D*) (*Exhibit # 11 B*) who had the same FSD Certificate of Completion Z-50 from F.D.N.Y as FSD Bronzini (*Exhibit # 18 A*) and was on  training as FSD at 625 Madison avenue at the same time in 2006 year, but FSD Bronzini was paid for the training (120 hours) just $9,80 since September 26th, 2006 (*Exhibit # 20 A-G*) (*Exhibit # 20 B, D, E*) less than any FSD Trainee at Classic and since November 18th,2006 performed, worked 9 weeks until January 18th, 2007 (*Exhibit # 14 A-J*), working on his own as FSD position for $9.80 per hour (*Exhibit # 20 D-G*) (*Exhibit # 20 D, E*) until Mr. Bronzini filed charges to E.E.O.C. on January 3rd,2007.

**II.** Mr. Bronzini working as FSD at 625 Madison Avenue site performed equal work as African-American FSD Sandra Winston on job requiring equal skills, efforts and equal responsibility.

**III.** FSD job was performed Mr. Bronzini under identical working conditions as FSD S. Winston's, who later on March 10th, 2007 took Saturday's FSD Bronzini's 16 hours shift at 625 Madison Avenue site, but with salary - $16 per hour, but not $12 per hour as FSD Bronzini's salary (*Exhibit # 3*).

### 3. Mr. Bronzini Can Establish a Prima Face Case for the Remainder of his Claims Because He did Suffer all Adverse Employment Actions.

Different adverse employment actions for Mr. Bronzini :

1. In 2004 year Classic kept Mr. Bronzini on "Bench" 4 hours - for 6 months in 2004, and just only 5 month permanent 40 hours work at 1250 Broadway site (*Exhibit # 53 A-B*).

2. In 2005 year Classic kept Mr. Bronzini on "Bench" 4 hours - for all 12 months of 2005 (*Exhibit # 54*) in addition to 32 hours at 498 7th Avenue site until January 7th, 2006. "Bench" Log Books which were requested by Judge's order (*Exhibit # 82*) were never provided by the Defendant, intentionally ignoring Judge's order in Plaintiffs' Motion to Compel Discovery (*Exhibit # 84*).

3. Since December 8th, 2006 Mr. Bronzini's 40 permanent hours were cut, reduced,  to 32 for the 9

month period until August 1st,2007 (*Exhibit # 20 D-G*) (*Exhibit # 20 D, E*), by Mr. Jessamy in retaliation for Mr. Bronzini's phone call to the Union, also from the same time, since December 8th, 2006, Mrs. Bronzini's 40 permanent hours were cut, reduced by Mr. Jessamy to 32 hours weekly for the 2 plus years forever (*Exhibit # 70 A-E*) (*Exhibit # 70 A, D, E*), (*Exhibit # 66 A-B*) (*Exhibit # 66 A*)(*Exhibit # 19 A-E*)(*Exhibit # 74*).

### 4. Mr. Bronzini Was Discriminated Against in the Setting of His Schedule.

Mr. Bronzini claims that Mr. Jessamy gives permanent schedules of 40 hours work per week for other security guards: mostly for African-American and African foreigners, but Mr. Bronzini and his wife, Mrs. Bronzini, was on kept 'Bench' - 4 hours  daily, collecting 40 hours weekly: Mr. Bronzini - almost 100 weeks, and Mrs. Bronzini - over 100 weeks, while at the same time Classic is still hiring new security guards every day  (*Exhibit # 76*).

Mr. Bronzini claims in his Amended Complaint that he was kept permanently on "bench", doing 40 hours weekly, and did not fail to acknowledge that in 2004 year he received 40 hours for 5,5 months period at 1250 Broadway site, because of his Discovery period's Request for Production of Documents (*Exhibit # 83 A-B*) and in the  Motion to Compel Discovery (*Exhibit # 84*) where Mr. Bronzini searched for the exact  documental dates for the 2004 year's 5,5 months period at 1250 Broadway site .

 (a) Classic makes all of its shifts assignments regarding to race and other protected categories, because the white foreigners: 40+ year old Mr. Bronzini was kept almost 100 weeks on "Bench" and his wife, 40+ year old Mrs. Bronzini - also was kept on "Bench" for 100+ weeks - forever.

(b) Specific documental facts showing that Mr. Bronzini was late just one time in 5 years (1825 days) (*Exhibit # 52 A*) and just one time received verbal warning for allegedly sleeping on 16 hours shift duty (*Exhibit # 52 B*), Mrs. Bronzini works without any reprimand  for 4+ years - both were punished with 4 hours "bench" for 100 weeks .

- Mr. Bronzini was taken  in 2004 year from his 40 hours permanent site at 1250 Broadway without any violation , any reprimand (*Exhibit # 53 A-B*)
- Mr. Bronzini was punished since December 8, 2006 by cuting his weekly 40 hours to 32 for 9 months, since the same day Mrs. Bronzini was cut her hours to 32 weekly - forever without any reprimand (*Exhibit # 20 A-G*) (*Exhibit # 20 B, D, E*).
- Mr. Bronzini was suspended for 2 weeks in March 2007 (March 10 and March 17) from work without any reprimand (*Exhibit # 23*).
- Taken from 625 Madison avenue FSD site in 2008 year - after 9 months permanent work, without any reprimand (*Exhibit # 42*) (*Exhibit # 44*).
- Taken away from 320 East 53rd street  after 11 months and 2 weeks without any reprimand.
- The same punishment received Mrs. Bronzini in  December 2005 - taken from 461 Fifth Avenue site without any reprimand.

Mrs. Bronzini was taken from 35 East 21st street site from December  8th,2006 without any reprimand, leaving her 100+ weeks on "Bench" forever and only 32 hours per  week  (*Exhibit # 70 A-E*) (*Exhibit # 70 A, D, E*)

Mr. Bronzini never refused  since July 31st , 2007  415 East 59th street and 320 East 53rd street  40 hours (*Exhibit # 43 A-B*) (*Exhibit # 42*) (*Exhibit # 44*).

