UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

EIMONT BRONZINI,                                :
                                                :
                          Plaintiff,            :   11 CIV. 2096 (KBF)
                                                :
          - against -                           :
                                                :
CLASSIC SECURITY, LLC,                          :
                                                :
                          Defendant.            :
                                                :
-------------------------------------------------------- X


## CLASSIC SECURITY, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO PARTIALLY DISMISS THE AMENDED COMPLAINT


TANNENBAUM HELPERN SYRACUSE
& HIRSCHTRITT LLP
Attorneys for Defendant Classic Security, LLC
900 Third Avenue
New York, New York 10022
(212) 508-6700


Of Counsel:   Andrew W. Singer
              Maryann C. Stallone

## Table of Contents

Page

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT .......................................................................... 1

STATEMENT OF FACTS .................................................................................. 3

    I.     THE PRIOR PROCEEDINGS ................................................................ 3

        A. Plaintiff's First Charge of Discrimination with the EEOC ............................ 3

        B. Plaintiff Commences Bronzini I; Plaintiff's Claims Are Dismissed on the Merits by Two Courts of Competent Jurisdiction ..................................... 4

        C. Plaintiff Files His Second Charge of Discrimination with the EEOC, Followed By This Second Action, Which Assert the Exact Claims That Had Been Dismissed By The District Court And The Second Circuit Court of Appeals On The Merits ................................................................ 6

ARGUMENT ...................................................................................................... 9

    I.     PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINES OF COLLATERAL ESTOPPEL AND RES JUDICATA ......................................... 9

        A. Plaintiff's Claims Are Barred By The Doctrine Of Collateral Estoppel ............................................................................... 10

        B. Plaintiff's Claims Are Also Barred By The Doctrine of Res Judicata .................................................................................... 12

CONCLUSION .................................................................................................. 14

<h2 style="text-align:center">T<small>ABLE OF</small> A<small>UTHORITIES</small></h2>

**<u>Cases</u>**                                                                                                                        **<u>Page</u>**

*Amadasu v. Bronx Lebanon Hosp. Ctr.*,
No. 03 Vic.6450, 2005 WL 121746 (S.D.N.Y. Jan. 21, 2005).....................................................9

*Austin v. Downs, Rachlin & Martin Burlington St. Johnsbury*
270 F. App'x 52 (2d Cir. 2008) ............................................................................................12

*Batyreva v. N.Y. City Dep't of Educ.*,
No. 07 Civ 4544, 2008 WL 4344583 (S.D.N.Y. Sept. 18, 2008) ...........................................11

*Bronzini, et al. v. Classic Security LLC*,
2009 WL 102140 (S.D.N.Y. Jan. 15, 2009) ................................................................... passim

*Bronzini, et al. v. Classic Security LLC*,
371 Fed. App'x 196 (2d Cir. 2010).............................................................................. passim

*Buford v. Coombe*,
199 F.3d 1321 (2d Cir. 1999)...............................................................................................12

*Dillard v. Henderson*,
43 F. Supp. 2d 367 (S.D.N.Y. 1999)......................................................................................13

*Dolan v. Roth*,
170 F. App'x 743 (2d Cir. 2006) ...........................................................................................11

*Duggan v. Local 638, Enter. Ass'n of Steam, Hot Water, Hydraulic, Sprinkler,*
*Pneumatic Tube, Ice Machine, Air Conditioning & Gen. Pipefitters*,
No. 06 Civ 2236 2006 WL 3545006 (E.D.N.Y. Dec. 8, 2006)....................................................9

*Flaherty v. Lang*,
199 F.3d 607 (2d Cir. 1999).................................................................................................13

*Hoblock v. Albany County Bd. Of Elections*,
422 F.3d 77, 94 (2d Cir.2005)..............................................................................................11

*HSBC Bank v. Cadore*,
No. 34487/07, 2009 WL 2516901 (Sup. Ct. Kings County Aug. 17, 2009)...............................12

*Interoceanic Corp. v. Sound Pilots, Inc.*
107 F.3d 86 (2d Cir. 1997)...................................................................................................14

*Johnson v. Watkins,*
101 F.3d 792 (2d Cir. 1996)........................................................................................ 10

