```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
EIMONT BRONZINI,                           :
                                           :
                Plaintiff,                 :  11 CIV. 2096 (KBF)
                                           :
        - against -                        :
                                           :
CLASSIC SECURITY, LLC,                     :
                                           :
                Defendant.                 :
                                           :
------------------------------------------------------------- X
```

## CLASSIC SECURITY, LLC'S LOCAL CIVIL
## RULE 56.1 STATEMENT OF FACTS

TANNENBAUM HELPERN SYRACUSE
& HIRSCHTRITT LLP
Attorneys for Defendant Classic Security, LLC
900 Third Avenue
New York, New York 10022
(212) 508-6700

Of Counsel:   Andrew W. Singer
              Maryann C. Stallone

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, defendant Classic Security, LLC ("Classic"), by its attorneys Tannenbaum Helpern Syracuse & Hirschtritt LLP, maintains that the following material facts are not subject to dispute:

1. Plaintiff Eimont Bronzini ("Mr. Bronzini") is a 54 year old Caucasian male. He was born in Lithuania. (Stallone Aff., Ex. A at 3.)

2. Mr. Bronzini is a former employee of Classic, who worked for Classic from January 2004 through February 11, 2011. (Jessamy Aff., ¶¶ 9, 57.)

3. Lolita Bronzini ("Mrs. Bronzini") is Mr. Bronzini's wife. She is currently employed by Classic as a Fire Safety Director. (Stallone Aff., Ex. G [Eimont Tr. 265:3-7.])

4. Classic is engaged by various property owners and managers to provide on-site 24 hour security services at buildings and construction sites throughout the New York metropolitan area. Classic employs approximately 700 employees in New York. (Jessamy Aff., ¶ 2.)

5. The decision to assign a security guard or FSD to a particular building for a particular shift is based on several factors. All employees are asked to complete a New Hire Availability Form so that Classic is aware of an employee's preferences for their work schedule. Classic also takes into consideration an employee's skill set, experience, client preferences and pay rate (as different clients have different pay scales that they are willing to pay). (Jessamy Aff., ¶ 4.)

6. Classic's clients often request that specific security personnel be removed from their building or be provided with greater or fewer shifts. Security personnel can be removed from assignments for performance related issues, the scheduling needs of Classic or at the request of a client based on performance, compatibility, schedule or pay rate. (Jessamy Aff., ¶ 5.)

7. Certain buildings, which Classic services, require an FSD to be on duty. FSDs are employees certified by the fire department that are required in certain office buildings, who, among other things, are responsible for implementing the building's Fire Safety and Prevention Plans. (Jessamy Aff., ¶ 6)

8. The fire department administers an on-site test that certifies an individual as an FSD. Prior to taking the on-site test, however, an individual must take an FSD class, pass a written test, establish that they have met the experience requirements for an FSD, and receive a Certificate of Completion from the fire department. (*Id.*; *see also* Stallone Aff. Ex. G [Eimont Tr. at 23:3-17].)

9. Classic's general practice after a security officer passes the written exam, receives a Certificate of Completion from the fire department, and begins to work as an FSD trainee, is to provide that employee with an increase in salary to reflect his/her increased responsibilities. (Jessamy Aff., ¶ 8.)

10. FSD trainees, employees who have not yet passed their on-site exams or received their FSD licenses, receive salaries ranging from $11.00 to $14.55 per hour. (*Id.*)

11. The on-site exam is specific to each building location and is designed to ensure that each FSD assigned to a building is fully trained with the specific procedures at the building site. (Jessamy Aff., ¶ 6; *see also* Stallone Aff. Ex. G [Eimont Tr. at 26:17-21].)

12. Upon passing the on-site exam, the individual receives an F-58 license from the fire department. (Stallone Aff. Ex. G [Eimont Tr. at 23:3-17].)

13. After a Classic employee assigned to an FSD position passes their on-site exam administered by the fire department and obtains their F-58 license, Classic generally provides those employees with an additional increase. (Jessamy Aff., ¶ 8.)

2

14. On January 22, 2004, Mr. Bronzini began working at Classic as a security officer with an initial salary of $9.00 per hour. (Jessamy Aff., ¶ 9.)

