UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
EIMONT BRONZINI,                                           :
                                                           :
                Plaintiff,                          :   11 CIV. 2096 (KBF)
                                                           :
       - against -                                        :
                                                           :
CLASSIC SECURITY, LLC,                                     :
                                                           :
                Defendant.                          :
                                                           :
---------------------------------------------------------- x


## CLASSIC SECURITY, LLC'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT


TANNENBAUM HELPERN SYRACUSE
& HIRSCHTRITT LLP
Attorneys for Defendant Classic Security, LLC
900 Third Avenue
New York, New York 10022
(212) 508-6700

Of Counsel:   Andrew W. Singer
                    Maryann C. Stallone

# Table of Contents

                                                                    **Page**

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT.................................................................................................................. 2

    I.     PLAINTIFF DOES NOT ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION OR RETALIATION, AND HAS FAILED TO PROVIDE ANY EVIDENTIARY SUPPORT TO REBUT THE LEGITIMATE BUSINESS REASONS IDENTIFIED BY CLASSIC FOR ITS ACTIONS ..................................................................................... 2

        A.  Plaintiff's Inability to Take an On-Site Exam Was Due to His Unsatisfactory Job Performance and Personal Preferences, Not Any Discriminatory Animus............................................................... 3

        B.  Plaintiff Cannot Establish That He Received Disparate Compensation......... 5

        C.  Plaintiff Cannot Establish Any Disparate Treatment with Regard to The Restroom Policy at 80 Broad Street ......................................................... 7

        D.  Plaintiff's Retaliation Claim Fails as a Matter of Law ................................... 9

    II.    PLAINTIFF HAS FAILED TO ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION OR RETALIATION WITH RESPECT TO MRS. BRONZINI............................................................................................. 9

CONCLUSION............................................................................................................ 10

## Table of Authorities

**Cases**                                                                                                              **Page**

*Aslanidis v. U.S. Lines, Inc.*,
7 F.3d 1067 (2d Cir. 1993) .................................................................................................. 2

*Cameron v. Cmty. Aid for Retarded Children, Inc.*,
335 F.3d 60 (2d Cir. 2003) .................................................................................................. 2

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................................................ 2

*Cohen v. Fed. Express Corp.*,
383 Fed. App'x 88 (2d Cir. 2010) ....................................................................................... 2

*Del. & Hudson Ry. Co. v. Consol. Rail Corp.*,
902 F.2d 174 (2d Cir. 1990) ................................................................................................ 2

*Jeffreys v. City of New York*,
426 F.3d 549 (2d Cir. 2005) ............................................................................................ 4, 8

*Patane v. Clark*,
508 F.3d 106 (2d Cir. 2007) ................................................................................................ 9

*Rojas v. Roman Catholic Diocese of Rochester*,
660 F.3d 98 (2d Cir. 2011) .............................................................................................. 4, 8

*Rosinski v. Am. Axle & Mfg., Inc.*,
402 Fed. App'x 535 (2d Cir. 2010) ..................................................................................... 3

*Sanghvi v. Frendel*,
2000 U.S. App. LEXIS 31757 (2d Cir. Dec. 7, 2000) ......................................................... 3

*Warren v. N. Shore Univ. Hosp.*,
268 F. App'x 95 (2d Cir. 2008) ........................................................................................... 9

## PRELIMINARY STATEMENT

Defendant, Classic Security, LLC ("Classic"), respectfully submits this memorandum of law in further support of its motion for summary judgment (the "Motion"). In his opposition to Classic's Motion, Plaintiff simply regurgitated the same speculative and conclusory statements of discrimination and retaliation asserted in the Complaint without proffering any evidence in support of his claims.[1] Summary judgment is warranted in the instant action because Plaintiff has failed to identify any genuine issues of material fact that would warrant a trial. Moreover, Plaintiff has failed to make the requisite evidentiary showing that the legitimate, non-discriminatory reasons offered by Classic for the employment actions taken were pre-textual.

