```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: APR 17 2013
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
EIMONT BRONZINI,                                            :
                              Plaintiff,                    :
                                                            :     11 Civ. 2096 (KBF)
              -v-                                           :
                                                            :     ORDER
CLASSIC SECURITY, LLC,                                      :
                              Defendant.                    :
                                                            :
------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

In 2011, pro se plaintiff Eimont Bronzini bought his second lawsuit against Classic Security, LLC ("Classic"), for discrimination based on his age, race and national origin. Now before the Court is defendant's motion for summary judgment on all claims. Because plaintiff has failed to offer evidence sufficient to raise a triable issue of fact on his claims, the Court grants defendant's motion in its entirety and terminates this case.

I.      FACTUAL BACKGROUND

The Court assumes familiarity with the facts of this case and here recites only those facts relevant on this motion. All facts are undisputed by admissible record material unless otherwise noted.[1]

---

[1] Plaintiff purports to dispute almost every fact put forward by defendant. (See generally Pl.'s Local Civil R. 56.1 Statement of Facts, ECF No. 57 ("PCSOF").) Most of these disputes, however, are not supported by any admissible record evidence. This Opinion only those disputes that are supported by record evidence.

1

### A. Plaintiff's Employment at Classic

Plaintiff is a white, fifty-four-year-old U.S. citizen who was born in Lithuania. (Pl.'s Local Civil R. 56.1 Statement of Facts ¶ 1, ECF No. 57 ("PCSOF").) He worked at Classic from January 2004 through February 11, 2011. (Id. ¶ 2.) Plaintiff began his employment at Classic as a security officer earning $9.00 per hour. (Def.'s Local Civil R. 56.1 Statement of Facts ¶ 14, ECF No. 44.) Over the course of his time at Classic, plaintiff received multiple raises, eventually increasing his wages to $14.55 per hour. (Id. ¶¶ 16, 31.)

In addition to security officers, Classic employs fire safety directors ("FSDs"), who are responsible for, among other things, implementing a building's Fire Safety and Prevention Plans. (Id. ¶ 7.) There are two relevant steps required to become an FSD. First, an applicant must take a class, pass a written test, and establish that he or she has met the experience requirement. (Id. ¶ 8.) Those applicants who successfully complete this first step receive a Certificate of Completion (also called a Z-50) from the fire department and may perform FSD duties on a temporary basis. (See id.; Pl.'s Local Civil R. 56.1 Statement of Facts ¶ 8, ECF No. 57 ("PCSOF").) Second, the fire department administers an on-site test, which is designed to ensure that the applicant is trained on the specific procedures at the building where he or she works. (DSOF ¶¶ 8, 11.) Applicants who successfully complete this second step receive an F-58 license. (Id. ¶ 12.) Classic distinguishes between employees who have only received a Certificate of Completion (which it treats as "FSD

2

trainees") and those who have received their FSD license (full-fledged FSDs). (Id. ¶¶ 9, 13.)

Plaintiff first obtained a Certificate of Completion in August of 2006. (Id. ¶ 15.) He was assigned to 625 Madison Avenue to serve as a security officer with fire safety training in November 2006, and he was awarded a pay raise (retroactive to the date of his 625 Madison Avenue assignment) in January 2007. (Id. ¶¶ 15-16.) Beginning in March 2007, Classic began requesting a series of on-site tests for Bronzini to become a full-fledged FSD. (See id. ¶ 17.) Classic ultimately requested at least three on-site tests (see id. ¶¶ 17, 21, 32) and asked the fire department to reschedule multiple tests to accommodate problems with the testing sites (see id. ¶¶ 23-26). No such test was administered, however, due to a combination of problems at the testing sites and reassignments of Bronzini. (Id. ¶¶ 21, 22, 24, 26-33.) At least two reassignments followed a request by the client that Bronzini be removed for performance-related problems. (See Jessamy Aff. ¶¶ 13-18, 22-25, ECF No. 46.)