Since August 2008 Mr.Jessamy offered 24 hours schedule on weekends at 609 Fifth avenue plus continued 16hours at 415 East 59th street site (*Exhibit # 4*), together 40 hours weekly permanently. During these 40 hours weekly Mr. Jessamy asked Mr. Bronzini if he will accept security work 35 hours weekly at 16 Court street  7 hours daily shift  per 5 days. It was just 35 hours, which is 5 hours less weekly and $300+ per month less salary for Mr. Bronzini. There was two choices - to continue 40 hours or 35 hours per week (*Exhibit # 4*).

Mr. Jessamy's statement about Mr. Bronzini's refusal to work 35 hours, is false because Mr. Bronzini never refused any work assignment to complete his 40 weekly hours, even a dirty garage post site at 555 West 57th Street (*Exhibit # 51 A-C*).

**5. Mr. Bronzini Was Discriminated Against as a Result of the Salary He Was Paid as an FSD (Fire Safety Director).**

Mr. Bronzini claims that he received $9,80-$12 per hour while FSD Winston received $15-$16 per hour at 625 Madison Avenue. Mr. Bronzini has FSD certificate of completion from FDNY, which let him work as FSD until On-site FDNY Exam, which must be taken in 3 to 6 month period of employment as FSD, but Mr. Jessamy for the third year is not giving Mr. Bronzini the On-site Exam (*Exhibit # 16*)(*Exhibit # 17*)(*Exhibit # 18 A*).

Classic did not raise salary when:
- Mr. Bronzini received his FSD Certificate of Completion on August 29, 2006.
- Since September 26, 2006 all FSD training period of time(120 hours) at 625 Madison Avenue.
- Since November 18, 2006 for 9 weeks of working as FSD still for $9,80 per hour.

Not any Classic's FSD "trainee" or Mr. Jessamy's "security officer with fire safety training" or FSD on training received $9.80 per hour, as Mr. Bronzini, but instead all of them received $10-14 (*Exhibit # 39 A-B*) . Now in 2008 Mr. Jessamy's statement they receive $10-17 per hour. But in 625 Madison Avenue site ("A" Class building with the highest rental scale in Manhattan) - all FSDs received $15 per hour - on training, and $16 per hour - after On-site Exam (*Exhibit # 3*) (*Exhibit # 25*) (*Exhibit # 15*), except FSD Bronzini - $9.80 per hour, and after the complaint to the E.E.O.C. - $12 per hour - the lowest pay rate at 625 Madison Avenue site.

As African-American Mrs. Winston and African-American Mr. Palmer  $15-16 per hour, but for white for  identical work at 625 Madison avenue site African- American Mr. Jessamy's terminology FSD trainee, security officer with fire safety training - $9,80 until two weeks after E.E.O.C. charges on January 3rd, 2007. Mr. Bronzini worked for Classic almost 3 years, Mrs. Winston never worked as security guard and Mrs. Winston received On-site Exam at 625 Madison Avenue site from the first month of her work as FSD and $16 per hour, but for white foreigner FSD  Mr. Bronzini after  5 months work at the same building, On-site Exam was canceled by Mr. Jessamy because of retaliation for E.E.O.C. charges and as a result there was issued the discriminatory charges by the Title VII of E.E.O.C. to Classic on June 30, 2007 (*Exhibit # 41*). Mr. Bronzini's FSD salary - $9,80 per hour was the lowest in Classic ($10 - minimum by Mr.Jessamy) At 625 Madison avenue all  FSD - $15-16 per hour ,but Mr. Bronzini  for identical FSD  work and responsibilities  only $9.80 per hour  (*Exhibit # 20 A-G*) (*Exhibit # 20 B, D, E*)

**6. Mr. Bronzini Was Discriminated Against Due to His Removal from All Assignments.**

Mr. Bronzini's firing, removal from his permanent sites without any violation, without any reprimand, was followed by permanently punishing the white foreigner, for almost 100 plus weeks in 4 years with "Bench" 4 hours daily, waiting for available 8 hours full shift assignment, while Classic continued on hiring new security guards daily - 284 new employees in 9 month period (*Exhibit # 76*) .

During 2004 Mr. Bronzini had 40 hour weekly permanent shifts only for 5 months at 1250 Broadway site (Exhibit # 53 A-B) until August 27, 2004 when he was fired, removed without any violation, without any reprimand. There rest 6 months of 2004 Mr. Bronzini was forced to sit daily on 4 hour "bench" to complete his full time hours (40 hours weekly). The real reason of his removal was intentional discrimination upon race, national origin, keeping him by African - American Classic's Office Team on "bench" - punishment for "white slave", begging for work, who had no right for permanent assignment. Mr. Bronzini was Classic's "white victim" - "example" for the everyday newly

hired employees showing that in Classic all permanent assignments are just for favors.

On September 26, 2006 Mr. Bronzini started training as FSD at 625 Madison Avenue site ("A" Class Building with the highest rental rate in Manhattan) and since November 18, 2006 started working there permanently as FSD receiving security guard's salary $9.80 per hour (*Exhibit # 20 B-G*) (*Exhibit # 20 B, D, E*), while all other FDSs in that site received $15-16 per hour for the same identical work with same responsibilities.

After the Mr. Bronzini's complaint to the Union by phone on December 8, 2006, Mr. Jessamy in retaliation cut, reduced Mr. Bronzini's weekly 40 hours to 32 hours for 9 months, and his wife's Mrs. Bronzini's (security guard in Classic) from 40 hours weekly to 32 weekly for the 2 plus years - forever (*Exhibit # 20 B-G*) (*Exhibit # 20 B, D, E*) (*Exhibit # 70 A-E*).

On January 3, 2007 Mr. Bronzini and Mrs. Bronzini filed charges to E.E.O.C. against Classic because of the Classic's continuous intentional discrimination against Mr. and Mrs. Bronzini.