*Koo v. Dep't of Bldgs. of City of N.Y.,*
No. 06 Civ. 2454, 2007 WL 643324 (2d Cir. Feb. 28, 2007) ....................................... 12

*Kramer v. Time Warner Inc.,*
937 F.2d 767 (2d Cir. 1991)........................................................................................ 10

*Marshall v. Nat'l Ass'n of Letter Carriers BR36,*
No. 03 Civ. 1361, 2003 WL 22519869 (S.D.N.Y. Nov. 7, 2003). ................................. 9

*Marchon Eyewear, Inc. v. Tura LP,*
No. 98 Civ 1932, 1999 WL 184107 (E.D.N.Y. March 28, 1999)................................... 10

*Mayes v. Local 106, Int'l Union of Operating Eng'rs,*
No. 86 Civ. 41, 1995 WL 30576 (N.D.N.Y. Jan. 20, 1995) ......................................... 12

*Montana v. United States,*
440 U.S. 147 (1979)..................................................................................................... 10

*Neuman v. Harmon,*
965 F.Supp. 503 (S.D.N.Y. 1997)................................................................................. 9

*Rivet v. Regions Bank of LA,*
522 U.S. 470 (1998)..................................................................................................... 13

*Scherer v. Equitable Life Assurance Soc'y,*
No. 01 Civ. 10193, 2004 WL 2101932 (S.D.N.Y. Sept. 21, 2004)............................... 9

*In re Teltronics Servs. Inc,*
762 F.2d 185 (2d Cir. 1985).......................................................................................... 13

*Thompson v. County of Franklin,*
15 F.3d 245 (2d Cir. 1994)........................................................................................... 9

*United States v. Alcan Aluminum Corp.,*
990 F.2d 711 (2d Cir. 1993).......................................................................................... 10

*U.S. v. Ozsusamlar,*
No. S1 05 Cr. 1077, 2007 WL 2826601 (S.D.N.Y. Sept. 20, 2007)............................. 12

*Yaohua Deng v. Aramark Educ. Group, Inc.,*
No. 06 Civ. 1733, 2007 WL 3231104 (2d Cir. Nov. 2, 2007) .................................................... 12

## **OTHER AUTHORITIES**

Restatement (Second) of Judgments § 24(2) (1982) .................................................................... 13

## PRELIMINARY STATEMENT

Defendant Classic Security LLC ("Classic" or "Defendant") submits this memorandum of law in support of its motion to partially dismiss the Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(6), because various claims asserted by Plaintiff in this action were dismissed on the merits in an earlier consolidated action brought by Plaintiff Eimont Bronzini ("Plaintiff" or "Bronzini"), and his wife Lolita Bronzini, in *Bronzini v. Classic Security LLC*, Docket Nos. 08 Civ. 0475, 07 Civ. 11104 (S.D.N.Y.) (Baer, J.) (collectively, "Bronzini I"). Therefore, such claims are barred as a matter of law.

Plaintiff, a now former employee of Classic, began pursuing discrimination and retaliation claims on behalf of himself and his wife against Classic in January 2007, while both were still employed by Classic.[1] The gravamen of Plaintiff's discrimination claims, then and now, is that Classic engaged in "reverse discrimination" based on Plaintiff's race, color, national origin and age, because it did not assign Plaintiff to a forty hour permanent work week, did not provide him with a Fire Safety Director ("FSD") work site in 2006, 2007, and 2008, and paid him at a lower salary than two other African-American FSDs.[2] Plaintiff and Mrs. Bronzini also asserted claims of retaliation against Classic. Both Plaintiff's and Mrs. Bronzini's claims were found to be without merit by three independent forums: the U.S. Equal Opportunity Commission ("EEOC") in November 2007, the U.S. District Court of the Southern District of New York in January 2009, and the U.S. Court of Appeals for the Second Circuit in April 2010.

---

[1] Mrs. Bronzini continues to be employed by Classic, while Plaintiff's employment with Classic was terminated for cause in February 2011.

[2] Mrs. Bronzini also asserted claims of discrimination against Classic based on race, religion, national origin and age. Although Mrs. Bronzini is not a party to the present action, we note that to the extent Plaintiff seeks to assert claims on her behalf that arose from 2006 through 2008, those claims are also precluded for the reasons discussed below.