15. In 2006, Mr. Bronzini decided to take the fire safety director's course on his own initiative. He completed the fire safety director's course on March 15, 2006, and passed the written exam on March 29, 2006. The fire department issued a Certificate of Completion to Mr. Bronzini on August 29, 2006. (Jessamy Aff., ¶ 10.)

16. Mr. Bronzini was assigned as a security officer with fire safety training at 625 Madison Avenue on November 18, 2006. On December 7, 2006, Classic began the process of authorizing Mr. Bronzini's payroll increase, to reflect his new responsibilities. Mr. Bronzini's raise required approval from Human Resources, the VP of Operations, and a Senior VP of Classic. The final approval was received on January 10, 2006, which resulted in a retroactive salary increase to November 18, 2006. Mr. Bronzini received retroactive pay reflecting his raise in the amount of $687.23. (Jessamy Aff., ¶ 11; Ex. 1 thereto.)

17. On March 6, 2007, Classic requested a date from the fire department to administer Mr. Bronzini's on-site exam. The fire department scheduled Mr. Bronzini's on-site exam for April 7, 2007 date. (Jessamy Aff., ¶ 12; Exs. 2-3 thereto.)

18. On March 9, 2007, Mr. Bronzini was informed that he was no longer going to work his Saturday shifts at 625 Madison Avenue. (Jessamy Aff., ¶ 14.)

19. On March 19, 2007, Mr. Bronzini filed a claim with the Union alleging he was improperly removed from his Saturday shifts. The Union did not pursue any action with respect to Mr. Bronzini's removal. (Jessamy Aff., ¶ 15.)

20. On March 23, 2007, Mr. Jessamy informed the fire department that Classic was canceling Mr. Bronzini's April 7, 2007 on-site exam at 625 Madison Avenue. (Jessamy Aff., ¶ 18; Ex. 8 thereto.)

21. In August 2007, Mr. Bronzini was reassigned to work as an FSD trainee at 320 E. 53rd Street. On August 13, 2007, Roderick Jessamy requested that the fire department schedule another on-site exam at 320 E. 53rd Street. (Jessamy Aff., ¶ 19; Ex. 9 thereto.)

22. Classic had to cancel Mr. Bronzini's on-site exam on October 18, 2007, because the fire command station at the building had a problem that may not have been repaired until October 31, 2007. Mr. Jessamy told the fire department that he would reschedule the exam as soon as he received authorization from the building. (Jessamy Aff., ¶ 20; Ex. 10.)

23. On May 2, 2008 and July 16, 2008, Classic contacted the fire department to re-schedule the on-site exam for Mr. Bronzini at 320 E. 53rd Street. The fire department set August 14, 2008 for Mr. Bronzini's on-site exam. (Jessamy Aff., ¶ 21, 26; Exs. 11-12, 16 thereto.)

24. On July 11, 2008, the client at 320 E. 53rd Street requested that Mr. Bronzini be removed from his shifts at the building. (Jessamy Aff., ¶ 24; Ex. 15 thereto.)

25. Classic transferred Mr. Bronzini's exam from 320 E. 53rd Street to 415 E. 59th Street. (Jessamy Aff., ¶ 27; Ex. 17.)

26. On August 14, 2008, the fire department arrived at 415 E. 59th Street to administer Mr. Bronzini's on-site exam. However, the fire department was unable to administer the exam because that building did not have the proper command system. (Jessamy Aff., ¶ 28.)

27. On September 26, 2008, Classic offered Mr. Bronzini an FSD assignment at 16 Court Street involving Monday through Friday shifts. Mr. Bronzini declined that offer stating that he

4

had a lawsuit against Classic and needed to work elsewhere during the week for additional money. (Jessamy Aff., ¶ 32; Ex. 19 thereto.)

28. In August 2009, Classic offered Mr. Bronzini an FSD position at 1140 6th Avenue, which also entailed Monday through Friday shifts. Mr. Bronzini rejected the offer stating that he was not interested in Monday through Friday shifts and was looking for an FSD schedule that was similar to his current security officer schedule of working weekend shifts. (Jessamy Aff., ¶ 33; Ex. 20 thereto.)