Recognizing his inability to establish his *prima face* case and rebut the evidence submitted by Classic in support of its Motion, Plaintiff reverts to accusing Classic of fabricating the evidence submitted, making false statements in its affidavits, and changing Plaintiff's and Mrs. Bronzini's answers to their deposition testimony. In addition, Plaintiff continues to raise the very same claims that were asserted in Bronzini I and were dismissed by this Court on *res judicata* and collateral estoppel grounds. Plaintiff's conduct borders on the level of sanctions, even for a *pro se* plaintiff. Consequently, in the event this Court were to grant the instant Motion, Classic also asks this Court to issue an order barring Plaintiff from filing any further civil lawsuit in any court against Classic for any claim relating to his employment with Classic, without first obtaining leave of such court, to avoid further burdening the judicial system with Plaintiff's duplicative and frivolous claims and disingenuous conduct.

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in Classic's Memorandum of Law in Support of Its Motion for Summary Judgment, dated October 22, 2012 ("Classic's Moving Br.").

# ARGUMENT

## I. PLAINTIFF DOES NOT ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION OR RETALIATION, AND HAS FAILED TO PROVIDE ANY EVIDENTIARY SUPPORT TO REBUT THE LEGITIMATE BUSINESS REASONS IDENTIFIED BY CLASSIC FOR ITS ACTIONS

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A non-moving party cannot merely rely on his pleadings, conclusory allegations, or conjecture as Plaintiff has done here, and must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990), or more than "some metaphysical doubt as to the material facts" to defeat a motion for summary judgment. *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (citations omitted).

Plaintiff has failed to meet this burden. As an initial matter, Plaintiff's mere conclusory recitations of the elements of the Title VII and ADEA claims (*see* Plf. Opp. Br.[2] at 4-5) are insufficient as a matter of law to establish his *prima facie* case of discrimination or retaliation and defeat summary judgment here. *See Cohen v. Fed. Express Corp.*, 383 Fed. App'x 88, 89 (2d Cir. 2010) ("Conclusory statements or mere allegations [are] not sufficient to defeat a summary judgment motion.") (citation omitted); *Cameron v. Cmty. Aid for Retarded Children, Inc.*, 335 F.3d 60, 63 (2d Cir. 2003). Moreover, as shown in Classic's Moving Br. at 14-15, and below, Plaintiff's claims are legally deficient because the record conclusively establishes that he was not performing his job satisfactorily. Further, he cannot demonstrate any discriminatory treatment with respect to the compensation he received or with respect to the restroom policy at 80 Broad Street.

---

[2] References to "Plf. Opp. Br." are to Plaintiff's Memorandum of Law/Rebuttal in Support of His Opposition to Classic Security, LLC's Right For Motion for Summary Judgment, dated December 3, 2012.

2

### A. *Plaintiff's Inability to Take an On-Site Exam Was Due to His Unsatisfactory Job Performance and Personal Preferences, Not any Discriminatory Animus*

Plaintiff contends that the basis for his discrimination claims are certain summonses issued in April 2008 that allegedly demonstrate that Classic committed a criminal offense by not providing Plaintiff with an on-site exam for 5 years. He also claims, without any evidentiary support, that other similarly situated African-American FSDs received an on-site exam within 3 months of commencing work as an FSD trainee. *See* Plf. Opp. Br. at 3, 6. Plaintiff's arguments fail to defeat Classic's Motion for several reasons.

First and foremost, Plaintiff fails to rebut the substantial evidence proffered by Classic evidencing that Plaintiff's failure to take an on-site exam during his employment with Classic was due primarily to his unsatisfactory job performance and personal job preferences, and not as a result of any discriminatory animus on Classic's part. *See* Classic's Moving Br. at 5-7, 14-15; Jessamy Aff. ¶¶ 12-35. Indeed, the unrefuted record establishes that Plaintiff did not take several of the on-site exams scheduled for him by Classic because, *inter alia*, he was removed from three different buildings at the request of three different clients as a result of his "inappropriate" behavior and poor job performance. *See* Jessamy Aff. ¶¶ 13-18, 22-25, 49-54; Exs. 4, 14-15, 33.