At his final worksite with Classic (80 Broad Street), a dispute arose regarding access to the restroom. The building had a policy of locking its restrooms and permitting Classic's security guards to access them with codes rather than physical keys. (See DSOF ¶ 34.) There are facts in the record suggesting that, at some point prior to plaintiff's termination, the engineers at 80 Broad Street restricted access to the restrooms even from those guards with the relevant codes. (See Stallone Aff. Ex. G, at 175:17-201:16, ECF No. 45 ("Bronzini Depo.").) On February 9, plaintiff became "extremely agitated" and "began yelling in the lobby," demanding the key to

the restroom from the building's engineer. (Jessamy Aff. ¶ 53, ECF No. 46; id. Ex. 34.) That same day, the Classic field supervisor, Kyle Bunce, e-mailed Classic's director of Operation, Roderick Jessamy, to report that Bronzini was "extremely rude" to the building's engineer, that his "behavior [was] unacceptable," and that he recommended Bronzini be removed from the building to maintain a positive client relationship. (Jessamy Aff. ¶¶ 1, 50, ECF No. 46.) Mr. Bunce also issued a Command Discipline in connection with the incident. (Id. ¶ 51.) The next day, Jon Auer, the Chief Engineer and client representative of 80 Broad Street, e-mailed Classic's account representative saying: "I have numerous complaints regarding [Bronzini]. And I cannot keep him around. He is not working well with anyone." (Id. ¶ 52; id. Ex. 33.) On February 11, 2011, Bronzini was terminated from his position at Classic, before he could take the final on-site exam for which he was scheduled. (DSOF ¶ 33.)

### B. The Alleged Discrimination and Retaliation

Plaintiff complains that (1) the failure to provide him with an opportunity to take an on-site test, (2) the (related) failure to make him a full-fledged FSD, (3) the failure to pay him as much as allegedly similarly situated employees, (4) the failure to provide him with a key to the restroom at 80 Broad Street, and (5) his termination were all the result of Classic's discrimination against him, due to his age, national origin, and race. (See, e.g., Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. 4-5, ECF No. 56.) He also argues that Classic retaliated against him for his

4

complaints and lawsuits by committing much of the above-described conduct and by interfering with the FSD application of his wife, Lolita Bronzini.[2] (See id.)

As described above, the record on summary judgment includes facts supporting the propositions that:

- Plaintiff was not able to complete an on-site test while he worked for Classic;
- Plaintiff was not paid as much as Classic pays full-fledged FSDs;
- Plaintiff was not provided with a key to the bathrooms at 80 Broad Street;
- Classic terminated plaintiff's employment on February 11, 2011.

The only facts that connect these putative adverse employment actions with plaintiff's race, national origin, age, or protected conduct are: (1) plaintiff's conclusory, self-serving statements in his affidavit (see generally Bronzini Aff., ECF No. 58), (2) the fact that defendant paid certain black employees more than Bronzini, and (3) the timing when allegedly retaliatory conduct occurred.

There is no evidence in the record of a single overt, derogatory comment concerning age, national origin, or race, made by any of plaintiff's supervisors or any other manager at Classic.

---

[2] Plaintiff's submissions could be interpreted to assert discrimination claims on behalf of Mrs. Bronzini as well as himself. To the extent he purports to assert such claims on behalf of his wife, those claims are dismissed without prejudice because non-lawyers may not represent third parties in Court. See, e.g., Tindall v. Poultney High Sch. Dist., 414 F.3d 281, 284 (2d Cir. 2005). Plaintiff is, of course, entitle to claim that adverse employment actions taken against his wife were, in fact, made in retaliation against him for engaging in protected activities. See Thompson v. N. Am. Stainless, LP, 131 S. Ct. 863, 867-68 (2011). But because such a claim is so clearly meritless on this factual record — without any conduct that rises to the level of an adverse employment action or any evidence whatsoever that would connect the allegedly adverse actions with plaintiff's protected activities — the Court declines to discuss that claim further.

## II. DISCUSSION

### A. Standard on Summary Judgment

Summary judgment may not be granted unless the movant shows, based on admissible evidence in the record before the Court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In making a determination on summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (citing LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005)). In employment discrimination cases, "[s]o long as there is some evidentiary basis for inferring that facially [neutral] incidents were motivated by the plaintiff's [protected characteristic], the ultimate question of whether such abuse was 'because of' [that characteristic] is a question of fact for the factfinder." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 548 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue for trial and cannot merely rely on allegations or denials in the pleadings. See Fed. R. Civ. P. 56(c), (e); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true

6

nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 539 F.3d 159, 166 (2d Cir. 2010) (citations omitted). Conclusory, self-serving affidavits, standing alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment. See BellSouth Telecommc'ns, Inc. v. W.R. Grace & Co.-Conn., 77 F.3d 603, 615 (2d Cir. 1996).

### B. Governing Law

Construing plaintiff's complaint liberally, as this Court is required to do, see, e.g., Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006), plaintiff asserts claims of age, race and national origin discrimination under the ADEA, Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). He also asserts claims under those laws in connection with allegedly adverse employment actions taken against him (and his wife), which he argues were taken in retaliation for his complaints of discrimination.