On March 7, 2007 Classic's Mr. Jessamy's office team started intentional, "coordinated game plan" against Mr. Bronzini (*Exhibit # 1*).

On March 8, 2007 Mr. Jessamy scheduled On-site Exam for Mr. Bronzini (*Exhibit # 4*).

On March 10, 2007 and March 17, 2007 Mr. Bronzini was intentionally suspended from work for 2 weeks without any reprimand, and any violation (*Exhibit # 23*), which was also a part of "coordinated game plan" against Mr. Bronzini.

On March 19, 2007 after the written complaint to the Union about illegal suspension (*Exhibit # 22 A-C*) (*Exhibit # 22 A*) Mr. Jessamy, in retaliation, canceled the On-site Exam for Mr. Bronzini on March 23, 2007 (*Exhibit # 4*) leaving Mr. Bronzini with $12 per hour salary without a raise to $16 per hour, which was supposed to be given after passed the On-site Exam. FSD Bronzini's $12 per hour salary was the lowest at 625 Madison Avenue site (*Exhibit # 3*).

After canceling Mr. Bronzini's On-site Exam (by Mr. Jessamy's "coordinated game plan"), FSD Bronzini still worked at 625 Madison Avenue site for 3.5 months until July 9, 2007 (*Exhibit # 44*), when he was fired, removed from this site without any violation and without any reprimand. Classic's profit from Mr. Bronzini's salary's difference from $12 per hour to $16 per hour was $600 - 700 monthly.

Since July 31, 2007 FSD Bronzini started working permanently at 415 East 59th Street and 320 East 53 Street together 40 hours weekly receiving the same $12 per hour.

On August 31, 2007 Mr. Jessamy scheduled the On-site Exam for FSD Bronzini at 320 East 53rd Street site (*Exhibit # 4*), and immediately, on September 18, 2007, canceled the On-site Exam (*Exhibit # 4*) - following Classic's intentionally "coordinated game plan" against Mr. Bronzini in order to continuously receive profit to Classic of $700 plus monthly from FSD Bronzini's salary.

On July 13, 2008 (*Exhibit # 48*), after almost 1 year (11.5 months) work at 320 East 53rd Street Mr. Bronzini was fired, removed from this site again without any reprimand, any violation, and again without the On-site Exam. The On-site Exam was requested as mandatory by the Fire Department in their issued Summons #42567477 on April 26, 2008 (*Exhibit # 4*) for the violation which occurred on April 17, 2008 at 320 East 53rd Street site (Classified by Fire Dept. as J-1 Hotel Class), when Fire Department's Inspector found that FSD Watson was absent from the site while on duty (*Exhibit # 45*) where FSD must be present at all time (24/7) (*Exhibit # 7 A-B*) (*Exhibit # 7 B*). Mr. Jessamy's intentional refusal to give FSD Bronzini On-site Exam following Fire Department's Summons #42567477 request, could be found in the 320 East 53rd Street site's Building Log Book, where building's office staff member FSD Ellen Deborah insisted from Mr. Jessamy for FSD Bronzini's On-site Exam's scheduled date (*Exhibit # 49 A-G*). Mr. Jessamy was unreachable for 3 week period until Classic found the solution to solve the problem - fired FSD Bronzini, again, without any On-site Exam - continuing the "coordinated game plan" against Mr. Bronzini. July 13, 2008 was Mr. Bronzini's last

day at 320 East 53rd Street site.

In 11,5 months Classic profit from FSD Bronzini's unpaid salary difference avoiding scheduling On-site Exam for Mr. Bronzini is $8050 ($700 x 11.5 months = $8050).

**7. Mr. Bronzini Was Discriminated Against Due to Payroll Discrepancies.**

The essential material facts are showing that in 2005 year Mr. Bronzini's back pay was $386 after repeatedly filling discrepancy forms one, three, seven times...(*Exhibit # 37 A-C*).

In January 2007 Classic returned Back Pay "Retro" $687.23 (*Exhibit # 26 A*) (*Exhibit # 26 B*). In the same January two (2) personal days were stolen in amount of $192 - and returned on April, 2007 (*Exhibit # 28 A-B*) (*Exhibit # 28 A*). From the Vacation request on March 23, 2007 (*Exhibit # 30 A-B*) - 6 days were "stolen" by Mr. Jessamy's office and returned on June 14, 2007. Just in 4 weeks period, after the complaint to the Union, before Easter, there was "stolen" $196 from $384 weekly salary (*Exhibit # 33*). Then after Easter - was "stolen" $196 from $384 weekly salary (*Exhibit # 33*), before Mother's day $196 from $384 weekly salary (*Exhibit # 33*), and before Father's day, after new complaint to the Union on June, 2007 (*Exhibit # 38*), and after the filing Retaliation Charges to E.E.O.C. on June 12, 2007 (*Exhibit # 40 A-B*) (*Exhibit # 40 A*) Mr. Jessamy's team "stole" all $384 weekly salary (*Exhibit # 31 A-B*) - and only after delay Classic issued a Commerce Bank check without any date, without any serial check's number, hand written, and from a different than usual Classic's Bank account (Bank of America) (*Exhibit # 32*).

Just in 6 weeks a total amount of $960 was "stolen" from Mr. Bronzini as retaliation and racial, national origin, age discrimination committed by Mr. African-American Jessamy's office team.

A real Back Pay for Mr. Bronzini in 2007 was almost $3000, which divided by $12/per hour = 250 hours "stolen" from Mr. Bronzini and intentionally delaying the return causing a shortage in Bronzini's family's budget.

120 hours are still unpaid FSD Bronzini training time, since September 28th, 2006 received only $9,80 per hour as security officer. Since January 16th, 2007 (after EEOC charges) he received $12 per hour - the lowest FSD salary at 625 Madison Avenue site (*Exhibit # 3*). Classic's profit per month = $700 from FSD Bronzini's salary for the identical FSD work at 625 Madison Avenue site.