Notwithstanding the fact that three different forums conclusively determined that Plaintiff's and Mrs. Bronzini's claims lacked any merit or evidentiary support, it is clear from Plaintiff's seventy-one page amended complaint in this action (hereinafter "Bronzini II Complaint") that Plaintiff seeks to rehash and re-litigate the exact discrimination and retaliation claims, arising out of the same facts or "nucleus of operative facts," that Plaintiff pursued against Classic in Bronzini I. Because Plaintiff had a full and fair opportunity to litigate those identical legal issues and factual circumstances before courts of competent jurisdiction, any claims asserted by Plaintiff in this action arising prior to the Opinion and Order of the district court, dated January 15, 2009 (the "2009 Decision"), are barred as a matter of law by the doctrines of collateral estoppel and *res judicata*.

With regard to Plaintiff's remaining allegations of discrimination and retaliation which arose after the 2009 Decision, while Classic contends that these claims are similarly without merit, they are not the subject of this motion.[3] Classic will seek to address those claims at the appropriate time.

---

[3] As far as can be deciphered, the new allegations of discrimination asserted by Plaintiff in this action, which were not dismissed pursuant to the 2009 Decision, begin on page 58 of the Bronzini II Complaint at paragraph 35. In sum and substance, similar to his claims in Bronzini I, Plaintiff alleges that Classic discriminated against him in 2009, 2010 and 2011 by refusing to provide him with an FSD work site and schedule him for an FDNY on-site test, and by failing to pay him at the rate of other FSD employees. (*See* Bronzini II Complaint ¶¶ 35-43). As noted above, the district court and Second Circuit dismissed essentially the same claims asserted by Plaintiff in Bronzini I with respect to the years 2006, 2007, and 2008. In addition, Plaintiff alleges a new retaliation claim; he claims that Classic terminated him and has retaliated against his wife because he filed a second charge of discrimination with the EEOC in 2010. (*See* Bronzini II Complaint ¶¶ 45-54).

## STATEMENT OF FACTS

In its 2009 Decision, the district court provided a detailed and thorough account of the factual background of Plaintiff's claims. Accordingly, we respectfully ask the Court to take judicial notice of, and to refer to the 2009 Decision, for a complete recitation of the facts that are relevant to the present motion. (*See* Singer Affidavit[4] Ex. 1 [2009 Decision, at *1-4].)

Classic, however, summarizes the procedural history of Bronzini I below:

**The Prior Proceedings**

*1. Plaintiff's First Charge of Discrimination with the EEOC*

On January 11, 2007, Plaintiff filed his first charge of discrimination against Classic with the EEOC, alleging that he was discriminated against based on his race, color, national origin and age. Plaintiff further alleged that Classic retaliated against him because of his complaint to his union in December of 2006 by removing his wife from her one-day per week shift at 35 East 21st Street, reducing his wife's hours per week from 40 to 32 hours per week, and reducing Plaintiff's hours from 40 to 32 hours per week. (*See* Bronzini II Complaint at 5-6.) On November 1, 2007, the EEOC issued notices of the right to sue to both Plaintiff and Mrs. Bronzini and closed its file determining it was unable to conclude that there were any statutory violations. (*See* Singer Affidavit Ex. 3.)

---

[4] References to the "Singer Affidavit" are to the Affidavit of Andrew W. Singer In Support of Classic's Motion to Partially Dismiss the Amended Complaint, sworn to on January 9, 2012. For this Court's convenience, we have attached the 2009 Decision (*Bronzini, et al. v. Classic Security LLC*, 2009 WL 102140 (S.D.N.Y. Jan. 15, 2009)) as Exhibit 1 to the Singer Affidavit, and the Second Circuit's decision affirming the district court's Opinion and Order, dated April 6, 2010 (*Bronzini, et al. v. Classic Security LLC*, 371 Fed. App'x 196 (2d Cir. 2010)), as Exhibit 2.