29. On January 21, 2010, Classic also offered Mr. Bronzini a potential FSD position at 20 Cooper Square with shifts on Saturdays and Sundays. On or about January 25, 2010, Mr. Bronzini responded and stated that the 20 Cooper Square location was a "mystical" address because it did not exist on Classic's Contractor's list. (Jessamy Aff., ¶ 34; Exs. 21-22 thereto.)

30. On February 1, 2010, Classic offered Mr. Bronzini an FSD position at 340 Madison Avenue. This position involved Monday through Friday shifts. On February 5, 2010, Mr. Bronzini responded stating that "You very well know that the shifts on Saturday's (sic) and Sunday's (sic) for 32 hours or 24 hours are most fit for me, because I worked for 6 years the same 40 hours weekly schedule . . ." (Jessamy Aff., ¶ 35; Exs. 23-24 thereto.)

31. On or about January 28, 2011, Mr. Bronzini accepted an FSD assignment at 80 Broad Street that involved Monday through Friday shifts. Upon acceptance of this position, Plaintiff received a raise from $13.55 to $14.55 per hour. [Stallone Aff. Ex. G [Eimont Tr. at 154:7-155:24; *see also* Jessamy Aff., ¶¶ 36-37; Ex. 25.)

32. On January 31, 2011, Classic asked the fire department to schedule an on-site exam for Plaintiff at 80 Broad Street. On February 4, 2011, the fire department responded setting the on-site exam for June 14, 2011. (Jessamy Aff., ¶ 38; Ex. 26.)

5

33. Mr. Bronzini never completed this on-site exam because he was terminated on February 11, 2011. (Jessamy Aff., ¶ 39.)

34. The building's policy at 80 Broad Street was to lock all of its restrooms. This policy applied to all of Classic's employees, and not just Mr. Bronzini. (Stallone Aff. Ex. G [Eimont Tr. at 209:15-25; 193:3-9; 181:19-182:5; 187:23-188:13]; Jessamy Aff. ¶¶ 45-47.) None of Classic's employees had keys for the restrooms at 80 Broad Street; they all accessed the restrooms with the use of codes, including Classic's field supervisor, Kyle Bunce. (Jessamy Aff. ¶¶ 45-46; Stallone Aff. Ex. G [Eimont Tr. at 190:21-191:9; 192:5193:7].)

35. The individuals responsible for locking the restrooms were Caucasian engineers who worked for the building, not Classic. (Stallone Aff. Ex. G [Eimont Tr. at 177:4-18; 201:3-16].)

36. Ms. Agnes Foster and Kimberly Danza, other Classic FSDs assigned to the 80 Broad Street location, provided Mr. Bronzini with the codes for the restroom and told him that he had to use the codes to access the restrooms. (Stallone Aff. Ex. G [Eimont Tr. at 180:4-22; 181:19-182:5; 187:23-188:13].)

37. On February 9, 2011, Mr. Kyle Bunce issued a Command Discipline in Mr. Bronzini's name citing "Discourtesy/Insubordination" and "Incident Detrimental to Reputation of Company" as the type of performance infraction exhibited. (Jessamy Aff., ¶ 51; Ex. 32.)

38. On February 10, 2011, Classic received an email from Jon Auer of Swig Equities, the Chief Engineer and the client's representative at 80 Broad Street, requesting Mr. Bronzini's removal from the building. Mr. Auer wrote to Classic's account representative, Andrea Mesis, as follows "I have numerous complaints regarding the 4-12 guard. And I cannot keep him around. He is not working well with anyone." (Jessamy Aff., ¶ 52; Ex. 33.)

39. On February 11, 2011, Classic terminated Mr. Bronzini. (Jessamy Aff., ¶ 57.)

Dated: New York, New York
October 22, 2012

                          TANNENBAUM HELPERN SYRACUSE
                                  & HIRSCHTRITT LLP

                          By: _____
                                Andrew W. Singer
                                Maryann C. Stallone
                                *Attorneys for Defendant Classic Security LLC*
                                900 Third Avenue
                                New York, New York 10022
                                (212) 508-6700

**TO:**
Eimont Bronzini
2251 81st Street Apt. C-1
Brooklyn, New York 11214
(718) 490-3725