Where a defendant rebuts a plaintiff's *prima facie* case of discrimination or retaliation by showing a legitimate, non-discriminatory reason for the conduct, as Classic does here, "to defeat summary judgment . . . the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination [or retaliation]." *Rosinski v. Am. Axle & Mfg., Inc.*, 402 Fed. App'x 535, 536-37 (2d Cir. 2010) (citation omitted); *Sanghvi v. Frendel*, 2000 U.S. App. LEXIS 31757, at *3-4 (2d Cir. Dec. 7, 2000). Plaintiff has not met his burden.

3

In lieu of providing admissible evidence to rebut the legitimate, non-discriminatory reasons proffered by Classic, Plaintiff submitted 22 pages of Errata sheets seeking to rewrite the testimony he had given under oath (*see* Plf. Opp. Ex. D), while making the unsubstantiated, and baseless claims that the statements made in Classic's affidavits are "false", that Classic "created" the contemporaneous evidence submitted in support of its Motion, and that Classic's attorneys and an independent court reporter from David Feldman changed the answers given during Plaintiff's and Mrs. Bronzini's depositions. Plaintiff's assertions are insufficient to raise a genuine issue of material fact and defeat summary judgment here. *See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011) (affirming summary judgment; reasoning "in certain cases a party's inconsistent and contradictory statements transcend credibility concerns and go to the heart of whether the party has raised *genuine* issues of material fact to be decided by a jury"); *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005).

Second, Plaintiff completely misstates (or misunderstands) the contents of the summonses issued in April 2008 upon which he relies to support his contentions that the fire department fined Classic $5,000 because Plaintiff had not been given an on-site exam from 2006 through 2008. Indeed, a review of the relevant documents shows that the fire department issued two summonses to Animal Medical Center, the client at 320 E. 53rd Street, one on April 17, 2008 for failing to have a fire safety director on duty, and the other, on April 26, 2008 for failing to "comply with Fire Commissions Order . . . to Provide a [FSD] on Duty Continuously." *See* Stallone Supp. Aff. Ex. M [Def. Ex. 1] at CS 00296-97, 300-01; *see also* Plf. Opp. Ex. 200. While Brian Watson was working at the building on April 17 when the first summons was issued, and Plaintiff was working on April 26 when the second summons was issued, both employees, although assigned by Classic to the building as the FSD on duty, had yet to pass their on-site exams. Thus, they were not considered licensed and qualified FSDs under the fire

4

department's rules and the building was fined $5,000 as a result. *See* Stallone Supp. Aff. Ex. M.[3]

Finally, there is no merit, or evidence to support Plaintiff's claims that all other African-American FSD trainees received an on-site exam within 3 months of receiving work as an FSD. For example, although Mr. Watson received his Certificate of Completion on May 4, 2007 and was assigned as an FSD trainee at 320 E. 53rd Street in January 2008, he was scheduled for, and passed, an on-site exam on August 14, 2008, over a year after receiving his Certificate of Completion and over 8 months after commencing work as an FSD trainee.[4] *See* Jessamy Aff. ¶ 42; Ex. 11. Although Classic requests dates for the on-site exams from the fire department, it has no control over when the fire department will actually schedule such exams. *See, e.g., id.* Ex. 9, 11, 12. Other factors outside of Classic's control could also prevent an on-site exam from proceeding, such as issues with the building's fire command station. *Id.* Ex. 10. Thus, Plaintiff's claims, based on nothing more than his subjective beliefs, cannot be sustained.