#### 1. Federal, State, and Local Nondiscrimination Laws

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); see also Gross, 557 U.S. at 176. The NYSHRL and NYCHRL prohibit similar conduct, see, e.g., Leibowitz v. Cornell

7

Univ., 584 F.3d 487, 498 n.1 (2d Cir. 2009), though the NYCHRL claims are construed more liberally, see Colon v. Trump Int'l Hotel & Tower, No. 10 Civ. 4794, 2011 WL 6092299, at *5 (S.D.N.Y. Dec. 7, 2011).

Title VII, among other things, makes it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Again, the NYSHRL and NYCHRL prohibit similar conduct. See, e.g., Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000); Leibowitz, 584 F.3d at 498 n.1.

Absent direct evidence of discrimination, claims under Title VII, the ADEA, the NYSHRL, and the NYCHRL all proceed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801 (1973). See Cruz, 202 F.3d at 565 & n.1; Leibowitz, 584 F.3d at 498 & n.1. Under McDonnell Douglas, plaintiff must first make out a prima facie case of discrimination by pointing to facts that would permit a reasonable jury to find: (1) that plaintiff was a member of a protected group, (2) that he was qualified for the position, (3) that he experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination. See Cruz, 202 F.3d at 567; Leibowitz, 584 F.3d at 498 & n.1. Where the discrimination involves a failure to promote, plaintiff must point to facts that would permit a finding "that 1) [he] 'is a member of a protected class'; (2) [his] job performance was satisfactory; 3) [he] applied for and

8

was denied promotion to a position for which [he] was qualified; and 4) the position 'remained open[,] and the employer continued to seek applicants.'" Cruz, 202 F.3d at 565 (quoting Brown v. Coach Stores, Inc., 163 F.3d 706, 709 (2d Cir. 1998)).

Once plaintiff has carried his initial burden, defendant may come forward with a showing of a legitimate, non-discriminatory reason for the adverse employment action. See, e.g., Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010). Even where the defendant succeeds in rebutting the prima facie case, however, the plaintiff may nevertheless prevail by showing the proffered reason is merely a pretext. See id.

### 2. Anti-Retaliation Provisions

Title VII, the ADEA, the NYSHRL, and the NYCHRL all prohibit employers from retaliating against employees for complaining of the discrimination those laws are intended to prevent. See 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d); N.Y. Exec. Law § 296(e); N.Y.C. Admin. Code § 8-107(7).

Like the discrimination claims, retaliation claims proceed under the McDonnell-Douglas burden-shifting framework. See, e.g., Sumner v. U.S. Postal Serv., 899 F.2d 203, 208 (2d Cir. 1990). To meet his prima facie burden, plaintiff must point to facts that would allow a reasonable jury to find "that (1) he participated in protected activity known to defendant, (2) he suffered an adverse employment action, and (3) a 'causal connection [exists] between [plaintiff's] engagement in the protected activity and the adverse employment action.'" Mattera v. JPMorgan Chase Corp., 740 F. Supp. 2d 561, 578 (S.D.N.Y. 2010) (quoting

9

Gorzynski, 596 F.3d at 110). Once a plaintiff meets his or her prima facie burden, the employer has the opportunity to proffer a legitimate, non-retaliatory reason for its conduct. See Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1181 (2d Cir. 1996). If the employer meets that burden, plaintiff may then point to facts showing that the employer's reason is a pretext. Id.

### C.   Bronzini's Claims

#### 1.   The Nondiscrimination Claims

Bronzini has failed to make out a prima facie case of discrimination because he has failed to point to admissible evidence that would permit a reasonable jury to find that any adverse employment actions occurred in circumstances giving rise to an inference of discrimination. Bronzini points to four types of conduct that, if done to discriminate, could be actionable here: (1) the denial of an opportunity for plaintiff to take an on-site exam and related refusal to promote him to an FSD position, (2) plaintiff's lower pay, (3) the failure to provide plaintiff with a key to the bathroom, and (4) plaintiff's termination. But in no instance does Bronzini point to facts that would allow a jury to find that such conduct was the result of any discriminatory animus or was made with intent to discriminate. His strongest argument is that certain black employees of Classic were paid more than he was. (See Bronzini Aff. Exs. 2, 8, ECF No. 58.) But to the extent those black employees were paid more, they were differently situated than Bronzini — both in terms of their prior relevant work experience and their status as full-fledged FSDs. As to the bathroom key at 80 Broad Street, plaintiff puts forth no evidence that similarly

10

situated employees were treated differently than he was.  (See, e.g., Bronzini Depo. 175:17-201:16.)  There are simply no indicia of discrimination.