As in Mr. Jessamy's statement - "different clients have different pay scales, that they are willing to pay", but essential material facts are showing that at the client's 625 Madison Avenue site just for the white foreigner, Mr. Bronzini - $9,80-$12 per hour (the lowest salary) instead of $15-$16 per hour.

There is a genuine dispute which must be an genuine issue for trial regarding Mr. Bronzini's intentional discrimination due to Payroll's huge discrepancies and still unpaid 120 hours difference of FSD training time.

**8. Mr. Bronzini Was Discriminated Against by Classic's Break Policies.**

At 625 Madison avenue white foreigner FSD Mr. Bronzini was not allowed to take any breaks per 16-17 hours shifts, while African-American Mr.Jessamy always allowed breaks to African-American FSD Winston, who was relieved, following Mr. Jessamy's order, by Field Supervisor (F/S) Mr. Williams (*Exhibit # 56 B-C*)

Classic's Mr. Jessamy is giving breaks, and salary regarding to the race and national origin, as the African American FSD Winston's salary was $15-16 per hour at 625 Madison Avenue site, but for the white foreigner, FSD Mr. Bronzini only $9,80 - $12 per hour and no any breaks during the same 16-17 hours shifts at the same 625 Madison Avenue site, for the same identical FSD work's responsibilities.

### 9. Mr. Bronzini's Membership in the Union is Lawful.

Mr. Bronzini never claimed that he was discriminated against by having to joint a Union. Mr. Bronzini claims that part-timers are forced to pay Union dues ($300+ yearly), but they are not members and do not have any benefits as Union Members (*Exhibit # 88*). Classic negotiated a Collective Bargaining Agreement ("CBA") with the National Union of Security Officers and Guards ("the Union"), which was signed by an Alliance of Building Services Company's President Mr. Michael Rodriguez in accordance with his brother Mr. Carlos Rodriguez - representative for Classic in NUSOG (Union) - "Brothers" Union (*Exhibit # 85*) (*Exhibit # 75 A-B*) This is the discrimination against Classic's employees based on "Brothers'" Union's and Classic's profit from the Union dues.

### B. Mrs. Bronzini's Claims of Discrimination.

Mrs. Bronzini's all claims of discrimination are always based on race, national origin and also in some discrimination actions claims are also based on religion, age, or gender, because of Classic's African-American office team's members who only committed all discrimination actions against plaintiffs - Caucasians, and foreigners - who are minority in Classic (1-3%).

Classic's African-American office team: Mr. R. Jessamy - Classic's Director of Operations, Mrs. C. Cook - Schedule Manager in Classic, and Dispatchers all together committed intentionally organized discrimination following Mr. Jessamy's "coordinated game plan" (*Exhibit # 1*) against Plaintiffs based on race, or national origin, plus, additionally, on religion, or age, or gender. All essential material facts and documents provided by plaintiffs are showing that all discrimination acts first of all were based on race, national origin as racial and foreigners' discrimination, in addition to religion and age discrimination, committed by the same Classic's African-American office team.

### 1. Mrs. Bronzini Can Establish All Claims of Discrimination.

Mrs. Bronzini claims that she suffered from intentional adverse employment actions:

**A.** A delay of two months, when she applied to Classic to when she was hired .

**B.** Keeping her on 4 hours "Bench" for 100+weeks, intentionally by Classic's African-American Mr. Jessamy's office team, since December 8, 2006, cutting her permanent work hours from 40 to 32 hours weekly forever and from the same day (December 8, 2006) for her husband (white foreigner), FSD Bronzini's permanent weekly hours from 40 to 32 hours for the 9 month period.

**C.** Removal from her Friday permanent for 1,5 year shift at 35 East 21st street , cutting forever her weekly work hours from 40 to 32 from the same day as Mr. Jessamy cut Mr. Bronzini's schedule from 40 to 32 hours weekly work for 9 months in retaliation to Mr. Bronzini's phone call to the Union.

**D.** Classic forced her to the work assignment on Christmas Day on December 25, 2004 (religious US holiday) to the dangerous, unsafe work conditions (*Exhibit # 63 A-C*) (*Exhibit # 63 A*).

**E.** Working 16-17 hours without any breaks.

**F.** Classic forced her to work without any breaks 16-17 hours daily in addition to all time standing position, while at the same time at 440 9th Avenue site all other non-whites security guards received breaks during their 8 hours shifts (*Exhibit # 60 A-E*) (*Exhibit # 60 A, B, C*).

**G.** In retaliation for EEOC complaint intentionally suspended  her 6 days vacation pay by Classic's African-American Mr. Jessamy's team for the long period of time.

**H.** Classic's African-American Mr. Jessamy's office team's discriminated against Mrs. Bronzini in retaliation for the Mr. Bronzini's phone call to the Union, retaliated to Mrs. Bronzini by violating the Family Medical Leave Act -- "FMLA", and the EEO  Law (regarding to Mrs. Bronzini leave of absence in 2006 Fall) (*Exhibit # 67 A-B*).

Mrs. Bronzini claims that she, white foreigner, was intentionally treated differently than other race security officers by Classic's  African-American Mr. Jessamy's office team.  The real cause of

intentional action of discrimination is based on race, national origin, age, religion, which is Classic's African-American office team's "coordinated game plan" (*Exhibit # 1*) against Plaintiffs.