2. *Plaintiff Commences Bronzini I; Plaintiff's Claims Are Dismissed
on the Merits by Two Courts of Competent Jurisdiction*

In December 2007 and January 2008, Mrs. Bronzini and Plaintiff filed separate complaints against Classic in the district court of the Southern District of New York, each of which were subsequently amended, and then consolidated by the district court in March of 2008. Plaintiff and Mrs. Bronzini asserted numerous claims of unlawful employment discrimination based upon race, national origin, religion, disability, age, and gender pursuant to, *inter alia*, Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act of 1990 ("ADA"), the Family and Medical Leave Act of 1993 ("FMLA") and the Equal Pay Act of 1963 ("EPA"). (*See* Singer Affidavit Ex. 1 [2009 Decision, at *1].)

Plaintiff's discrimination claims in Bronzini I were based on the allegations that Classic engaged in adverse employment actions because it (1) failed to assign Plaintiff, a "white foreigner," to 40 hours of permanent work each week; (2) failed to provide Plaintiff with an FSD work site in 2006, 2007 and 2008; (3) paid Plaintiff a lower salary than other FSDs; (4) removed Plaintiff from permanent assignments in 2007; (5) withheld his salary for a period of time; and (6) did not provide Plaintiff with breaks during his shifts. (*See* Singer Affidavit Ex. 1 [2009 Decision, at *1, 5].) Plaintiff and Mrs. Bronzini also alleged that Classic retaliated against them by 1) removing Mrs. Bronzini from her Friday shift at 35 East 21st Street; 2) reducing Mrs. Bronzini's hours from 40 to 32 hours per week; 3) removing Plaintiff from his March 10 and 17, 2007 shifts at 625 Madison Avenue; 4) cancelling Plaintiff's on-site FSD exams scheduled for April 7 and September 28, 2007 at 625 Madison Avenue; and 5) allegedly arranging a police raid

4

against Plaintiff and Mrs. Bronzini. (*See id.*, at *9; *see also* Singer Affidavit Ex. 4 [Bronzini I Complaint[5] at 6, 9-11].)

On November 7, 2008, after the close of discovery, Classic moved for summary judgment seeking to dismiss both Plaintiff's and Mrs. Bronzini's claims in their entirety. On January 15, 2009, the district court, in a detailed and well-reasoned opinion, granted summary judgment in Classic's favor and dismissed all of Plaintiff's and Mrs. Bronzini's claims. (*See* Singer Affidavit Ex. 1 [2009 Decision].) In sum, the district court found that Plaintiff and Mrs. Bronzini failed to establish a *prima facie* case of discrimination under their Title VII, ADEA, ADA, EPA and FMLA claims. The district court also concluded that, even assuming that Plaintiff and Mrs. Bronzini were able to establish their *prima facie* claims, Classic nevertheless had proffered legitimate, non-discriminatory reasons for its employment actions, which Plaintiff and Mrs. Bronzini failed to show were pre-textual. (*Id.*, at *5-7.) Based on similar reasoning, the district court dismissed Plaintiff's and Mrs. Bronzini's claims of retaliation. (*Id.*, at *9.)

On or about February 20, 2009, Plaintiff and Mrs. Bronzini appealed the district court's decision. On appeal, Plaintiff asked the Second Circuit to review and address every argument and issue addressed by the district court because, in his mind, the district court "was wrong," simply "recop[ied] and rewrote[e] only [Classic's] lies" and had "refus[ed] to review documents, and exhibits provided by [Plaintiff and Mrs. Bronzini]." (*See* Bronzini II Complaint at 16-19, incorporating Bronzini's Memorandum of Law in Support of his Appeal, dated June 19, 2009.)