### B. *Plaintiff Cannot Establish That He Received Disparate Compensation*

Plaintiff's opposition similarly fails to establish that he received disparate pay from other similarly situated employees based on his race, nor does he provide any evidence to rebut the legitimate, non-discriminatory reasons offered for the amount of his salary. As an initial matter, Plaintiff's repeated attempt to compare himself to Sandra Winston and Ryan Palmer, Classic employees with whom he worked in **2006** (*see* Plf. Opp. Br. at 8-10), fails as a matter of law because such claims were already evaluated by the district court in Bronzini I, and are barred under the doctrines of collateral estoppel and *res judicata*. *See* Classic's Moving Br. at 15-16.

---

[3] There is similarly no evidence, or merit, to Plaintiff's contention that Mr. Watson abandoned his post on April 17, 2008, which resulted in the $5,000.00 violation. *See* Plf. Opp. Br. at 10. As discussed above, a summons was issued to the Animal Medical Center because Mr. Watson, although on duty, did not yet have a "Certificate of Fitness as a Fire Safety Director" because he had not yet passed his on-site exam. *See* Plf. Opp. Ex. 200.

[4] Contrary to Plaintiff's assertion, Mr. Watson never passed an on-site exam on September 24, 2007. *See* Plf. Opp. Br. at 10. The FDNY's records simply reflect that an on-site exam was scheduled for Mr. Watson for September 24, 2007. *See* Plf. Opp. Ex. 208. That exam was rescheduled for August 14, 2008. *See* Jessamy Aff. Exs. 11-12.

5

As the district court in Bronzini I conclusively found, both employees were *not* similarly situated to Plaintiff since they were hired under different circumstances and had different qualifications. *See* Stallone Aff. Ex. D [2009 Decision at *5].

Realizing that there is no support for his speculative allegation that other similarly situated African-American FSDs received between $15.00 to $22.00 per hour upon commencing work in an FSD capacity, and prior to passing their on-site exams, Plaintiff now appears to argue that he received disparate pay because other African-American FSD trainees (Watson, Foster, Danza) received $13.00 per hour, while he only received $9.80 per hour for 4 months until he filed a complaint with the EEOC on January 11, 2007, and then only $12.00 per hour. *See* Plf. Opp. Br. at 11-14. Plaintiff's assertions are flawed for several reasons.

First, Plaintiff's contention that Classic only raised his salary from $9.80 to $12.00 per hour after he filed a claim with the EEOC on January 11, 2007 is factually inaccurate. The documentary evidence shows that the process of authorizing Plaintiff's pay raise to recognize his new responsibilities as a FSD trainee began on December 7, 2006, but required the final approval from Human Resources, the VP of Operations, and a Senior VP of Classic, which ultimately was received by January 10, 2007 (the day before Plaintiff filed his claim with the EEOC). *See* Jessamy Aff. Ex. 1. Once this approval was received, Plaintiff received a retroactive salary increase to $12.00 per hour dating back to November 18, 2006 in the amount of $687.23.[5]

Second, there is no merit to Plaintiff's claim that the $12.00 per hour he was paid was less than what all other similarly situated African-American FSDs received. As the district court found in Bronzini I, in 2007 (the time Plaintiff was paid $12.00 per hour), at least five African-

---

[5] Classic does not dispute that Plaintiff continued to receive $9.80 per hour from September 26, 2006 until November 18, 2006. During this time he was being transitioned to learn his FSD responsibilities at 625 Madison Avenue and often worked with another Classic FSD on duty, while he continued to receive other work assignments as a security officer. On November 18, 2006, however, Plaintiff began to work in an FSD capacity without needing another FSD to supervise him. Therefore, his raise was effective on that day. *See id.*