But even assuming that Bronzini had made out a prima facie case for discrimination, Classic has produced legitimate, nondiscriminatory reasons for its conduct.  Specifically, Classic produced evidence that (1) Bronzini's supervisors and Classic's clients consistently had problems with Bronzini; (2) that these problems resulted in frequent worksite changes, precluding Bronzini from taking certain on-site exams; (3) that Bronzini himself resisted certain worksite changes, potentially further delaying his on-site exam; (4) that Bronzini was paid as much as similarly situated employees; and (5) that Bronzini's termination followed immediately on the heels of a complaint from his supervisor and from Classic's client.  This evidence supports a finding that, to the extent Classic treated Bronzini disparately from other employees, it did so for legitimate, nondiscriminatory reasons.  See, e.g., Risco v. McHugh, 868 F. Supp. 2d 75, 109 (S.D.N.Y. 2012) ("On the job misconduct and poor work performance always constitute legitimate and nondiscriminatory reasons.") (alterations omitted); Mattera, 740 F. Supp. 2d at 573 (poor work performance); Jones v. Yonkers Pub. Schs., 326 F. Supp. 2d 536, 544 (S.D.N.Y. 2004) ("Getting along with one's co-workers is an essential component of satisfactory job performance."); see also Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985).

Bronzini offers no evidence beyond his own conclusory, self-serving statements that Classic's proffered nondiscriminatory reasons for its conduct are

11

pretextual. His discrimination claims, therefore, must fail. See, e.g., McDuffie v. Eli Lily & Co., 04 Civ. 5995, 2009 WL 857069, at *7 (S.D.N.Y. Mar. 31, 2009) ("conclusory allegations about [plaintiff's] feelings about the workplace . . . insufficient to raise a genuine issue of fact for discrimination pretext, particularly in light of . . . unsatisfactory performance history"); Chudnovsky v. Prudential Secs., Inc., 98 Civ. 7753, 2000 WL 1576876, at *9 (S.D.N.Y. Oct. 23, 2000).[3]

### 2. The Retaliation Claims

Bronzini has also failed to make out a prima facie case of retaliation, again because he points to no evidence that would allow a reasonable jury to find a causal connection between any adverse employment action and his participation in a protected activity. Plaintiff's only protected activity relevant to this motion is the 2010 EEOC charge that he filed. (See Am. Compl. ¶ 45, ECF No. 10.) Bronzini points to no particular statements or conduct of Classic or any of its employees connecting the 2010 EEOC charge with any adverse employment actions (either those discussed above, in the context of his discrimination claims, or any actions experienced by his wife, Lolita Bronzini). Plaintiff's only potential argument for such a causal connection is to point to the relative timing of his protected conduct and any adverse employment action(s). But even the timing of the events would not permit a jury to infer a causal connection. Plaintiff filed his EEOC charge on June

---

[3] To the extent Bronzini makes a separate claim for failure to promote, that claim must fail for three reasons. First, there is ample, unrebutted evidence in the record that Bronzini's work performance was not satisfactory. Second, Bronzini concedes that, at all relevant times, he had not passed an on-site test and thus did not meet the requirements to become a full-fledged FSD (the promotion he sought). Third, even if he met the prima facie case of discrimination for failure to promote, he again fails to offer evidence suggesting that Classic's legitimate, nondiscriminatory reasons were merely a pretext.

12

29, 2010. (See Am. Compl. 60-61, ECF No. 10.) Assuming that the allegedly disparate treatment discussed above could constitute adverse employment actions, none of that treatment occurred at a time that would give rise to an inference of retaliation. The failure to provide plaintiff with an on-site test, the failure to promote him to the position of FSD, and the failure to pay plaintiff as a full-fledged FSD had been ongoing before the EEOC charge and continued after it. The lack of access to a bathroom key and plaintiff's termination did not occur until late January and early February of 2011, respectively. Plaintiff offers no explanation for the six-month lag.

Of course, even if plaintiff could offer such an explanation, Classic has offered ample un-rebutted evidence that this conduct was done for legitimate, non-retaliatory reasons. See supra Part II.C.1.

Accordingly, plaintiff's retaliation claims must also fail.

### III. CONCLUSION

For the reasons set forth above, Classic's motion for summary judgment is GRANTED. The Clerk of Court is directed to terminate the motion at ECF No. 41 and to terminate this case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:      New York, New York
            April 17, 2013

                                               _____
                                               KATHERINE B. FORREST
                                               United States District Judge

Copies to:

Eimont Bronzini
2251 81st Street, #C-1
Brooklyn, NY 11214