### 2. Mrs. Bronzini Was Discriminated Against for a Delay in her Hiring.

Mrs. Bronzini claims that she was discriminated by Classic since her hiring time, because not one Classic's newly hired employee was for 2 months on "waiting list". Defendant did not provide anybody's name, who was waiting longer for hiring, while everyday Classic hired new employees - 284 per 9 month period (*Exhibit # 76*). On October 5, 2004 (*Exhibit # 80*) in front of Mrs. Bronzini, there were hired non-white security guards who did not even have Security Licenses, for which they just filled applications and went through their finger-printing procedure for the criminal background check (which regularly takes about 2 months). In front of Mrs. Bronzini, Classic hired people, who were non-white races, younger than Mrs. Bronzini, mostly U.S. born, and without criminal background check, while Mrs. Bronzini had a valid Security License (fingerprinted and checked for criminal records) since May 6, 2004 (*Exhibit # 80*). She had to wait long 2 months until December 2, 2004 - her hire day at Classic - and received new name - "white slave" from Classic's African-American office team. From the first day she became permanently punished with 4 hours "Bench" as "a victim", as "an example" for the newly hired security guards that in Classic nothing is free - everything: permanent work, sitting sites, overtimes were just for favors. Since Mrs. Bronzini first day December 2, 2004, Classic's African-American Mr. Jessamy's office team put her permanently on "waiting list" - 4 hours "Bench" for 7 months until July 7, 2005 when first time she received a permanent shift to complete her 40 hours weekly work at 35 East 21st Street site (*Exhibit # 73 A-D*) (*Exhibit # 73 A, C*). At the same time her husband Mr. Bronzini - another Classic's "white victim" was punished with the 4 hours daily "Bench" for 6 months in 2004 year and all 12 months in 2005 year. Classic's African-American Mr. Jessamy's office team never victimized anybody with daily 4 hours "Bench" duty for more than 30 days (probation period at Classic), but 2 white foreigners, 40+ years old, in Classic - minority (just 1-3% whites) were forced to "help" to collect the favors for Classic's Mr. Jessamy's African-American office team by permanently kept on "Bench".

All material facts and evidences are showing Classic's intentional actions of discrimination against Mrs. Bronzini, based on race, national origin, and age.

### 3. Mrs. Bronzini Can Establish a Claim of Discrimination Based on the Number Shifts She Received.

Mrs. Bronzini claims that she was intentionally discriminated keeping her on "bench" - 4 hours daily 100+ weeks and cutting forever by African-American Mr. Jessamy with 32hours weekly from her permanent 40 hours.

Mrs. Bronzini claims that she was on 4 hours "Bench" for 3 time periods:

1. Since December 2nd, 2004 to July 7th, 2007 - 7 months "Bench" 4 hours daily .
2. Since December, 2005 until January 6th, 2006 - "Bench" 4 hours daily.
3. Since December 8th, 2006 - African-American Mr. Jessamy intentionally, in retaliation to the Mr. Bronzini's phone call to the Union, cut her 40 permanent weekly hours to 32 weekly forever and from the same time, December 8, 2006, cut FSD Mr. Bronzini's hours from 40 to 32 hours weekly for the 9 months, for the same reason.

Since December 2nd, 2004 to July 7th, 2005 Classic kept Mrs. Bronzini on "Bench" - 4 hours every day sending to different sites or giving just 4 hours a day to collect her 40 hours weekly (*Exhibit # 89*).

Mrs. Bronzini claims that 7 months on "Bench" is racial punishment, when non-whites, newly hired security guards spent not more than 30 days on "Bench" (Classic's probation period).

For the Classic's African-American Jessamy's office team it was not always possible immediately for white foreigners to assign 40 hours permanent shift per week, but it is possible just after 7 months punishment of "Bench", or possibly by cutting Mrs. Bronzini's hours (since December 8th, 2006) from 40 to 32 hours weekly forever, because of her race, national origin, and age.

Intentional Classic's African American Mr.Jessamy's team punishing 2 white foreigners by keeping Mrs. Bronzini on "Bench" 100+ weeks - forever, and at the same time Mr. Bronzini 100 weeks on "Bench" - real proof of discrimination. In 2008 year  Classic hired 294 new security guards per 9 month period *(Exhibit # 76)*, but for Mrs. Bronzini there is still no any available shifts to complete her weekly 40 hours work, who had no reprimand, was never late in 4 years, even after SL Green's Award received for her excellent work at Classic *(Exhibit # 78)*. Classic is still advertising for Full time security officers hiring 5 days per week in AM New York morning daily newspaper *(Exhibit # 77 A)* *(Exhibit # 77 B)*.

### 4. Mrs. Bronzini Can Establish a Claim for Discrimination with Respect to her Shift at 35 East 21st Street.

Mrs. Bronzini claims that she was intentionally discriminated by African-American Mr. Jessamy, who, in retaliation for Mr. Bronzini's phone call - complaint to the Union, cut her 40 permanent hours to 32 hours weekly forever, which was against the Family and Medical Leave Act of 1993 Law (FMLA). Her leave of absence was signed by Mr. Jessamy's African American team - it approved her 40 hours work permanent schedule after her return from FMLA *(Exhibit # 67 A)* *(Exhibit # 70 D-E)* (Exhibit # 69 A-B) *(Exhibit # 69 A)*. Mrs. Bronzini was taking care of her elderly (78 years at that time) mother in Lithuania, who had a complicated surgery, after which nursing was required *(Exhibit # 68 A-B)* *(Exhibit # 68 B)*.

35 East 21st street site was Mrs. Bronzini's 5th weekly permanent shift for the 1,5 years in a permanent site, completing 40 hours permanent weekly work  before Mrs. Bronzini left by the F.M.L.A. and after her returning - she had 40 hours weekly again *(Exhibit # 70 D)*. On the next day, on December 8, 2006, after the Mr. Bronzini's phone call to the Union, Mr. Jessamy cut, reduced working hours for both from the same day - Mrs. Bronzini from 40 to 32 hours weekly forever and for Mr. Bronzini from 40 to 32 hours weekly for 9 months.

Defendant in the Interrogatories said differently "Client at 35 East 21st street  wanted **fifth** shift  for **Mrs. Riggs (not Reddick )**" - but in the Classic's log books Mrs. Reddick after December 8th,2006 was working just 4 days at 35east 21st street site and still 1 day at 21Penn Plaza *(Exhibit # 71 A-E)* (Exhibit # 72 A-E).