Upon *de novo* review of Plaintiff's and Mrs. Bronini's claims, the Second Circuit affirmed the judgment of the district court in its entirety, and independently concluded, "for substantially the reasons stated by the district court, . . . [Plaintiff and Mrs. Bronzini] failed to

---

[5] References to the "Bronzini I Complaint" are to Plaintiff's Amended Complaint for Employment Discrimination in Bronzini I, dated March 10, 2008.

adduce evidence that would permit a reasonable factfinder to conclude that [Classic's] non-discriminatory, legitimate business reasons for the challenged employment actions were a pretext for discrimination." (*See* Singer Affidavit Ex. 2 [Second Circuit's Decision, at 197].) Furthermore, the Second Circuit held that with regard to Plaintiff's and Mrs. Bronzini's retaliation claims the "evidence is insufficient to support an inference that [Classic's] non-discriminatory reasons for its actions were in fact in retaliation for [Mrs.] Bronzini's taking FMLA-protected leave." *Id.*

   3. *Plaintiff Files His Second Charge of Discrimination with the EEOC, Followed By This Second Action, Which Assert the Exact Claims That Had Been Dismissed By The District Court And The Second Circuit of Appeals On The Merits*

   On July 23, 2010, in a clear attempt to obtain a second bite of the apple and circumvent the holdings of the district court and Second Circuit, Plaintiff filed his second charge of discrimination with the EEOC, articulating the very same facts and claims of discrimination and retaliation that had been dismissed on the merits by the district court and Second Circuit.[6]  (*See* Singer Affidavit Ex. 5.)  On March 11, 2011, the EEOC issued Plaintiff a Notice of Right to Sue upon Plaintiff's request. (*See* Bronzini II Complaint at 73.)

   On or about March 21, 2011, Plaintiff filed the Complaint in this action.  A Summons was issued on April 27, 2011.[7]  On or about August 24, 2011, Plaintiff filed an Amended Complaint, of which the first fifty-seven out of seventy-one pages restate the identical facts and

---

[6] Plaintiff also filed a similar charge of discrimination with the New York State Division of Human Rights on or about June 29, 2010.  (*See* Bronzini II Complaint ¶ 38, at 60-62.)

[7] Classic was never served with this Complaint.

claims of discrimination and retaliation that were adjudicated in Bronzini I.[8]  An Amended

Summons was issued on October 7, 2011.

By way of example, as he asserted in Bronzini I (*see* Singer Affidavit Ex. 1 [2009

Decision, at \*2, 5]; Ex. 5 [Bronzini I Complaint at 5-8]), Plaintiff alleges in this action that

although he took the FSD written exams in 2006, 2007, 2008, Classic refused to schedule an

FDNY on-site exam for him because of his race, color and national origin. (*Compare with*

Bronzini II Complaint ¶¶ 6-8, 17-20, 23-30).  In Bronzini I, the district court specifically

addressed these allegations and concluded that Classic had articulated several non-discriminatory

reasons as to why Plaintiff had not taken the FSD on-site exam, such that a reasonable fact-finder

would have no grounds to find that discrimination was a contributing factor in Classic's

decisions.  (*See* Singer Affidavit, Ex. 1 [2009 Decision, at \*2, 5].)  In arriving at this holding,

the court found that Classic had scheduled several on-site exams for Plaintiff throughout 2007

and 2008, which were subsequently cancelled primarily due to complaints about Plaintiff's job

performance or to the fact that Plaintiff was assigned to a building that did not require officers to

be certified FSDs, and notably certification for an FSD on-site exam is limited to a specific

building where an employee is working. (*See id.*, at \*5) (the "record make[s] clear that Classic's

clients were not satisfied with [Plaintiff's] job performance . . . and requested to have him

removed from their buildings.")

Identical to the claims asserted in Bronzini I, Plaintiff also re-alleges in this action that in

September of 2006, he received $9.80 per hour and then $12.00 per hour in January of 2007,

while other African-American FSDs received $16.00 per hour. (*See* Bronzini II Complaint ¶¶ 7-

---

[8] Indeed, in his present complaint, Plaintiff essentially has cut and pasted the allegations set forth in
Bronzini I and has incorporated the two charges of discrimination filed with the EEOC, his memorandum
of law in opposition to Classic's motion for summary judgment in Bronzini I, and his Rule 56.1 Statement
of Facts. (*See generally* Bronzini II Complaint at 1-57.)