American FSD trainees were "paid $10.00 to $12.00 per hour, which was in the same range as [Plaintiff's] salary," prior to passing their on-site exams. *See* Stallone Aff. Ex. D [2009 Decision, at *5]; *see also* Plf.'s Opp. Ex. 8[6] (the document Judge Baer was referring to in his Decision in Bronzini I). Also, contrary to Plaintiff's unsubstantiated accusation, Ms. Kimberly Danza was paid $11.00 per hour when she began working as an FSD trainee in April 2010, and not $13.00 or $15.00 per hour. *See* Jessamy Aff. ¶ 44; Ex. 29. With respect to Ms. Agnes Foster and Mr. Watson, while it is true that both employees were paid $13.00 per hour upon being assigned FSD responsibilities in March 2007 and January 2008, respectively, both of these employees had over five years' experience working as security officers for Classic before they commenced their training as FSDs and were already earning $11.00 or more per hour; Ms. Foster was hired in August 2001, while Mr. Watson was hired in June 2002. *See* Jessamy Aff. ¶¶ 42-43; Exs. 26-27. On the other hand, Plaintiff was hired by Classic in January 2004, and had only been working for Classic a little over 2 and a half years when he began working as FSD trainee in 2006. Consequently, Plaintiff's claims of disparate pay are without merit.

### C. *Plaintiff Cannot Establish Any Disparate Treatment with Regard to the Restroom Policy at 80 Broad Street*

Other than Plaintiff's conclusory and self-serving statements, Plaintiff has not provided any evidentiary support for his claim that Classic purposely had the restrooms at 80 Broad Street locked solely during his shifts, while providing master keys to the African-American FSDs in their mid-30's during their shifts. *See* Plf. Opp. Br. at 15-16. To the contrary, as discussed in Classic's Moving Br. at 18-19, and as Plaintiff conceded during his deposition, the restroom policy at 80 Broad Street was the building's policy, not Classic's, and further, the individuals

---

[6] Plaintiff frequently refers to 19 African-Americans in his Complaint and opposition papers who allegedly were treated more favorably than he. The document he appears to rely upon is Plf. Opp. Ex. 8. However, as the district court aptly noted, contrary to Plaintiff's belief, the document shows that at least 5 other African-American FSD trainees were paid in the same range as Plaintiff, with one employee receiving $2.00 less per hour than Plaintiff. *Id.*

7

responsible for locking the restrooms were Caucasian engineers who worked for the building, not Classic. Stallone Aff. Ex. G [Eimont Tr. at 177:4-18; 201:3-16]. Plaintiff has proffered not one scintilla of evidence to support the conclusory allegation that Classic had anything to do with the building's policy or even that Classic had any control over the building's engineers.

In addition, as Plaintiff's previously conceded, the building's restroom policy applied to all of Classic's employees regardless of race, national origin or age, and not just Plaintiff. *Id.* [Eimont Tr. at 209:15-25; 193:3-9; 181:19-182:5; 187:23-188:13]; Jessamy Aff. ¶¶ 45-47; *compare* with Plf. Opp. Ex. D [Plaintiff's Errata sheets]. Indeed, Plaintiff repeatedly testified that other Classic employees either used codes or told him to use codes to access the restrooms. *Id.* [Eimont Tr. at 209:15-25; 193:3-9; 181:19-182:5; 187:23-188:13; 190:21-191:9; 192:5193:7]. Although Plaintiff has attempted to rewrite his deposition testimony to assert for the first time that the other African-American FSDs assigned to 80 Broad Street had keys to access the restrooms, there is no evidence to support this contention.[7] Indeed, even absent Plaintiff's admissions, page two of the security logbook for 80 Broad Street (which Classic's security personnel used to log entries each day that they worked at the building) expressly provided that the available restrooms were located on the fourth floor and that the Men's code was 134, while the Ladies' code was 135. *See* Jessamy Aff. Ex. 30. Moreover, the record shows that Ms. Foster, the African-American FSD that Plaintiff refers to in his opposition papers, offered to take Plaintiff "upstairs and show him how to enter the code, but he refused." *Id.* Ex. 34.

Since Plaintiff has not provided any evidence, much less sufficient evidence, to establish any disparate treatment received by him based on either his race, national origin or age, Plaintiff's discrimination and retaliation claims should be dismissed.