No one real document, as Defendant promised to  provide, about Client's real intentions in request to EEOC - Defendant's untrue statement the name is *Riggs* (Reddick) and about request for the *Fifth day* for Reddick 3-4 completely different Defendant's statements, but material facts are showing that the real reason is intentional discrimination against Plaintiffs by African American Mr. Jessamy, who in retaliation fired, reduced forever Mrs. Bronzini from 40 to 32 hours weekly forever and Mr. Bronzini - from 40 to 32 hours weekly for 9 months after Mr. Bronzini's December 7, 2006 complaint to the Union .

### 5. Mrs. Bronzini Can Establish a Claim for Discrimination for an Assignment to an Unsafe Location.

On December 25, 2004, Christmas Day, Mrs. Bronzini was scheduled for the 4 hours "Bench" at 3pm in Classic's office. Mrs. Bronzini arrived to the "Bench" duty first and left the last from "Bench" at 6:30 pm, then she was delivered to the construction site at 120 East 29th street and left only with the plain uniform where was no heat, hundreds of rats around, debris and garbage in the very cold

and unsafe conditions (*Exhibit # 63 A-C*) (*Exhibit # 63 A*).

Her relieve security guard never went and stayed inside he building because of unsafe conditions, instead just sat outside in own car without the uniform.

Classic's African-American office team intentionally forced her to take unsafe construction post by leaving her the last on "bench".

Defendant intentionally did not provide "Bench" log books dated until January 7, 2006 (*Exhibit # 82*), hiding facts about Mr. And Mrs. Bronzini permanent keeping on "Bench". (*Exhibit # 84*) Ignoring Judge' order for the providing "bench" Log books to the Plaintiffs, where documental "bench" line of security officers could be found and how Mrs. Bronzini was the first for the "bench" and left on Christmas day the last one for the **rats** .

Mr. Jessamy's hating comments "Mrs. Bronzini was best suited to staff that location" (Aff..50) - showing Mr. Jessamy's, even after four years, hating attitude, intentionally punishing white foreigner female on Christmas Day, driving her  by Classic's field supervisor Mr. Herbert Williams  without prior explanation about 100 rats,  no heat , dangerous , dusty construction site . About unsafe and dangerous conditions (cold , rats , garbage, construction debris)   at this work site there are also other security guard's entries from the same period of time in the construction  site's lobby book (*Exhibit # 63 A-C*) (*Exhibit # 63 A*).

**6. Mrs. Bronzini Can Establish That She was Discriminated Against with Respect To Breaks.**

Classic's African-Americans security guards  received breaks at 440 9th Avenue site (*Exhibit # 60 A-E*) (*Exhibit # 60 A, B, C*) (*Exhibit # 59 A-B*) (*Exhibit # 59 A*) and at 625 Madison Avenue site FSDs (*Exhibit # 55 A-E*) with Mr. Jessamy's permission - it is discrimination for Mrs. Bronzini (*Exhibit # 60 A-E*) (*Exhibit # 60 A, B, C*) (*Exhibit # 59 A-B*) (*Exhibit # 59 A*) and Mr. Bronzini, who worked 16-17 hours without any breaks, because of their race, national origin, age.

**7. Classic's Standing and Food Policies are Directed at Mrs. Bronzini.**

Mrs. Bronzini was forced  to work  while standing , not for  one  entire shift , but for the two shifts, standing 16 - 17 hours daily, without any breaks (*Exhibit # 59 A-B*) (*Exhibit # 59 A*). Standing 16-17 hours daily, caused serious injuries (*Exhibit # 62 A-C*) (*Exhibit # 62 A*), Mrs. Bronzini complained to the Union on December10th, 2007 (*Exhibit # 61*) Others,  non white race security guards , working just 8 hours daily shifts at the same 440 Ninth avenue site  received breaks, permitted by Classic's  Mr. Jessamy's office (*Exhibit # 60 A-E*) (*Exhibit # 60 A, B, C*). Essential material facts provided by plaintiffs are showing that discrimination against Mrs. And Mr. Bronzini was based on their race, national origin, in respect to Classic's break and food policies.

**8. Mrs. Bronzini Can Establish That She was Discriminated Against with Respect to Her Vacation Pay.**

Mr. Jessamy's statement about Vacation Request that employees must identify   three choices - is untrue, but material facts showing that there are no any  word  about three choices in the Vacation Request (*Exhibit # 64 A-B*). Classic's African-American  Mr. Jessamy's office teams "stole" 6 days of vacation's pay and returned after 3 month delay. Mr.Jessamy intentionally discriminated "punished" both Mr. and Mrs. Bronzini at the same time: cutting salary, vacation, personal days-- for  Mr. Bronzini- $3000  per 6 month  , for Mrs. Bronzini - 6days vacation = almost $500. There were no "alternate request" no different 3 options in Mr. Bronzini's vacation request  form (*Exhibit # 30 A*). Vacation pay was returned just on June 14, 2007(*Exhibit # 31 A*) and also to Mrs. Bronzini returned on June 14, 2007.

Just after Plaintiffs  filled to the Union complaint (*Exhibit # 65*) and  Retaliation Charges to EEOC (*Exhibit # 79 A-B*) (*Exhibit # 79 A*) Mr.Jessamy was forced to return "stolen" vacation pay to Mr. Brozini and Mrs. Bronzini after long 3months delay , but on the same week  Mr.Jessamy in intentional retaliation "stole", took all Mr. Bronzini's $396 - 32 hours  weekly work salary before Father's Day (*Exhibit # 31 B*) (*Exhibit # 32*) Just per 6 weeks period Classic's African American  Mr. Jessamy's office team "stole" and after delay returned $960 , total  back pay just from Mr. Bronzini per 6 month period was almost $3000 , but in Classic's payroll  back pay was just $576 per all 2007 year (*Exhibit #19 E*).