9.) With regard to this claim, the district court concluded that Classic had articulated legitimate business reasons for any wage discrepancies between Plaintiff and other Classic FSD employees, including the work experience and qualifications of the other employees, as well as the fact that those employees had completed the on-site exam, were certified FSDs, and were specifically hired for the FSD position, while Plaintiff was not. (*Id.*, at *6-7.) Further, the district court found that Classic presented evidence establishing that several African-American FSDs were paid in the same range as Plaintiff's salary. Based on this record, the district court concluded that "Plaintiff cannot show that Classic Security treated African-Americans more favorably, or that any wage discrepancy was a pretext for discrimination." (*Id.*, at *5.) The Second Circuit reviewed these determinations *de novo* and affirmed the district court's holdings. (*See* Signer Affidavit Ex. 2.)

Additionally, Plaintiff, once again, asserts in this action that Classic retaliated against him because of his 2006 complaint to the union, and the 2007 charges filed with the EEOC, by reducing his and Mrs. Bronzini's hours and removing them from certain work shifts at various points in time in 2006, 2007 and 2008. (*Compare* Bronzini II Complaint ¶¶ 9-12, 15-16, 21-22, 24 with Singer Affidavit, Ex. 4 at 6-7, 9-11.)[9]  In its 2009 Decision, the district court thoroughly examined these claims and held that there was no evidence proffered by Plaintiff or Mrs. Bronzini to establish that the reduction in either Plaintiff's or Mrs. Bronzini's hours was based on race, gender, national origin or age. (*See* Singer Affidavit, Ex. 1 at *6-7, 9.)  Instead, the record demonstrated that Mrs. Bronzini, for example, was replaced at one of her shifts by another employee due to the client's request. (*Id.*, at *6)  Moreover, the court was persuaded that

---

[9] Throughout the Bronzini II Complaint, Plaintiff inaccurately characterizes the reduction of his and his wife's weekly hours as a "firing." To the contrary, Mrs. Bronzini, to date, remains an employee of Classic, and Plaintiff continued to be employed by Classic until February 11, 2011. In actuality, Plaintiff is referring to his or Mrs. Bronzini's removal from a certain shift, which resulted in a reduction of their weekly work hours.

Plaintiff's work schedule was based on company needs and Classic could not guarantee that each employee received an identical number of hours. (*Id.*) Further, the court reasoned that the record had shown that Plaintiff worked an average of thirty-seven hours per week, "nearly a full-time work load," and thus, there was no merit to his claims. (*Id.*)

For the foregoing reasons, and the reasons set forth below, Plaintiff's allegations arising prior to the 2009 Decision must be dismissed as a matter of law.

## ARGUMENT

### PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINES OF COLLATERAL ESTOPPEL AND RES JUDICATA

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate where, as here, the pleadings fail to state a claim upon which relief can be granted. "The Second Circuit has held that *res judicata* [and collateral estoppel] challenges may properly be made via a threshold motion to dismiss." *Amadasu v. Bronx Lebanon Hosp. Ctr.,* No. 03 Civ. 6450, 2005 WL 121746, at *7 (S.D.N.Y. Jan. 21, 2005), citing *Thompson v. County of Franklin,* 15 F.3d 245, 253 (2d Cir. 1994) ("*Res Judicata* challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)"); *Marshall v. Nat'l Ass'n of Letter Carriers BR36,* No. 03 Civ. 1361, 2003 WL 22519869, at *7 (S.D.N.Y. Nov. 7, 2003) (*res judicata* and collateral estoppel challenges are appropriately made in a Rule 12(b)(6) motion to dismiss).

In evaluating a motion to dismiss on collateral estoppel or *res judicata* grounds, the court is permitted to consider, not only the allegations in the complaint, but also the records of the present and prior litigation. *See, e.g., Scherer v. Equitable Life Assurance Soc'y,* No. 01 Civ. 10193, 2004 WL 2101932, at *6 (S.D.N.Y. Sept. 21, 2004), citing *Neuman v. Harmon,* 965 F. Supp. 503, 509 (S.D.N.Y. 1997). Courts "may take judicial notice of the relevant pleadings, orders and judgments in the prior action without converting [the] motion to one for summary

judgment when reviewing a motion to dismiss under the doctrines of res judicata or collateral estoppel." *Duggan v. Local 638, Enter. Ass'n of Steam, Hot Water, Hydraulic, Sprinkler, Pneumatic Tube, Ice Machine, Air Conditioning & Gen. Pipefitters*, No. 06 Civ 2236, 2006 WL 3545006, at *4 n. 5 (E.D.N.Y. Dec. 8, 2006) (internal quotations omitted), quoting *Marchon Eyewear, Inc. v. Tura LP*, No. 98 Civ 1932, 1999 WL 184107, at *2 (E.D.N.Y. March 28, 1999); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir.1991).[10]

Because Plaintiff's discrimination and retaliation claims, which arose prior to the 2009 Decision, were dismissed on the merits in Bronzini I by two courts of competent jurisdiction, these claims are barred as a matter of law.