---

[7] Upon recognizing that his testimony refutes his claims, Plaintiff submitted 22 pages of Errata sheets, which seek to rewrite the testimony given. He justifies his behavior with the baseless claim that Classic's attorneys and the court reporter changed his answers. It is well-settled that a plaintiff's testimony may be so contradictory and incomplete that it fails to create a genuine issue of material fact. *Rojas*, 660 F.3d at 106; *Jeffreys*, 426 F.3d at 554.

8

### D. *Plaintiff's Retaliation Claim Fails as a Matter of Law*

In his opposition papers, Plaintiff appears to have completely abandoned his claim that Classic terminated his employment in retaliation for the 2010 EEOC Charge he filed. He does not mention the claim once, much less offer any evidence to refute the legitimate, non-discriminatory reasons proffered by Classic regarding Plaintiff's termination. For the reasons stated in Classic's Moving Brief at 23-24, Plaintiff's retaliation claim fails as a matter of law.

## II. PLAINTIFF HAS FAILED TO ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION OR RETALIATION WITH RESPECT TO MRS. BRONZINI

Plaintiff's *prima facie* discrimination or retaliation claims with regard to his wife, Lolita Bronzini, also fail as a matter of law. As shown in Classic's Moving Br. at 19-21, Plaintiff cannot show that any adverse action was taken against Mrs. Bronzini, much less establish any inference of discriminatory animus on Classic's part. Classic has shown that Mrs. Bronzini received only positive employment results in 2011: her hours were increased from 32 to 40 hours per week, her salary was increased by *39 percent*, and she was promoted to an FSD position. To date, she continues to be employed by Classic as a licensed FSD earning over $16.00 per hour.

In order for an action to qualify as adverse employment action, it "must cause a materially adverse change in the terms and conditions of employment, and not just mere inconvenience." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007). "Mere inconveniences" such as delays experienced by an employee in obtaining a position or being reassigned to a position simply do not constitute adverse employment actions. *See, e.g., Warren v. N. Shore Univ. Hosp.*, 268 F. App'x 95, 98 (2d Cir. 2008). Here, the evidence demonstrates that any delay experienced by Mrs. Bronzini in obtaining an acceptable verification form from Classic for her FSD application was nothing more than a mere inconvenience, and consequently fails to rise to the level of an adverse employment action.

9

Moreover, there is no evidentiary basis to support Plaintiff's assertion that Classic discriminated against Mrs. Bronzini by providing her with a 32 hour rather than a 40 hour permanent work week from 2008 through 2011.[8] As discussed in Classic's Moving Br. at 21, it was Mrs. Bronzini's personal preference to work 32 hours on the weekend with an additional shift during the week, and not any discriminatory animus on Classic's part, which prevented her from working a 40 hour permanent work week prior to her acceptance of Monday through Friday shifts in May 2011. Many of Classic's clients seek to have continuity in their building staff's shift, and seek to have the fewest number of security personnel assigned to the same shifts during the week. Therefore, it is difficult to find an opening to assign an employee for only one 8 hour shift during the week. However, the evidence has shown that when Mrs. Bronzini accepted a Monday through Friday shift in May of 2011, she received the 40 hour work week she desired.

## CONCLUSION

For the foregoing reasons, Classic respectfully submits that this Court should grant summary judgment dismissing the remainder of Plaintiff's discrimination and retaliation claims in their entirety, and award Classic such other and further relief as is just and proper.

Date:  New York, New York
       December 13, 2012

                                        TANNENBAUM HELPERN SYRACUSE
                                        & HIRSCHTRITT LLP

                                        By: _____
                                            Andrew W. Singer
                                            Maryann C. Stallone
                                        900 Third Avenue
                                        New York, New York 10022
                                        (212) 508-6700
                                        *Attorneys for Defendant*

---

[8] Although Plaintiff continues to press these claims for the period of December 2006 through May 2011, any claim arising prior to March 2008 is barred by this Court's May 2, 2012 Decision. *See* Plf. Opp. Br. 16-18.

10