Intentional retaliation discrimination committed  by Classic's African American  Mr. Jessamy's office team was committed on both Mr.Bronzini and Mrs.Bronzini at the same time -- what showing the discrimination committed upon race , national origin, age with the one reason -- financial big profit for Classic, which was at the time of the filling complaint to US Court : from Mr.Bronzini - almost 4 years without breaks -$4000 plus $8500 - difference in salary as FSD  **total $12500**; from Mrs.Bronzini - 3years without breaks - $3000 plus $4000 "stolen" hours from full time employment  **total $7000**.

### III. Classic is not Entitled to Summary Judgment of Plaintiffs' Claims of Retaliation.

Plaintiffs claim that they were intentionally retaliated by Classic :

1) not only removing Mrs. Bronzini from 35 East 21st street site , but cutting weekly permanent hours from 40 to 32 hours per week forever (*Exhibit # 70 C-E*) (*Exhibit # 70 D, E*)  and at the same time for Mr. Bronzini reducing for the 9 month period from 40 to 32hours per week (*Exhibit # 20 E-G*) (*Exhibit # 20 E*) after Mr. Bronzini's phone call to the Union on December 7th, 2006. After first time Complaint to EEOC on January 3rd,2007 ,Classic paid to Mr.Bronzini for FSD position at 625 Madison avenue $12 per hour - the lowest hourly rate from 625 Madison FSDs (*Exhibit # 3*), did not return over 120 hours of the FSD training time  at 625 Madison avenue site since September 28th,2006  (*Exhibit # 20 B-D*) (*Exhibit # 25*).

2) Intentional retaliation - Mrs. Bronzini's vacation pay 6 day suspending (*Exhibit # 65*) at the same time Mr. Bronzini's vacation pay suspending (*Exhibit # 30 A*) (*Exhibit # 27 B*), personal day pay suspension (*Exhibit # 27 A*).

3) Intentional retaliation - Mr. Bronzini's illegal  suspension from work for two weeks on March 10th,2007 (*Exhibit # 24 A*) and on March 17th, 2007 (*Exhibit # 23*) without issuing any Command Discipline Form, written up .

4) intentional retaliation - after Mr. Bronzini's written complaint to the Union on March 19th,2007 about illegal suspension for two weeks (*Exhibit # 22 A-C*) (*Exhibit # 22 A*)  immediately Mr. Jessamy's intentional retaliation actions - canceled on March 23rd,2007 the  on-site test  for April 7th,2007 for 625 Madison avenue site (*Exhibit # 4*) and started "stealing", suspending salary FSD Bronzini's:

- Taking $192 (16 hours) from Mr. Bronzini's weekly $384 (32hours) salary on April 5, 2007 (*Exhibit # 33*) before Easter.
- Taking on April 5, 2007 after Easter $192 (16 hours) from Mr. Bronzini's weekly $384 (32hours) salary (*Exhibit # 33*)
- Taking on May 10, 2007 before Mother's Day $192 (16 hours) from Mr. Bronzini's weekly $384 (32hours) salary (*Exhibit # 33* ).
- Taking by Classic's Mr. Jessamy's office team on June 14, 2007, before Father's Day, $384 all Mr. Bronzini's weekly  (32hours) salary  (*Exhibit # 31 B*)  and returned after delay with different than usual paycheck , without date on it ,without numbers (*Exhibit # 32*).
- Totally just per 6 weeks  $960 "stolen" and after delay returned .

5) Intentional retaliation - canceling Mr. Bronzini's on-site test ,because of Classic's big profit from

salary differences - $12 (lowest) and $16 per hour ,which Mr. Bronzini working at 625 Madison Avenue site had to receive after the FSD on-site test as $16 per hour African American Mrs. Winston received from her first month of employment as FSD 625 Madison avenue . Mrs. Winston started working at  625 Madison avenue site on October 12, 2006 (*Exhibit # 10 B*) and had on-site test on October 6, 2006 (*Exhibit # 9*). Classic's profit from not giving (canceling) the on-site tests for Mr. Bronzini - $700+ monthly.

## A. Plaintiffs Can Establish a Prima Facie Case of Retaliation.

On December 28, 2007 Mrs. Lolita Bronzini received from FedEx docket number for discrimination civil case # 07 CV. 11104 (HB) against Classic from the U.S. Court on, and two days after, on December 31, 2007 at 10 pm police arrived to Plaintiffs' apartment in Brooklyn, Bensonhurst area without any phone call to 911, with illegal intervention, at exactly two (2) hours before FSD Eimont Bronzini's New Year's night shift at 415 E 59th Street site (shift 01/01/08 midnight 12 am until 8 am).

Police officers handcuffed Mr. Eimont Bronzini, then battered him with heavy metal flashlight, and at the beginning of the execution Police Chief explained what must be done on both "Russians": - "we will lock you (Eimont Bronzini) up and we will f...ck your wife (Lolita Bronzini) together..". Police officers handcuffed Mrs. Lolita Bronzini, sexually assaulted her in attempting to rape and after that arresting Mrs. Lolita Bronzini with criminal charges and Mr. Bronzini was taken to Coney Island psychiatric ward - all actions are under investigation, about Police's close connection to the Defendant. The police's made criminal's and psychiatric patient's records for Plaintiffs which were intended to be in Defendant's favor to stop - to finish - all Discrimination Case at the U.S. Court in one day - 24 hours period, because Plaintiffs would become criminal and psychiatric patient - that is stopping the start of the case. Plus Plaintiffs would become unemployed in any Security system (criminal record + psychiatric ward record + no show no call, termination) (*Exhibit # 87*) (*Exhibit # 86 A*) (*Exhibit # 86 B*) (*Exhibit # 86 C-D*).