### A. Plaintiff's Claims Are Barred By The Doctrine Of Collateral Estoppel

The doctrine of collateral estoppel, or issue preclusion, provides that "an *issue of law or fact* actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties." *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 718-19 (2d Cir. 1993), citing *Montana v. United States*, 440 U.S. 147, 153 (1979). This doctrine serves a vital role: "it allows a party only one opportunity to litigate an issue thereby conserving the time and resources of the parties and the court; promotes the finality of judgments; preserves the integrity of the judicial system by eliminating inconsistent results; and ensures that a party not be able to relitigate issues already decided against it in prior litigation." *Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir. 1996) (internal citations omitted).

Under New York law, collateral estoppel bars consideration of an issue when "'(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate the issue in

---

[10] The documents relied upon by Classic in support of this motion are contained in the Bronzini I case file and the Bronzini II Complaint.

the first proceeding.'" *Dolan v. Roth*, 170 F. App'x 743, 746 (2d Cir. 2006), quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 94 (2d Cir. 2005) (alteration in *Hoblock*) (internal citations omitted). Both requirements are satisfied in this case.

First, as demonstrated *supra* (at 6-9), with the exception of claims arising after the 2009 Decision, Plaintiff's claims of discrimination and retaliation relating to employment actions which occurred in 2006, 2007 and 2008 are duplicative of the claims that were raised and adjudicated on the merits by both the district court and Second Circuit in Bronzini I. *See Batyreva v. N.Y. City Dep't of Educ.*, No. 07 Civ 4544, 2008 WL 4344583, at *10 (S.D.N.Y. Sept. 18, 2008) (precluding plaintiff from re-litigating the issues of discrimination or retaliation that were decided in an Article 78 proceeding and a collateral proceeding in New York State Court).

Second, the record amply demonstrates that Plaintiff had a full and fair opportunity to litigate the same issues and circumstances that he now raises in the first 57 pages of the Bronzini II Complaint before three independent forums: the EEOC, district court and Second Circuit. There can be no dispute that Plaintiff and Mrs. Bronzini had the full benefit of discovery and had hundreds of pages of documents at their disposal in Bronzini I. As Plaintiff acknowledged in his appeal to the Second Circuit, he and Mrs. Bronzini had provided "204 sufficient evidential documental evidences, proofs," in support of their discrimination claims. (*See* Bronzini II Complaint at 17.) Indeed, Plaintiff had the opportunity to establish the merits of his and his wife's claims not only in his opposition papers to Classic's summary judgment motion before the district court, but also on three separate occasions before the Second Circuit (in his initial appeal papers, his reply and at oral argument). Despite this "full and fair" opportunity to prove his claims, the district court and Second Circuit conclusively found Plaintiff's and Mrs. Bronzini's

claims to be without merit or evidentiary basis.  (*See* Singer Affidavit Exs. 1 and 2.)