Therefore, "Bad Santa's" organized New Year's execution is under the investigation by C.C.R.B. (Civilian Complaint Review Board) (*Exhibit # 86 A-B*) and Internal Affairs Bureau (*Exhibit # 86 C*) in the close connection to the retaliation to the Mr. Eimont Bronzini's and Mrs. Lolita Bronzini's civil case # 07 CV. 11104 (HB).

The Criminal Court completely dismissed Mrs. Lolita Bronzini's criminal charges on October 17th, 2008.

Mr. Eimont Bronzini called off from work (with Classic) for that New Year's Night shift because of his sickness – this is why Mr. Eimont Bronzini was not fired from Classic for "no call, no show", which was in mind in the initial  "coordinated action plan".

Defendant's provided citations from Plaintiffs' Depositions for the support of Motion for Summary Judgment are just picking some words from context and using them in opposite meaning in own favor. Plaintiffs provided Deposition corrections and essential material facts about continuing investigation in close connection to the retaliation to the Civil Case in the U.S. Court.

## B. Plaintiffs Can Establish that Classic Retaliated Against them in Removing Mrs. Bronzini form Her Permanent (for 1,5 year) Shift at 35 East 21st Street.

Plaintiffs claim that Mr.Jessamy retaliated against Mr. Bronzini in response to the phone call to the Union on December 7th, 2006 (*Exhibit # 25*), complaining that Classic Security was not paying to FSD Eimont Bronzini FSD's hourly rate for 3 weeks, since November 18th, 2006 just paying security guards salary - $ 9,80 /hour for the FSD work (*Exhibit # 20 A-G*) (*Exhibit # 20 B, D, E*) with the huge responsibility working on his own as FSD at 625 Madison Avenue site.

Plaintiffs claim Mr.Jessamy intentionally retaliated by cutting Mrs. Bronzini permanent weekly hours from 40 to 32 forever (*Exhibit # 70 A-E*) since December 8th, 2006 and from the same day - December 8th, 2006, Mr. Bronzini hours from 40 to 32 weekly for the 9 month (*Exhibit # 20 A-G*) (*Exhibit # 20 B, D, E*). Defendant did not provide the real reason of Client's 35 east 21st street as promised in interrogatories. Different versions of removing Mrs. Bronzini from 35 east 21st street site, but essential material acts showing  that after December 8th, 2006 Mrs. Carroll Reddick worked  at 35east 21st street just 4 days (*Exhibit # 71 A-D*) and just one day still at  21 Penn Plaza  (*Exhibit # 71 E*).

Classic's intentional refusal to provide to Mrs. Bronzini 40 hours permanently work or 40 hours of any work after her return from her leave - FMLA (which Mr. Bronzini proofed and was approved by Mr. Jessamy's office team) employee must be restored to her original 40 hours weekly schedule which she had for 1,5 year period and after returning from her leave (*Exhibit # 67 A-B*) because Classic hiring every day new security guards for the Full and Part time work (*Exhibit # 76*).

Defendant  did not provide any written documental refusal from Plaintiff  Mrs. Bronzini for 4 hours "Bench" allegedly given to her by Mr.Jessamy to complete 40 hours weekly for.

All material facts showing that Classic intentionally retaliated against both Plaintiffs in reducing Mrs. Bronzini's  40 hours weekly to 32 forever and Mr. Bronzini's 40 weekly hours to 32.

### C. Mr. Bronzini Can Establish that Classic Retaliated Against him by Canceling his On-site Exams.

Mr. Bronzini claims that Classic's Mr.Jessamy retaliated against him by canceling his FSD on-site exams on April 7th,2007 and October 31st, 2007 (not September 28th, 2007 as in Defendant's false statements) (*Exhibit # 4*).

Mr. Bronzini was required by FDNY to take on-site exam (test) for 625 Madison avenue in 3month period - first time and in 6 month if he will fails first time (*Exhibit # 5*).
To receive the Certificate of Fitness Mr. Bronzini had to obtain Certificate of FSD Completion, which gave him the right to work 1year as FSD, but not any "FSD trainee" or security guard as Classic's Mr. Jessamy's invention to receive additional profit from Mr.Bronzini's salary for Classic for the same identical FSD work. There was provided training by Classic at 625 Madison Avenue site since September 26th, 2006 until November28th, 2006 (120 hours which was unpaid for FSD Mr. Bronzini ) (*Exhibit # 20 A-C*) (*Exhibit # 20 B*). Since November 18th, 2006 FSD Bronzini worked on his own, with the full responsibilities, required by FDNY. Classic's Mr. Jessamy's African American office team  did not pay FSD Bronzini any salary for the FSD work for the 9+ weeks since November 18th, 2006 and FSD Bronzini's call to the Union, on December 8th, 2006 Mr. Jessamy in retaliation fired Classic's  security officer Mrs. Bronzini  forever from her fifth shift, cutting her permanent 40 hours, obtained for the 1,5 years, to 32 hours weekly forever  and at the same time, since December 8, 2006, cutting FSD Bronzini's work hours from 40 weekly to 32 hours weekly for the 9 month period.

Mr. Jessamy's false statement (Aff..31) "The training was difficult as Mr. Bronzini's instructor, Mr. Willis, found that Mr. Bronzini "doesn't" seem to listen and always know more than what (he) tried to explain to him". Mr. Willis never was FSD Bronzini's instructor - real person, instructor, was Mr. Tucker, FSD at 625 Madison avenue, since September 26th,2006 until November 18th, 2006 training time (*Exhibit # 13 A-D*) (*Exhibit # 13 A, B*). Since November 18th,2006 Mr. Bronzini worked as FSD  by his own, without any instructor or trainer (*Exhibit* # 14 A-D).

False Mr. Jessamy's statement is that  "...Classic pay for the cost of on-site exam, it does not schedule exams until it believes that the FSD trainee is ready  to pass the exam" (Aff. 32) The cost for exam is just $450 to FDNY, but Classic's profit  from   FSD Bronzini for not scheduling the on-site test is $700+ every month - it is Real material intentional retaliation, because for Classic's African-