　　　While Plaintiff undoubtedly will attempt to use the fact that he was a *pro se* litigant to argue that he should somehow be given a free pass to re-litigate these same issues and facts once again, courts have routinely denied such attempts. *See Buford v. Coombe*, 199 F.3d 1321 at *2 (2d Cir. 1999) (observing that although plaintiff was *pro se* before the Appellate Court did not bar a finding that he had a "full and fair opportunity" for purposes of collateral estoppel); *see also Austin v. Downs, Rachlin & Martin Burlington St. Johnsbury*, 270 F. App'x 52, 53-54 (2d Cir. 2008); *Koo v. Dep't of Bldgs. of City of N.Y.*, No. 06 Civ. 2454, 2007 WL 643324, at *1-2 (2d Cir. Feb. 28, 2007); *Yaohua Deng v. Aramark Educ. Group, Inc.*,  No. 06 Civ. 1733, 2007 WL 3231104, at *1 (2d Cir. Nov. 2, 2007).  While *pro se* litigants generally are afforded some latitude, a *pro se* litigant does not have greater rights than any other litigant and will be held to the same standards of proof as those who are represented by counsel. *U.S. v. Ozsusamlar*, No. S1 05 Cr. 1077(PKL), 2007 WL 2826601, at *4 (S.D.N.Y. Sept. 20, 2007); *Mayes v. Local 106, Int'l. Union of Operating Eng'rs*, No. 86 Civ. 41, 1995 WL 30576, at *31 (N.D.N.Y. Jan. 20, 1995); *HSBC Bank v. Cadore*, No. 34487/07, 2009 WL 2516901, at *2 (Sup. Ct. Kings County Aug. 17, 2009) (internal citations omitted).

### B. Plaintiff's Claims Are Also Barred By The Doctrine of *Res Judicata*

　　　To the extent Plaintiff seeks to assert claims of discrimination against Classic based on different legal theories not specifically addressed by the district court or Second Circuit, such as discrimination based on a "hostile work environment," these claims are also barred by the doctrine of *res judicata* since such claims could have been raised and litigated in Bronzini I.

　　　Pursuant to the doctrine of *res judicata*, or claim preclusion, a plaintiff is precluded from re-litigating claims that were or could have been litigated in an earlier proceeding, if that

proceeding resulted in (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case concerning the same parties or those in privity with the same parties, and (4) involving the same nucleus of operative facts or cause of action. *See, e.g., Flaherty v. Lang*, 199 F.3d 607, 613 (2d Cir. 1999) ("a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been raised* in that action"), quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998); *In re Teltronics Servs. Inc.*, 762 F.2d 185, 190 (2d Cir. 1985) (*Res judicata* applies "not only as to what was pleaded, but also as to what could have been pleaded.").

There can be no dispute in the instant case that the district court's 2009 Decision granting summary judgment and dismissing Plaintiff's claims, which was unanimously affirmed by the Second Circuit, was a final judgment on the merits, by courts of competent jurisdiction, concerning the same parties, and involving the same nucleus of operative facts as Bronzini I. Consequently, the doctrine of *res judicata* acts as an absolute bar to Plaintiff's claims that arise prior to January 2009. *See, e.g., Wash. v. U.S. States Tennis Assoc.*, 290 F. Supp. 2d 323, 326-27 (E.D.N.Y. 2003).

First, it is well-settled that the granting of a motion for summary judgment is a final judgment on the merits. *See, e.g., Dillard v. Henderson*, 43 F. Supp. 2d 367, 369-70 (S.D.N.Y. 1999) ("A judgment on the merits for purposes of *res judicata* is not necessarily a judgment based upon a trial of contested facts; it may, for example, be . . . a summary judgment.") (internal citations omitted). Moreover, it is likewise unequivocal that Bronzini I and this action involve the same parties and arise from the same "nucleus of operative facts." This Circuit has held that "[t]o ascertain whether two actions spring from the same 'transaction' or 'claim,' we look to whether the underlying facts are 'related in time, space, origin, or motivation, whether they form

a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations

. . . .'" *Interoceanic Corp. v. Sound Pilots, Inc.,* 107 F.3d 86, 90 (2d Cir. 1997), quoting

Restatement (Second) of Judgments § 24(2) (1982).  As demonstrated *supra*, Bronzini I and this

action undoubtedly meet this test.

## **CONCLUSION**

Accordingly, Classic respectfully submits that this Court should dismiss any of Plaintiff's

claims that precede the 2009 Decision as a matter of law, and should award Classic such other

and further relief as is just and proper.

Date:   New York, New York
        January 9, 2012

TANNENBAUM HELPERN SYRACUSE
& HIRSCHTRITT LLP

By:_____
        Andrew W. Singer
        Maryann C. Stallone
900 Third Avenue
New York, New York 10022
(212) 508-6700
*Attorneys for Defendant Classic Security, LLC*

14